**NO. 22-1511**

**U.S. COURT OF APPEALS for the SEVENTH CIRCUIT**

In Re Hanson Aggregates Midwest, Inc., Lehigh Hanson Services LLC, Lehigh Hanson, Inc. and Captain Kenneth L. Stubbs,
*Petitioners*

On Petition for a Writ of Mandamus to the United States District Court for the Northern District of Illinois in No. 1:21-cv-03936-SLE

**RESPONSE OF**
**REAL PARTY IN INTEREST, MARIANA M. OCOHA**

Michael L. Gallagher, #6281432
WISE MORRISSEY, LLC
161 North Clark Street, Suite 3250
Chicago, IL 60601
(312) 580-2040
mlg@wisemorrissey.com
ac@wisemorrissey.com

# Table of Contents

Table of Contents ........ ii

Table of Authorities ........ iii

Summary of the Argument ........ 1

Facts ........ 2

Procedural History ........ 3

Argument ........ 5

I. The District Court's order remanding the matter to state court is not reviewable by this Court. ........ 5

II. The District Court properly remanded Plaintiff's in personum claim pursuant to the Savings to Suitors Clause ........ 6

III. The District Court properly remanded Plaintiff's claim pursuant to § 1447(c) based on a lack of subject matter jurisdiction due to the Savings to Suitors Clause. ........ 9

Conclusion ........ 11

Certificate of Service ........ 12

**Table of Authorities**

**Cases**

*Madruga v. Superior Ct.*, 346 U.S. 556, 560–61 (1954) .......... 1,8

*Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001) .......... 1,8

*Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819 (N.D. Ill. Mar. 22, 2021) .......... 2

*Brown v. Porter*, 149 F.Supp.3d 963, 965-70, 973 (N.D. Ill. 2016) .......... 2,7,8

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) .......... 5

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 31, 35 (1943) .......... 5

*Cheney v. United States District Court*, 542 U.S. 367, 379-81 (2004) .......... 5

*Holmstrom v. Peterson*, 492 F.3d 833, 839 (7th Cir. 2007) .......... 5

*Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145, 2153 (2006) .......... 5

*Osborn v. Haley*, 549 U.S. 225, 127 S.Ct. 881, 895-96, (2007) .......... 6

*Thermtron*, 423 U.S. at 351, 96 S.Ct. 584 .......... 6

*Lu Junhong v. Boeing Co., 792 F.3d 805*, 379-380 *(2015)* .......... 6,8

*In re Chimenti*, 79 F.3d 534, 537-38 (6th Cir. 1996) .......... 7,9

*Romero v. International Terminal Operating Co.*, 358 U.S. 354, 371-72 (1959) .......... 7

*In re Lockheed Martin Corp.*, 503 F.3d 351, 354 (4th Cir. 2007), *cert. denied*, 553 U.S. 1017 (2008) .......... 9

*In re Dutile*, 935 F.2d 61, 65 (5th Cir.1991) .......... 9

*In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) .......... 9

*Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007) .......... 10

*Wellness Cmty—Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir.1995) .......... 10

*Jass v. Prudential Healthcare Plan, Inc.*, 88 F.3d 1482, 1492 (7th Cir.1996) .......... 10

*Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d 997, 999–1000 (N.D. Ill. 2003) .......... 10

*Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) .................................. 10

*Johnlewis v. Apache Indus. Servs., Inc.*, No. 21-504, 2021 WL 6112558, at *3–4 (E.D. La. Dec. 27, 2021) ........................................................................................................ 10

**Statutes**

28 U.S.C. § 1447(d) ........................................................................................ 1

28 U.S.C. § 1442 ........................................................................................ 1,5

28 U.S.C. § 1443 ........................................................................................ 1,5

28 U.S.C. § 1333(1) ........................................................................ 1,2,7,8,11

28 U.S.C. § 1447(c) ........................................................................... 5,6,9,11

28 U.S.C. § 1441 ........................................................................................ 6,7

28 U.S.C. § 1333 ........................................................................................ 7

28 U.S.C. § 1332(a) ........................................................................................ 8

28 U.S.C. § 1441(b) ........................................................................................ 8

28 U.S.C. § 1447(e) ........................................................................................ 10

## SUMMARY OF ARGUMENT

The petition suffers three fatal flaws. First, 28 U.S.C. § 1447(d) explicitly states that an "order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to §1442 or §1443 of this title shall be reviewable by appeal or otherwise." Therefore, the district court's decision to remand Plaintiff's *in personam* wrongful death claim is not reviewable by this Court.

Second, Defendants have a fundamental misunderstanding of the "exclusive" jurisdiction provided to federal courts over maritime matters. 28 U.S.C. § 1333(1) provides a federal court with exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Defendants fail to acknowledge that 28 U.S.C. §1331(1) provides the federal court with "exclusive" jurisdiction "only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant." (Exhibit B, District Court March 9, 2022 Order granting motion to remand pg.6; *quoting Madruga v. Superior Ct.*, 346 U.S. 556, 560–61 (1954).

As the district court properly held, the Savings to Suitors Clause contained within 28 U.S.C. § 1333(1) serves "'as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts.'" (Exh. B. pg.6; *quoting Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444 (2001). In other words, "in *in personam* cases like respondent's wrongful death case, state and federal courts have concurrent jurisdiction over admiralty claims." (Exh. B, pg.6; *citing Madruga*, 346 U.S. at 560–61 (1954)). The district court properly held "the Savings to Suitors Clause bar[s] removal of a case filed in state court based solely on admiralty jurisdiction." (Exh.

B, pg.7). Therefore, Defendants' argument that the federal court has "exclusive jurisdiction" over this *in personam* matter finds no support in the law.

Finally, Defendants' argument that 28 U.S.C. § 1333(1) provides federal jurisdiction over state law claims in this matter is in direct conflict with the Savings to Suitors Clause. Again, the district court properly held that "under the saving to suitors clause, a defendant may only remove a suit to federal court based on admiralty jurisdiction if an additional basis for federal jurisdiction exists." (Exh. B, pg.6; *citing Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819 (N.D. Ill. Mar. 22, 2021); *Brown v. Porter*, 149 F. Supp. 3d 963, 969 (N.D. Ill. 2016). Defendants fail to cite any opinion from this Court, or from a district court within the Circuit, that establishes the federal court has exclusive jurisdiction over an *in personam* admiralty matter that was originally filed in State court *absent* diversity. Therefore, the district court properly remanded the matter once diversity was destroyed and the court no longer had jurisdiction pursuant to the Savings to Suitors Clause.

**FACTS**

On July 22, 2020, at approximately 6:40 p.m., Defendant Celio San Gabriel ("San Gabriel") was operating a 16-17 foot long open motorboat on the Chicago River with eight additional passengers, including three adults and five small children. (Exhibit A, Second Amended Complaint ¶25). All eight occupants of the motorboat were wearing Personal Flotation Devises (PFD) including the Plaintiff Mariana M. Ochoa ("Mariana" and "Plaintiff") and seven year-old Victor Ochoa ("Victor"). (Exh. A, ¶26). At that time, Defendant Captain Kenneth L. Stubbs ("Stubbs") was operating the towboat Kiowa ("Kiowa") which was 76 feet long and 26 feet wide. (*Id.* at. ¶ 12). The Kiowa was pushing a barge that was 195 feet long and 35 feet wide, while being fully loaded with aggregate. (*Id.* at ¶12). The approximate combined weight of the towboat and

barge was more than 500,000 pounds. (*Id.*). The Second Amended Complaint alleged that defendant Stubbs was an employee of Defendants Material Service Corporation ("Material") d/b/a Hanson Material Service Corporation ("Hanson"), Lehigh Hanson Service LLC. ("Hanson") and/or Lehigh Hanson Inc. ("Defendants") (*Id.* at ¶13-14).

According to witness accounts and an investigation by the Illinois Department of Natural Resources ("IDNR"), the Kiowa was traveling at a speed that created large wakes in the Chicago River, which was a strict no-wake zone. (*Id.* at ¶¶35-38). At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in it capsizing and the occupants being thrown overboard. (*Id.* at ¶33). Victor was trapped underneath the motorboat and tragically drowned. (*Id.* at ¶34). A subsequent IDNR investigation concluded that the "cause of the accident" was the "force of wake" created by the Kiowa and barge. (*Id.* at ¶38). The investigation also found that San Gabriel "overload[ed]" the motorboat contributing to the accident. (*Id.* at ¶39).

**PROCEDURAL HISTORY**

On July 1, 2021, Plaintiff filed her original Complaint in the Circuit Court of Cook County, Illinois, County Department, under Case No. 2021-L-006726. (21-cv-03936, Dkt. 11, Plaintiff Motion for leave to amend Exh. 2, Complaint). Plaintiff filed her First Amended Complaint in the Circuit Court of Cook County on July 22, 2021, correcting a Scribner's error. (Dkt. 11, Exh. 3). Plaintiff subsequently filed their Notice of Removal ("Notice") of Respondent's original Complaint on July 24, 2021, and the matter was assigned to this Judge Sara L. Ellis of the United States District Court, Northern District of Illinois. (Dkt. 1).

On August 23, 2021, Plaintiff sought leave of court pursuant to Fed. R. Civ. Pro. 15(a) to file her Second Amended Complaint naming San Gabriel as a defendant. (Dkt. 11, pg.1). Plaintiff's

motion for leave provided a six-page memorandum establishing that her addition of San Gabriel as defendant was allowed under Rule 15(a), and provided the proposed Second Amended Complaint which explicitly alleged that San Gabriel was a resident of Chicago, Illinois. (Dkt. 11, pg.1-6; Dkt. 11, Exh. A, ¶3). On that same day, Plaintiff filed her Motion to remove the matter to state court based on the district court lacking subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) under the Savings to Suitors Clause, and based on a lack of complete diversity amongst the Defendants. (Exhibit C, Motion to remand pg.3-6).

Defendants failed to object or respond to Plaintiff's motion, and this district court properly granted Plaintiff leave to file her Second Amended Complaint adding Defendant San Gabriel on August 30, 2021. (Dkt. 15). Unbeknownst to Plaintiff or her attorney, on August 8, 2021, Defendant Hanson had filed a Complaint claiming ownership of the river towboat M/V KIOWA and barge MSC0103, and seeking exoneration from, or limitation of, liability pursuant to 28 U.S.C. § 1333. (21-cv-04295, Dkt. 1, pg.1). On September 9, 2021, Plaintiff and her counsel first received notice of Hanson's Complaint and Judge Manish Shah's Order granting a stay and injunction on matters related to Hanson's Complaint. (21-cv-03936 Dkt. 18).

On January 14, 2022, the limitation case was reassigned to Judge Ellis and the matters were consolidated. On March 30, 2022, Judge Sarah Ellis granted Plaintiff's motion to lift the stay and her motion to remand the matter to state court. (Exh. B). Defendants do not challenge the district court's its application of the "Single Claimant Exception" to the Limitation Liability Act, nor do they question the court's decision to lift the stay. (Exhibit D, Petition for Writ pg.4). Defendants also concede the court's decision to allow Plaintiff leave to file her Second Amended Complaint adding San Gabriel as a defendant was proper. Finally, Defendants concede that adding San Gabriel as a defendant destroyed diversity. (Exhibit D, pg.3)

## ARGUMENT

"It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). The writ is for rare cases in which a district court abuses its power – amounting to "judicial usurpation." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 35 (1943). The Supreme Court has cautioned that the writ may not be used "as a substitute for the appeal procedure," *id. at* 26 (1943) or to address "inconvenience to the litigants" resulting from decision of Congress that review of district court orders should happen "only on review of final judgment." *Id.* at 31.

*Cheney v. United States District Court*, 542 U.S. 367, 380-81 (2004), sets forth a standard for evaluating a petition for a writ for mandamus. First, the party seeking the writ must have no other adequate means to attain the relief it desires. Second, that party must show that the right to issuance of the writ is "clear and indisputable." Third, even if the first two conditions are met, this Court must also be satisfied that the writ is appropriate under the circumstances.

### I. The District Court's order remanding the matter to state court is not reviewable by this Court.

First, 28 U.S.C.A. § 1447(d) explicitly states that an "order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to §1442 or §1443 of this title shall be reviewable by appeal or otherwise."

In *Holmstrom v. Peterson*, the Court held that defendant was jurisdictionally barred from appealing the district court's order remanding the matter. 492 F.3d 833, 839 (7th Cir. 2007). The Court recognized that the "[a]ny remand order falling within the scope of § 1447(c) lies outside our jurisdiction, regardless of the correctness of the district court's reasoning." *Id.*; *citing Kircher v. Putnam Funds Trust,* 547 U.S. 633, 126 S.Ct. 2145, 2153 (2006). The Court "noted that

appellate review of a remand order based on a district court's erroneous construction of even a jurisdictional statute is available '[o]nly in the extraordinary case.'" *Id.*; *quoting Osborn v. Haley*, 549 U.S. 225, 127 S.Ct. 881, 895-96, (2007). Instead, the "statute expresses the policy of Congress to prevent delay in the trial of remanded cases by protracted litigation about jurisdictional issues or other defects in the removal process by immunizing remand orders 'issued on the grounds specified in § 1447(c) from appellate review." *Id, quoting Thermtron,* 423 U.S. at 351, 96 S.Ct. 584. Therefore, the district court's decision to remand Plaintiff's *in personam* wrongful death claim is not reviewable by this Court.

## II. The District Court properly remanded Plaintiff's *in personum* claim pursuant to the Savings to Suitors Clause.

Defendants' petition claims that whether or not the "Savings to Suitors Clause requires an independent basis for jurisdiction in order for an admiralty case to be removed from state to federal court" is a "contested question." (Exh. D. pg.11). Defendants proceed to cite this Court's decision in *Lu Junhong* for apparent support. (*Id.*); 792 F.3d 805 (7th Cir. 2015). As with Defendants' original response to the motion for remand, they provide *absolutely no* analysis or argument in support of their claim. (Exh. D. pg.11).

In *Lu Junhong*, the Seventh Circuit noted that the plaintiffs had not even argued that the savings to suitors clause applied, and thus the Court's discussion of it was dicta by its own admission. 792 F.3d at 379-380 ("Perhaps it would be possible to argue that the saving-to-suitors clause itself forbids removal, without regard to any language in § 1441. But plaintiffs, who have not mentioned the saving-to-suitors clause, do not make such an argument. We do not think that it is the sort of contention about subject-matter jurisdiction that a federal court must resolve even if the parties disregard it."). According to Plaintiff's research, the only District Court within this Circuit to analyze the *Lu Junhong* opinion in the context of the savings to suitors clause is the

Honorable Judge Gary Feinerman (Judge Feinerman). *Brown v. Porter*, 149 F.Supp.3d 963 (N.D. Ill. Feb. 2, 2016).

In *Brown*, the plaintiff brought a personal injury action in Cook County against the operator of a boat that had caused him injuries on Lake Michigan. *Id.* at 965. The defendant removed the matter to federal court, claiming admiralty jurisdiction, and the plaintiff sought remand, arguing that the "saving-to-suitors" clause of Section 1333(1) dictated remand to his state venue. *Id.* The Brown court established that "because [the plaintiff] brought this suit *in personam* against a person …, the state court has concurrent jurisdiction." *Id*. at 968. The court then evaluated whether that meant the "saving-to-suitors" clause would "prevent removal" and undertook a detailed examination of the law on that point.

The Brown court observed that "actions brought in state court under the 'saving to suitors' clause are not generally removable … since the entire purpose of the clause was to give claimants pursuing a common law remedy the ability to choose their forum." *Id.* at 968; *quoting In re Chimenti*, 79 F.3d 534, 538 (6th Cir. 1996). Section 1333 "provides a basis for federal jurisdiction in *in personam* actions if the claimant so chooses, [but] provides no basis for removal if the claimant does not so choose." *Id.* at 969; *quoting Chimenti*, 79 F.3d at 537-38 (emphasis in original). In reaching that conclusion, the Sixth Circuit relied on *Romero v. International Terminal Operating Co.*, where the Supreme Court explained that:

> [T]he historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would then be freely removable under [28 U.S.C.] § 1441… By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters - a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve. 358 U.S. 354, 371-72 (1959)

The Brown court noted that "an exception to this rule provides that a defendant may remove an admiralty case if there is an independent basis for federal subject matter jurisdiction - *i.e.*, a basis other than admiralty, such as complete diversity of citizenship with the requisite amount in controversy under 28 U.S.C. § 1332(a)." *Brown*, 149 F.Supp.3d at 969; *citing Chimenti*, 79 F.3d at 538. Thus, the court held: "[G]iven [the plaintiff's] election to proceed in state court and his invocation of § 1333(1)'s saving-to-suitors clause, and also given the lack of any alternative, non-admiralty ground for federal jurisdiction, [the plaintiff] may forestall removal and insist upon a remand." *Brown*, 149 F. Supp.3d at 973.

The Brown court also rejected the defendants' claim that the 2011 amendment to § 1441(b) or the *Lu Junhong* opinion rendered the above interpretation of the savings to suitors clause obsolete when it came to federal jurisdiction. *Id.* at 969-70. The court concluded after "[h]aving carefully reviewed the arguments both pro and con, this court agrees with the decisions holding that the amendment to § 1441(b) did not disturb the settled principle that § 1331(1)'s saving-to-suitors clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is the admiralty jurisdiction." *Id.* at 970.

In this matter, the district court also rejected Defendants' argument by emphasizing that the "saving to suitors clause serves 'as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts.'" (Exh. B, pg.6; *quoting Lewis*, 531 U.S. at 444). In other words, "in *in personam* cases like Mariana's wrongful death case, state and federal courts have concurrent jurisdiction over admiralty claims." (Exh. B, pg.6; *citing Madruga*, 346 U.S. at 560–61 (1954) ("Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. . . . But the jurisdictional

act does leave state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." (citations omitted); *see also In re Lockheed Martin Corp*., 503 F.3d 351, 354 (4th Cir. 2007), *cert. denied*, 553 U.S. 1017 (2008); *quoting In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996) (Thus, "while 'federal courts have exclusive jurisdiction over *in rem* actions, federal and state courts have concurrent jurisdiction over *in personam* actions, and the effect of the [saving-to-suitors] clause is to give an *in personam* plaintiff the choice of proceeding in an ordinary civil action, rather than bringing a libel in admiralty."'). Therefore, Defendants unsupported and undeveloped claim that the Savings to Suitors Clause does not require an independent basis for removal of admiralty case, should be rejected outright. *In re Dutile,* 935 F.2d 61, 65 (5th Cir.1991) (maritime claims not removable without independent federal claim or complete diversity).

Undeterred, Defendant concludes by claiming the remand was barred because "diversity jurisdiction existed at the time of removal." Defendant fails to cite any cases or legal precedent to support this argument. As explained more fully *infra*, 28 U.S.C. § 1447(c) allows for remand after the 30-day time period for a lack of subject matter jurisdiction.

**III. The District Court properly remanded Plaintiff's claim pursuant to § 1447(c) based on a lack of subject matter jurisdiction due to the Savings to Suitors Clause.**

Defendants appear to have abandoned their argument that Plaintiff's motion to remand was untimely, and now focus on the claim that remand was improper because there was diversity at the time of removal. (Exh. D, pg.11-12). Defendants begin by arguing the "well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction". (*Id.* at 5; *quoting In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010)).

However, the Supreme Court has explicitly held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction". *Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007). In fact, the Supreme Court in *Rockwell* cited the Seventh Circuit's holding in *Wellness Cmty* which stated "when considering a motion to remand, the amended complaint supersedes the original one, and the original complaint has 'no function in the case.'" *Rockwell Intern. Corp*, 549 U.S. at 473-74; *citing Wellness Cmty—Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir.1995); *see also Jass v. Prudential Healthcare Plan, Inc.*, 88 F.3d 1482, 1492 (7th Cir.1996) (The Court is to determine federal jurisdiction *solely* based on the amended complaint).

The district court concurred and held that " §1447(e) provides that '[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" (Exh. B, pg.8; *quoting* 28 U.S.C. § 1447(e); *citing Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d 997, 999–1000 (N.D. Ill. 2003) (Section 1447(e) displaces the general rule that diversity jurisdiction is determined at the time a case is filed with respect to the post-removal joinder of non-diverse defendants).

The court emphasized that "[t]his is exactly the situation here: after removal of the case to federal court, Mariana filed a second amended complaint that named San Gabriel, a non-diverse party, as an additional defendant." (*Id.*)*; citing Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) ("[T]he district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction."); *Johnlewis v. Apache Indus. Servs., Inc.*, No. 21-504, 2021 WL 6112558, at *3–4 (E.D. La. Dec. 27, 2021) ("The Court lacks jurisdiction because Plaintiff originally filed his claim in state court pursuant to the Savings to Suitors Clause. Although the case was removed

based on diversity jurisdiction, diversity has been destroyed by the addition of a non-diverse defendant. And, because Plaintiff originally filed suit pursuant to the Savings to Suitors Clause 'exception' to original jurisdiction, this Court cannot exercise jurisdiction based on § 1333.").

Therefore, the district court properly remanded Plaintiff's claim pursuant to § 1447(c) based on a lack of subject matter jurisdiction due to the Savings to Suitors Clause and lack of diversity.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Petition for Writ of Mandamus.

Michael L. Gallagher, #6281432
WISE MORRISSEY, LLC
161 North Clark Street, Suite 3250
Chicago, IL 60601
(312) 580-2040
mlg@wisemorrissey.com
ac@wisemorrissey.com

**CERTIFICATE OF SERVICE**

I, the undersigned, counsel for the Real Party of Interest, hereby certify that on April 15, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF System. Participants listed below in the will be served by the CM/ECF system.

Gould & Ratner LLP
Paul W. Carroll
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312.236.3003
pcarroll@gouldratner.com

GOLDSTEIN and PRICE, L.C.
Neal W. Settergren (seeking admission pro hac vice)
Jacob D. Curtis (seeking admission pro hac vice)
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1711
neal@gp-law.com
jacob@gp-law.com

/s/ Michael L. Gallagher
Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,

Plaintiff,

v.

MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL,

Defendants.

Case No. 1:21-cv-03936

Judge Sara L. Ellis

Magistrate Judge Sunil R. Harjani

**SECOND AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, by her attorneys WISE MORRISSEY, LLC and complaining against the defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; LEHIGH HANSON, INC., CAPTAIN KENNETH L. STUBBS and CELIO SAN GABRIEL, states as follows:

**PARTIES**

1. On July 22, 2020, and at all time relevant herein, plaintiff Mariana M. Ochoa ("MARIANA") is the mother and Independent Administrator of the Estate of seven year-old decedent VICTOR LOBATO OCHOA ("VICTOR").

2. On July 22, 2020, and at all time relevant herein, MARIANA and VICTOR were residents of the City of Chicago, County of Cook.

**Exhibit A**

3. On July 22, 2020, and at all time relevant herein, defendant CELIO SAN GABRIEL ("SAN GABRIEL") was a resident of the City of Chicago, County of Cook.

4. On July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE CORPORATION ("MATERIAL") d/b/a HANSON MATERIAL SERVICE CORPORATION ("HANSON") was a Corporation registered to conduct business in Illinois.

5. On July 22, 2020, and at all times relevant herein, defendant MATERIAL d/b/a HANSON maintained a principle place of business located in Westchester, Illinois.

6. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC. ("LEHIGH"), was a limited liability company registered to conduct business in Illinois.

7. On July 22, 2020, and at all times relevant herein, defendant LEHIGH maintained places of business located in the City of Chicago and the Village of McCook in the County of Cook.

8. On July, 22, 2020, and at all times relevant herein, defendant LEHIGH owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

9. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., was one of the largest building materials companies in the country.

10. On July 22, 2020, defendant LEHIGH HANSON, INC. owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

11. On July 22, 2020, defendant LEHIGH HANSON, INC. owned, operated, maintained or controlled its subsidiary defendant LEHIGH.

12. On July 22, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH L. STUBBS ("STUBBS") was the captain of the inland river towboat Kiowa ("Kiowa"). The

Kiowa had a triple screw 1500 horse power engine with dimensions of 76 feet long and 26 feet wide, while weighing approximately 292,000 pounds. At that time, the Kiowa was pushing a barge MSCO103 that was 195 feet long and 35 feet wide and fully loaded with aggregate. The barge MSCO103 weighed hundreds of thousands of pounds.

13. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant MATERIAL d/b/a HANSON.

14. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant LEHIGH.

15. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant LEHIGH HANSON, INC.

16. On July 22, 2020, and at all times relevant herein, defendant MATERIAL d/b/a HANSON owned, operated, maintained or controlled the Kiowa and barge.

17. On July 22, 2020, and at all times relevant herein, defendant LEHIGH owned, operated, maintained or controlled the Kiowa and barge.

18. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSO Inc. owned, operated, maintained or controlled the Kiowa and barge.

**FACTS COMMON TO ALL COUNTS**

19. In March 2017, the National Transportation Safety Board (NTSB) issued a "Safety Recommendation Report" (Report) regarding safety of recreational and commercial vessels in shared waterways, like the Chicago River. (See below photo of the Chicago River from the Report)



20.     The NTSB Report stated that the Chicago River was unique among all shared waterways in the United States because of the "limited area in which vessels can maneuver", which increased the risk of recreational and commercial vehicle accidents.

21.     The NTSB Report stated the increased risk of recreational and commercial vehicle accidents on the Chicago River was compounded by the numerous waterborne events (e.g. fireworks and regattas) and multitude of recreational vessels (e.g. powerboats, kayaks, canoes and standup paddleboards).

22.     As a result, the NTSB Report stated the Chicago River posed the "greatest risk for unsafe interaction between commercial and recreational waterway users" of any "Shared Waterway" in the United States.

23.     On July 22, 2020, and at all times relevant herein, defendants MATERIAL, LEHIGH, LEHIGH HANSON, INC.  and STUBBS were all aware of the increased risks of "unsafe interaction between commercial and recreational waterway users" on the Chicago River, including  at the location of the tragic incident.

24.     On July 22, 2020, and at all times relevant herein, defendant STUBBS was captaining the Kiowa and barge northbound on the South Branch of the Chicago River.

25.    On July 22, 2020, and at all times relevant herein, Celio San Gabriel (San Gabriel) was operating an open motorboat with three additional adults and five small children. Among the occupants were MARIANA and VICTOR. The motorboat was a 16-17 foot long Capri Bayliner (motorboat).

26.    On July 22, 2020, and at all time relevant herein, all eight occupants were wearing Personal Floatation Devices (PFD) except for one of the adults, Jesus Lobato.

27.    On July 22, 2020, the Chicago Yacht Works was located at 2550 South Ashland Avenue, Chicago Illinois. The Chicago Yacht Works facility was located on the Westside of the South branch of the Chicago River and immediately south of the Ashland Avenue Bridge.

28.    On July 22, 2020, the Chicago Yacht Works had a closed captioned video that captured the Kiowa traveling northbound on the South Branch of the Chicago River. The video footage showed the Kiowa and the barge it was pushing creating a series of large wakes. The wakes created by the Kiowa and barge would then reverberate off the walls of the Chicago River increasing the size of the original wakes.

29.    At approximately 5:30 p.m., the Kiowa and barge were traveling southbound on South branch of the Chicago River in the area of mile marker 324 and the Ping Tom Memorial Park in Chinatown, Chicago.

30.    At approximately 5:30 p.m., the motorboat was traveling northbound on South branch of the Chicago River in the area of mile marker 324 and the Ping Tom Memorial Park in Chinatown, Chicago.

31.    At that time, San Gabriel and other occupants of the motorboat observed the Kiowa and barge traveling at a speed that was generating a series of large wakes.

32.     At that time, the Kiowa and barge created a series of wakes that were several feet high. The wakes created by the Kiowa and barge would then reverberate off the walls of the Chicago River increasing the size of the original wakes.

33.     At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in the motorboat capsizing. As a result, all of the occupants of the boat were thrown overboard and into the water.

34.     Tragically, VICTOR, was trapped underneath the overturned and capsized boat. Law enforcement and rescue personnel were immediately notified and responded to the scene. However, the first responders were unable to rescue VICTOR from under the motorboat and he drowned.

35.     On July 22, 2020, Illinois Department of Natural Resources ("IDNR") Officer Jeremy Swindle (Officer Swindle) was one of the many law enforcement, rescue and medical personnel that responded to the scene of the incident.

36.     Officer Swindle subsequently conducted an investigation into the incident. Officer Swindle's investigation included his first-hand observations at the scene, witness accounts and closed circuit television footage of the Kiowa as it traveled northbound on the South branch of the Chicago River only minutes before the incident.

37.     Officer Swindle's report stated that "[c]lear [video] footage of the Kiowa prior to the incident shows a wake made by the Kiowa. The wake bouncing off the walls of the river create[d] an even bigger movement in the water. The Chicago River is a no wake river".

38.     Officer Swindle's report stated that the "cause of the accident" was the "force of wake" created by the Kiowa and barge.

39. Upon information and belief, the report also claimed that SAN GABRIEL'S "overloading" of the motorboat contributed to the accident.

40. The Chicago Administrative Code 10-40-261(a) (Restrictions on wake of vessels) states that "[n]o person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency".

41. The area of Chicago River where the incident occurred is designated as a "No Wake" zone pursuant to the Chicago Administrative Code 10-40-261.

**COUNT I – NEGLIGENCE WRONGFUL DEATH – MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP.**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant MATERIAL, owed a duty to operate the Kiowa and barge in a reasonable manner.

43. On July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)

The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)

The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:

(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c.    Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d.    Violated United States Coast Guard Navigation Rules

Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e.    Violated  Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h.    Violated Chicago Administrative Code 10-40-261

> No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency:

i. Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

j. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

44. On and prior to July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., had privity and knowledge of the their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

45. On and prior to July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

46. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

47. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT II – NEGLIGENCE – LEHIGH HANSON SERVICES LLC.**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant LEHIGH owned, operated or maintained control over the Kiowa.

43. On July 22, 2020, and at times relevant herein, defendant CAPTAIN KENNETH L. STUBBS was an employee, agent or apparent agent of defendant LEHIGH.

44. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC, by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman

Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d.    Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h.    Violated Chicago Administrative Code 10-40-261
(a)   No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

     i.     Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

     j.     Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

45.    On and prior to July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC., had privity and knowledge of their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

46.    On and prior to July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC., had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

47.    As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

48.    Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON SERVICES LLC for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT III – NEGLIGENCE – LEHIGH HANSON, INC.**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC. owned, operated or maintained control over the Kiowa.

43. On July 22, 2020, and at times relevant herein, defendant CAPTAIN KENNETH L. STUBBS was an employee, agent or apparent agent of defendant LEHIGH HANSON, INC.

44. On July 22, 2020, and at all times relevant herein, LEHIGH HANSON, INC., by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

j. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

45. On and prior to July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., had privity and knowledge of their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant LEHIGH HANSON, INC., also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

46. On and prior to July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

47. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

48. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON, INC. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT IV – NEGLIGENCE – KENNETH L. STUBBS**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS owned, operated or maintained control over the Kiowa.

43.     On July 22, 2020, and at all times relevant herein, defendant, CAPTAIN

KENNETH L. STUBBS was negligent in one or more of the following respects:

a.      Violated United States CFR Title 33 §164.11(p)
        The person directing the movement of the vessel sets the vessel's speed
        with consideration for:
        (4) The comparative proportions of the vessel and the channel;
        (5) The density of marine traffic;
        (6) The damage that might be caused by the vessel's wake; and
        (8) Any local vessel speed limit.

b.      Violated United States CFR Title 33 §164.78 (a)
        The owner, master or operator of each vessel towing shall ensure that each
        person directing and controlling the movement of the vessel:
        (7) Proceeds at a safe speed taking into account the weather, visibility,
            density of traffic, draft of tow, possibility of wake damage, speed and
            direction of the current, and local speed-limits.

c.      Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
        Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or
        interfering with the safe operation of a vessel, so as to endanger the life,
        limb, or property of a person.

d.      Violated United States Coast Guard Navigation Rules
        Rule 5 – Look-out
        Every vessel shall at all times maintain a proper look-out by sight and
        hearing as well as by all available means appropriate in the prevailing
        circumstances and conditions so as to make a full appraisal of the situation
        and of the risk of collision.

        Rule 6 - Safe Speed Inland
        Every vessel shall at all times proceed at a safe speed so that she can take
        proper and effective action to avoid collision and be stopped within a
        distance appropriate to the prevailing circumstances and conditions

        Rule 9 - Narrow Channels Inland
        (a)(i) A vessel proceeding along the course of a narrow channel or fairway
        shall keep as near to the outer limit of the channel or fairway which lies on
        her starboard side as is safe and practicable.

e.      Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
        No person shall operate a watercraft within 150 feet of a public launching
        ramp owned, operated or maintained by the Department or a political
        subdivision of the State at greater than a "No Wake" speed as defined in

Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

j. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

44. On and prior to July 22, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS, had privity and knowledge of the tow boats and barges he captained repeatedly traveled at an excessive speed along the Chicago River. Defendant KENNETH L. STUBBS, also had privity and knowledge that the tow boats and barges he captained were repeatedly causing wakes in the No Wake zone of the Chicago River.

45. On and prior to July 22, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS, had privity and knowledge that the tow boats and barges he captained

were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

46. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

47. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant KENNETH L. STUBBS for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT V – NEGLIGENCE – CELIO SAN GABRIEL**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant, CELIO SAN GABRIEL, owned, operated or maintained control over the motorboat containing Plaintiff and Victor.

43. On July 22, 2020, and at all times relevant herein and upon information and belief, defendant, CELIO SAN GABRIEL was negligent in one or more of the following respects:

a. Improperly overloaded the motorboat with passengers;

b. Failed to exercise ordinary due care while operating the motorboat.

44. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

45. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant CELIO SAN GABRIEL for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT VI - SURVIVAL COUNT - MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP.**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant MATERIAL, owed a duty to operate the Kiowa and barge in a reasonable manner.

43. On July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)

> The person directing the movement of the vessel sets the vessel's speed with consideration for:
> (4) The comparative proportions of the vessel and the channel;
> (5) The density of marine traffic;
> (6) The damage that might be caused by the vessel's wake; and
> (8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)

The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c.    Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d.    Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

      h.      Violated Chicago Administrative Code 10-40-261

                  (a)  No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

      i.      Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

      j.      Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

44.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

45.     At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

46.     As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

47.     MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

48.    Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT VII – SURVIVAL COUNT - LEHIGH HANSON SERVICES LLC**

1-41.    Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42.    On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC, owed a duty to operate the Kiowa and barge in a reasonable manner.

43.    On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC, by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a.    Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b.    Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c.    Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman

Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d.    Violated United States Coast Guard Navigation Rules

Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h.    Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i.      Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

j.      Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

44.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

45.     As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

46.     At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

47.     MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

48.     Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON SERVICES LLC for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT VIII – SURVIVAL COUNT - LEHIGH HANSON, INC.**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., owed a duty to operate the Kiowa and barge in a reasonable manner.

43. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out

Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

j. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges

from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River;

44. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

45. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

46. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

47. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

48. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON, INC. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT IX – SURVIVAL COUNT - KENNETH L. STUBBS**

1-41.   Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42.   On July 22, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH L. STUBBS, owed a duty to operate the Kiowa and barge in a reasonable manner.

43.   On July 22, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a.   Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b.   Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c.   Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d.   Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland

(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to establish adequate policies or procedures for crew members, including but not limited to defendant Kenneth L. Stubbs, to prohibit their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

j. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the “No Wake” zones of the Chicago River;

44. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

45. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

46. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

47. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

48. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant CAPTAIN KENNETH L. STUBBS for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT X – SURVIVAL COUNT - CELIO SAN GABRIEL**

1-41. Plaintiff re-pleads and re-alleges paragraphs 1-41 of this Complaint and hereby incorporates them as though fully set forth herein.

42. On July 22, 2020, and at all times relevant herein, defendant, CELIO SAN GABRIEL, owed a duty to operate the motorboat in a reasonable manner.

43. On July 22, 2020, and at all times relevant herein, defendant, CELIO SAN GABRIEL, was negligent in one or more of the following respects:

a. Improperly overloaded the motorboat with passengers;

b. Failed to exercise ordinary due care while operating the motorboat.

44. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

45. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

46. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

44. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant CELIO SAN GABRIEL for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

By: /s/ *Michael L. Gallagher*
One of Her Attorneys

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIANA M. OCHOA, as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, deceased, | ) | |
| Plaintiff, | ) | No. 21 C 3936 |
| v. | ) | Judge Sara L. Ellis |
| MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC; LEHIGH HANSON INC.; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL, | ) | |
| Defendants. | ) | |
| IN THE MATTER OF THE COMPLAINT OF HANSON AGGREGATES MIDWEST, INC. F/K/A MATERIAL SERVICE CORPORATION D/B/A HANSON MATERIAL SERVICE CORPORATION FOR EXONERATION FROM, OR LIMITATION OF, LIABILITY | ) | No. 21 C 4295<br>Judge Sara L. Ellis |

**OPINION AND ORDER**

On July 22, 2020, a motorboat operated by Celio San Gabriel that carried nine individuals capsized on the Chicago River. Victor Lobato Ochoa, one of the motorboat's passengers, drowned. On July 1, 2021, his mother and the administrator of his estate, Mariana Ochoa, filed a lawsuit against Defendants Material Service Corporation d/b/a Hanson Material Service Corporation ("Hanson"), Lehigh Hanson Services LLC ("Lehigh LLC"), Heidelberg Cement Group ("Heidelberg"), and Kenneth L. Stubbs in state court. Mariana claimed that a towboat and barge that Stubbs operated as an employee of Hanson, Lehigh LLC, and Heidelberg caused the motorboat to capsize. Hanson, Lehigh LLC, Heidelberg, and Stubbs removed Mariana's

wrongful death case, No. 21 C 3936, to this Court pursuant to admiralty and diversity jurisdiction, 28 U.S.C. §§ 1332(a), 1333(1), on July 24, 2021. Mariana filed a second amended complaint on August 31, 2021, naming Hanson, Lehigh LLC, Lehigh Hanson, Inc. ("Lehigh Inc."), and Stubbs (collectively, the "Hanson Defendants"), as well as San Gabriel as defendants. Mariana also filed a motion to remand the case to state court on August 23, 2021, which she supplemented with an amended motion on September 3, 2021, after she filed her second amended complaint.

Meanwhile, Hanson filed a limitation of liability case, No. 20 C 4295, seeking exoneration from or limitation of its liability for any loss, injury, or damage resulting from the July 22, 2020 incident pursuant to Supplemental Rule F of the Federal Rules of Civil Procedure and the Limitation of Liability Act (the "Limitation Act"), 46 U.S.C. § 30501 *et seq.*[1] On September 8, 2021, the court entered an order requiring all persons having claims arising out of the July 22, 2020 incident to file claims with the Clerk of Court by November 1, 2021. The court also stayed all proceedings arising out of or connected with the July 22, 2020 incident, a stay that reached the wrongful death case. Mariana filed an answer on October 29, 2021, but no other individual filed a claim as ordered by the court. The court then entered default against all persons except Mariana and allowed Mariana to file a belated claim, which she did on December 20, 2021. Mariana also filed a motion to lift the stay so that she can pursue her wrongful death case in state court.

The Court now addresses the two interrelated motions pending in these cases: Mariana's motion to lift the stay in the limitation of liability case [No. 21 C 4295, Doc. 17] and Mariana's motions to remand the wrongful death case to state court [No. 21 C 3936, Docs. 13, 17]. The

[1] Although not initially assigned to this Court, the limitation of liability case, No. 21 C 4295, was reassigned to this Court as related to the underlying wrongful death case, No. 21 C 3936, on January 14, 2022.

Court finds it appropriate to lift the stay in the limitation of liability case to allow Mariana to proceed with her wrongful death case because she is the only individual asserting a claim involving the July 22, 2020 incident. And having lifted the stay, the Court must remand the wrongful death case to state court because Mariana originally filed suit in state court pursuant to the saving to suitors exception to federal courts' exclusive admiralty jurisdiction and the addition of San Gabriel as a defendant means that diversity jurisdiction no longer supplies the required additional jurisdictional basis to support the case's removal to federal court.

**I. Motion to Lift the Stay in the Limitation of Liability Case, No. 21 C 4295**

The Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001); *see* 46 U.S.C. § 30505(b). The Limitation Act requires that "all claims and proceedings against the owner related to the matter in question shall cease" while a court considers the owner's liability under the Act. 46 U.S.C. § 30511(c). But this stay requirement "must be interpreted in conjunction with the 'savings to suitors' clause in 28 U.S.C. § 1333(1), which reserves to suitors in admiralty or maritime cases their common-law remedies," including "the right to select a forum and the right to demand a jury trial." *Am. River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009). Reading the provisions together gives a court discretion to lift the stay and allow a claimant to proceed on their underlying claim against the owner in state court, while the petition for limitation of liability remains pending in federal court. *See Lewis*, 531 U.S. at 449. Courts exercise this discretion "when there is only one claimant, or when the total demanded by multiple claimants does not exceed the value set by the Limitation Act." *Roen Salvage Co. v. Sarter*, 17 F.4th 761, 763 (7th Cir. 2021).

Here, Mariana argues that the Court should exercise its discretion under the single claimant exception to lift the stay and allow the wrongful death case against Hanson to proceed in state court. *See id.* (where only a single claimant seeks a recovery, the federal court "can set a maximum level of liability based on the criteria in § 30505(a), which will fully protect [the owner's] federal statutory rights" and then "permit the substantive claim to proceed in state court"). Hanson responds that the absence of any claims aside from Mariana's does not sufficiently establish the applicability of the single claimant exception, meaning that any decision to lift the stay is premature.[2] But the court already entered default against any additional potential claimants, *see* No. 21 C 4295, Doc. 21, and no indication exists that any of the additional potential claimants would seek to set aside the default and assert a late claim.[3] Thus, the Court does not find Mariana's motion to lift the stay premature and instead concludes that the single claimant exception applies.

Next, Hanson argues that the Court should reject Mariana's request to lift the stay because she does not have a pending state court lawsuit, meaning no conflict exists between the Limitation Act and the saving to suitors clause, and this Court can provide her with a jury trial if warranted. But Mariana contests the removal of the wrongful death case from state to federal court, with resolution of her motion to remand in that case stayed in light of the limitation of liability case. To resolve the propriety of the removal of the wrongful death case, the Court must lift the stay imposed by § 30511(c). Therefore, regardless of whether this Court could fashion a

[2] Hanson also argued that Mariana lacks statutory standing to modify the stay because she had not filed a proper claim in the limitation of liabilities case. But since making that argument, the court allowed Mariana to file such a claim, mooting Hanson's standing argument.

[3] Hanson speculates that San Gabriel may seek to assert his own claims against Hanson given Hanson's pursuit of a third-party claim against him in the limitation of liability case. But Hanson has since filed a motion for entry of default against San Gabriel due to his failure to respond to the third-party complaint, undermining Hanson's argument that San Gabriel may appear and do so.

proceeding that would simultaneously protect Mariana's right to a jury trial for her wrongful death claims and resolve the questions raised by the limitation of liability case, the Court finds it appropriate to lift the stay to determine whether Marian's wrongful death case should proceed in state or federal court. *See Lewis*, 531 U.S. at 455 (saving to suitors clause preserves a claimant's right to select a forum).

As Mariana acknowledges, however, lifting the stay on the wrongful death case does not come without limitations, as the Court must ensure that Hanson's "right to seek limitation will be protected." *Id.* at 454. To that end, Mariana offers to stipulate to the following: (1) this Court has exclusive jurisdiction to decide all limitation of liability issues, including the value of the limitations fund; (2) Hanson has the right to litigate all issues related to limitation of liability, as opposed to exoneration, in the limitation proceeding; (3) Mariana stipulates to the value of the limitations fund determined by the Court as long as she has an opportunity to obtain an independent appraisal or related valuation; (4) she will not enforce or collect any judgment in excess of the limitations fund unless and until the Court adjudicates the limitation of liability case; and (5) she waives any claims of *res judicata* on issues of limited liability, as opposed to exoneration, based on any judgment she obtains in other proceedings related to the July 22, 2020 incident. *See* No. 21 C 4295, Doc. 17-1; *In re Ill. Marine Towing*, 498 F.3d 645, 653 (7th Cir. 2007) (approving similar stipulations as adequately protecting the owner's interests under the Limitation Act while allowing the claimants to pursue their claims in state court); *cf. Roen*, 17 F.4th at 763–64 (noting that stipulations to protect an owner's liability are not necessary as long as the court makes clear "any provisos that are essential to safeguard the federal right under § 30505(a)"). Hanson has not raised any issues with Mariana's stipulations or argued that they do not adequately protect its interests. In light of Mariana's concessions, which the Court

adopts, the Court lifts the stay to allow Mariana to pursue the wrongful death case against Hanson and others while the limitation of liability case remains pending.

**II. Motion to Remand the Wrongful Death Case, No. 21 C 4295, to State Court**

The Court thus turns to Mariana's motion to remand the wrongful death case to state court. 28 U.S.C. § 1333(1) provides a federal court with exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." As discussed above, the saving to suitors clause serves "as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts." *Lewis*, 531 U.S. at 444. In other words, in *in personam* cases like Mariana's wrongful death case, state and federal courts have concurrent jurisdiction over admiralty claims. *Madruga v. Superior Ct.*, 346 U.S. 556, 560–61 (1954) ("Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. . . . But the jurisdictional act does leave state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." (citations omitted)). And under the saving to suitors clause, a defendant may only remove a suit to federal court based on admiralty jurisdiction if an additional basis for federal jurisdiction exists. *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819 (N.D. Ill. Mar. 22, 2021); *Brown v. Porter*, 149 F. Supp. 3d 963, 969 (N.D. Ill. 2016).

The Hanson Defendants removed the wrongful death case to federal court on the basis of both admiralty and diversity jurisdiction. But Mariana maintains that they have not properly alleged Hanson's and Lehigh LLC's citizenships and that the addition of San Gabriel as a defendant defeats diversity jurisdiction and requires the Court to remand the wrongful death case

to state court. Initially, the Court finds that the Hanson Defendants have sufficiently established that Hanson and Lehigh LLC are not Illinois citizens, making these allegations in the notice of removal and supplementing them by affidavit in response to Mariana's motion to remand. *See* Doc. 1 ¶¶ 26–27 (Hanson is a Kentucky corporation with its principal place of business in Texas, while Lehigh LLC's sole member is Lehigh Inc., a Delaware corporation with its principal place of business in Texas); Doc. 20-1 (same). Thus, this argument of Mariana's has no merit.

As for the addition of San Gabriel, an Illinois citizen, the Hanson Defendants argue that the Court should not take his citizenship into account because his addition as a defendant after the time of removal does not affect the Court's subject matter jurisdiction. The Hanson Defendants first contend that the Court cannot consider the argument because Mariana raised it over thirty days after the removal of the case and it does not go to the Court's subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). But because the saving to suitors clause's bar on removal of a case filed in state court based solely on admiralty jurisdiction goes to the Court's subject matter jurisdiction, the Court must address whether San Gabriel's addition as a defendant requires remand of the wrongful death case to state court. *See* *Brown*, 149 F. Supp. 3d at 969 (although admiralty jurisdiction does not on its own provide a basis for federal jurisdiction in an *in personam* case where a claimant files in state court, "a defendant may remove an admiralty case if there is an independent basis for federal subject matter jurisdiction—*i.e.*, a basis other than admiralty, such as complete diversity of citizenship with the requisite amount in controversy under 28 U.S.C. § 1332(a).").

As for the substance of the argument, the Hanson Defendants maintain that the Court should only consider whether diversity jurisdiction existed at the time of removal and not take into account any post-removal changes. *See In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."). But § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d 997, 999–1000 (N.D. Ill. 2003) (Section 1447(e) displaces the general rule that diversity jurisdiction is determined at the time a case is filed with respect to the post-removal joinder of non-diverse defendants). This is exactly the situation here: after removal of the case to federal court, Mariana filed a second amended complaint that named San Gabriel, a non-diverse party, as an additional defendant. Although the Hanson Defendants argue in a conclusory fashion that Mariana fraudulently joined San Gabriel in an attempt to manipulate jurisdiction, the Court cannot conclude that Mariana has no chance of succeeding on her claim against him, particularly in light of the Hanson Defendants' own contentions that San Gabriel bears responsibility for the capsizing of the motorboat and Victor's death. *See Poulos v. Naas*, 959 F.2d 69, 73 (7th Cir. 1992) (to find fraudulent joinder, a court must conclude that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the [non-diverse] defendant"). Therefore, San Gabriel's addition as a defendant destroys diversity jurisdiction and requires the Court to remand the wrongful death case to state court. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) ("[T]he district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction."); *Johnlewis v. Apache*

*Indus. Servs., Inc.*, No. 21-504, 2021 WL 6112558, at *3–4 (E.D. La. Dec. 27, 2021) ("The Court lacks jurisdiction because Plaintiff originally filed his claim in state court pursuant to the Savings to Suitors Clause. Although the case was removed based on diversity jurisdiction, diversity has been destroyed by the addition of a non-diverse defendant. And, because Plaintiff originally filed suit pursuant to the Savings to Suitors Clause 'exception' to original jurisdiction, this Court cannot exercise jurisdiction based on § 1333.").

**CONCLUSION**

For the foregoing reasons, the Court grants Mariana's motion to lift the stay in the limitation of liability case [No. 21 C 4295, Doc. 17] and lifts the stay as to Mariana's wrongful death claims against Hanson, subject to the conditions outlined in the stipulation Mariana filed in connection with her motion to lift the stay [No. 21 C 4295, Doc. 17-1]. In the wrongful death case, the Court grants Mariana's amended motion to remand [No. 21 C 3936, Doc. 17] and denies Mariana's initial motion to remand [No. 21 C 3936, Doc. 13] as moot. The Court remands Mariana's wrongful death case, No. 21 C 3936, to the Circuit Court of Cook County, Illinois.

Dated: March 9, 2022

SARA L. ELLIS
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,

Plaintiff,

v.

MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL,

Defendants.

Case No. 1:21-cv-03936

Judge Sara L. Ellis

Magistrate Judge Sunil R. Harjani

**PLAINTIFF'S AMENDED MOTION TO REMAND THE MATTER TO STATE COURT**

NOW COMES Plaintiff, MARIANA M. OCHOA ("Plaintiff") as Independent Administrator of the Estate of VICTOR LOBATO OCHOA ("Victor"), Deceased, by her attorneys WISE MORRISSEY, LLC. against Defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION ("Material"); LEHIGH HANSON SERVICES LLC. ("Lehigh LLC."); LEHIGH HANSON, INC. ("Lehigh Inc."), CAPTAIN KENNETH L. STUBBS ("Stubbs") and CELIO SAN GABRIEL ("San Gabriel"), for her Amended Motion to remand the matter to State Court[1].

**Introduction**

[1] Plaintiff's Amended Motion to Remand is filed in response to the Plaintiff's Second Amended Motion being filed on August 31, 2021. (Dkt. 16). In particular, Plaintiff's Second Amended Complaint added Defendant Celio San Gabriel to the Complaint. Defendant San Gabriel is a resident of Cook County, Illinois.

Plaintiff's Motion seeks to remand the above matter to State Court pursuant to 28 U.S. Code § 1447(c) for the following reasons: 1) the Court lacks subject matter jurisdiction since the Single Claimant exception applies to the present matter; 2) Defendants' Notice of Removal is deficient for failing to list the citizenship of each of Defendant Lehigh Hanson Services LLC.'s partners, limited partners and members; 3) the parties lack complete diversity where Defendant San Gabriel is a citizen of Illinois and Material's principle place of business is in Illinois.

**Procedural History**

On July 22, 2020, at approximately 6:40 p.m., San Gabriel was operating a 16-17 foot long open motorboat on the Chicago River with eight additional passengers, including three adults and five small children. (Exhibit 1, First Amended Complaint ¶21). All eight occupants of the motorboat were wearing Personal Flotation Devises (PFD) including the Plaintiff and Victor. (Exh. 1, ¶22). At that time, Defendant Captain Kenneth L. Stubbs ("Stubbs") was operating the towboat Kiowa ("Kiowa") which was 76 feet long and 26 feet wide. (*Id.* at. ¶ 11). The Kiowa was pushing a barge that was 195 feet long and 35 feet wide, while being fully loaded with aggregate. (*Id.* at ¶11). The First Amended Complaint alleges that Defendant Stubbs was an employee of Defendants Material, Lehigh LLC. and/or Lehigh Inc. (*Id.* at ¶12-14).

According to witness accounts and an investigation by the Illinois Department of Natural Resources ("IDNR"), the Kiowa was traveling at a speed that created large wakes in the Chicago River, which was a strict no-wake zone. (*Id.* at ¶¶33-35). At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in it capsizing and the occupants being thrown overboard. (*Id.* at ¶29). Victor was trapped underneath the motorboat and tragically drowned. (*Id.* at ¶30). A subsequent IDNR investigation concluded that the "cause of the accident" was the "force of wake" created by the Kiowa and barge. (*Id.* at ¶34).

On July 1, 2021, Plaintiff filed her original Complaint in the Circuit Court of Cook County, Illinois, County Department, under Case No. 2021-L-006726. (Exhibit 2, Original Complaint). Plaintiff's original Complaint was served on Defendants Material and Lehigh Hanson Services LLC on July 14, 2021, and Defendant Stubbs on July 17, 2021. (Dkt. 1, pg.3, 43-45). Plaintiff filed her First Amended Complaint in the Circuit Court of Cook County on July 22, 2021. (Exh. 1). Defendants filed their Notice of Removal of Plaintiff's original Complaint on July 24, 2021. (Dkt. 1). Finally, on August 31, 2021, plaintiff filed her Second Amended Complaint. (Dkt. 16).

## Argument

### I) The Court lacks subject matter jurisdiction where the Single Claimant exception applies.

Defendants claim that this Court has original jurisdiction based on admiralty and pursuant to 28 U.S.C. § 1333(1) which states "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled". (Dkt. 1, pg.3). As stated, the "savings to suitors" clause in 28 U.S.C. § 1333(1), reserves to suitors in admiralty or maritime cases their common-law remedies. These remedies include the right to select a forum and the right to demand a jury trial. *See American River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009); *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *see also In re McCarthy Brothers Co.*, 83 F.3d 821, 826–27 (7th Cir.1996) (describing the conflict between the "savings to suitors" clause and the ship owner's right to limited liability under 46 U.S.C § 30511(c) as "significant" because claimants have no right to a jury trial in admiralty actions in federal court, and holding that a federal court must allow a claimant to proceed in state court if the owner fails to prove her right to limited liability).

The Supreme Court has determined that in light of this conflict between the public interest in protecting the shipping industry reflected in the Limitation Act, and the strong interest in

preserving common law remedies for injured parties underlying the "savings to suitors" clause of § 1333(1), district courts have discretion to allow a case to proceed in state court if certain conditions are met. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). The Supreme Court and the Seventh Circuit recognize two situations in which a district court should allow a state court action involving a maritime claim to proceed: (1) the "single claimant" exception; and (2) the "adequate fund" exception. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 154 (1957); *Langnes v. Green,* 282 U.S. 531, 541 (1931); *see also In re Illinois Marine Towing, Inc.,* 498 F.3d 645, 650 (7th Cir.2007).

As its name suggests, the "single claimant" exception exists when there is only a single claimant asserting his claim(s) against the shipowner—in that case, the Supreme Court has held that there is no need for the "peculiar and exclusive jurisdiction of an admiralty court," and the district court should allow the action to proceed in state court, while retaining exclusive jurisdiction over the question of liability limitation. *Langnes,* 282 U.S. at 541–42. The Supreme Court reasoned that for a district court to retain the suit when a state court could afford relief "would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a common law remedy; [whereas] to remit the cause to the state court would be to preserve the rights of both parties." *Illinois Marine,* 498 F.3d at 650; *citing Langnes,* 282 U.S. at 541.[2] In the present case, Plaintiff has brought a single claim against the Defendants on behalf of her son, Victor. Therefore, the "single claimant" exception applies to the present matter and the "saving to suitors"

[2] Defendants have not sought to stay the underlying state matter pursuant to Limitation of Liability Act (Limitation Act). 46 U.S.C. § 30505. Assuming Defendants seek such a stay, the Plaintiff is willing to enter into the requisite stipulation needed to waive any claim of *res judicata* against Defendants based on a state court decision or judgment with respect to issues arising under the Limitation Act. In addition, Plaintiff is willing to stipulate that she would not seek to enforce any state court decision or judgment on any claim subject to limitation under the Act which exceeds the value of the limitation fund as determined by the District Court.

clause of 28 U.S.C. § 1333(1) prevents the Court from having subject matter jurisdiction over the present matter.

**II) Defendants have failed to satisfy their burden to establish diversity.**

Defendants claim that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). because the corporate Defendants and tugboat captain are allegedly not "citizens" of the same state as the Plaintiff. (Dkt. 1, pg.3). For an individual, "[s]tate citizenship for the purpose of the state diversity provision is equated with domicile." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). For a corporation, it is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

"When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). Ultimately, the removing party must establish the facts determining federal jurisdiction by a preponderance of the evidence. *Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 590 (7th Cir. 2008). The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993). As the Supreme Court has long instructed, federal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction. *See Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900).

In the present case, defendant San Gabriel was the owner and operator of the open motorboat that Plaintiff and Victor were traveling in at the time of the accident. (Dkt. 16, Second Amended Complaint ¶25). Importantly, San Gabriel was a "citizen" and resident of Cook County, Illinois at the time of the accident. Therefore, the parties lack "diversity" and this Court lacks

jurisdiction over this matter whether both Plaintiff and Defendant San Gabriel are "citizens" of Illinois.

When it comes to corporations, the diversity statute itself makes clear that a corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business." *See* 28 U.S.C. § 1332(c)(1). The Supreme Court has determined that a corporation's principal place of business is the same as its "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp*., 559 U.S. at 80. Determining the citizenship of other forms of business associations is often more difficult. *Page v. Democratic National Committee*, 2 F.4th 630, 635 (7th Cir. June 21, 2021). Partnerships, for example, are citizens of every state in which an individual partner is a citizen. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). The same rule applies to other unincorporated entities, like limited liability companies, whose citizenship is also determined by the citizenship of its "members." *See Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381–82 (2016); *see* e.g., *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990) (citizenship of a partnership is that of every partner or member, limited as well as general). The only way to determine citizenship for diversity purposes is to look at the individual partners—an analytical path repeatedly endorsed by the Supreme Court. *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)

First, Defendants' Notice fails to list the citizenship of Defendant Lehigh Hanson Services LLC.'s individual partners or members. (Dkt. 1, ¶27). Instead, the Notice provides a single paragraph regarding the citizenship of Lehigh Hanson Services LLC. claiming that it is "wholly owned" by non-defendant Lehigh Hanson Inc. (*Id.*). As such, Defendants claim that Lehigh Hanson Services LLC. is a Delaware Corporation with its principal place of business in Texas.

(*Id.*). As the Supreme Court and Seventh Circuit have repeatedly held, the party claiming diversity jurisdiction must detail the citizenships of all its partners, limited partners and members. *See. Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (The citizenship of a partnership is the citizenship of the partners, even if they are limited partners, so that if even one of the partners (general or limited) is a citizen of the same state as the plaintiff, the suit cannot be maintained as a diversity suit). In fact, a party's failure to provide such requisite information has led to dismissal for want of prosecution. *See Guaranty National Title Co. v. J.E.G. Associates,* 101 F.3d 57 (7th Cir.1996) (Failure to go through all the layers can result in dismissal for want of jurisdiction).

Second, Defendants' Notice fails to satisfy their burden to establish that Defendant Material d/b/a Hanson Material Service Corporation does not have its principal place of business in Illinois. Defendants' Notice contains the claim that Material "merged with and into" Hanson Aggregate Midwest Inc. "on or about February 21, 2021", approximately seven months after the drowning occurred. (Dkt. 1, pg.1 n.1). The Notice goes on to make the conclusory claim that since Hanson Aggregates Midwest Inc. was organized under the laws of Kentucky and has its principal place of business in Texas, than Defendant Material shares the same citizenship. (Dkt. 1, ¶26). However, the single paragraph in Defendants' Notice fails to satisfy their burden to establish that Material does not maintain its principal place of business in Illinois. In reality, Material was formed in Chicago, Illinois by the Crown family in 1919 and has maintained its principal place of business in this state ever since.  Moreover, Material currently has more than 800 employees working in Illinois and Indiana, and although Material purportedly merged with Hanson Aggregate Midwest Inc. in February 2021, Material still maintains its principle place of business in Illinois. *See* http://www.ceram.com/news/mar/material-service.htm last visited August 23, 2021).

**Conclusion**

Wherefore, Plaintiff Mariana M. Ochoa as Independent Administrator of the Estate of Victor Lobato Ochoa, Deceased respectfully requests that this Court grant her Motion to Remand the matter to State Court.

Respectfully submitted,
MARIANA M. OCHOA

By: /s/ *Michael L. Gallagher*
One of Her Attorneys

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

SHORT RECORD
NO. 22-1511
FILED 3/30/22

No. 22 -

---

**U.S. COURT OF APPEALS for the SEVENTH CIRCUIT**

---

In Re Hanson Aggregates Midwest, Inc., Lehigh Hanson Services LLC, Lehigh Hanson, Inc. and Captain Kenneth L. Stubbs,
*Petitioners*

---

On Petition for a Writ of Mandamus to the United States District Court for the Northern District of Illinois in No. 1:21-cv-03936-SLE

---

**PETITION FOR A WRIT OF MANDAMUS**

---

GOLDSTEIN and PRICE, L.C.
Neal W. Settergren
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1700

AND

LAW OFFICE OF ALAN K. GOLDSTEIN
Alan K. Goldstein
P.O. Box 2595
Napa, CA 94558
(415) 870-5127

*Attorneys for Petitioners*

**Exhibit D**

Case: 22-1511 Document: 1 Filed: 03/30/2022 Pages: 27

## TABLE OF CONTENTS

RELIEF SOUGHT ........ 1

ISSUE PRESENTED ........ 1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ........ 1

REASONS WHY THE WRIT SHOULD ISSUE ........ 5

I. Introduction ........ 5

II. Review of the Remand Order is Appropriate by Writ of Mandamus ........ 5

III. Remand Was Not Authorized by 28 U.S.C. §1447(e) Because Defendant San Gabriel's Post-Removal Joinder Destroyed Only Diversity, Not Admiralty Jurisdiction ........ 8

IV. Savings to Suitors Clause Does Not Affect Jurisdiction After Proper Removal 11

V. The Cases Relied Upon by the District Court Do Not Authorize Remand Here 12

VI. The District Court Was Duty-Bound to Exercise Jurisdiction; The Writ Should Compel the District Court to Properly Exercise its Authority ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases**

*Adkins v. Illinois Central Railroad Company*, 326 F.3d 828, 829-832 (7th Cir. 2003) ................ 14

*Brown v. Porter*, 149 F.Supp. 3d 963 (N.D. Ill. 2016) ........................................................ 12, 13

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) ................................................ 14

*Curry v. Boeing Company*, 2021 WL 1088325 (N.D. Ill. 3/22/2021) .......................................... 12

*Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)....................................................... 10

*Gossmeyer v. McDonald*, 128 F.3d 481, 487-488 (7th Cir. 1997) ................................................. 5

*In re Burlington N. Santa Fe Ry Co.*, 606 F.3d 379, 380 (7th Cir. 2010)................................. 5, 13

*In re Garvey Marine, Inc.*, No. 03 C 5967, 2004 WL 2005824, at *2 (N.D. Ill. Sept. 3, 2004) .. 10

*In the Matter of Amoco Petroleum Additives Company*, 964 F.2d 706, 708-709 (7th Cir. 1992) ........................................................................................................ 1, 6, 14

*In the Matter of Shell Oil Company*, 966 F.2d 1130 (7th Cir. 1992).............................................. 7

*In the Matter of Shell Oil Company*, 970 F.2d 355,356 (7th Cir. 1992)............................. 1,6 8, 14

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)........ 9, 10

*Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015).............................................. 2,10, 11, 13

*Madruga v. Superior Court of California*, 346 U.S. 556, 560-561 (1954).................................. 11

*Peyroux v. Howard*, 32 U.S. 324, 341 (1833)................................................................................ 9

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ...................................................... 13

*Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943) .......................................................... 13

*Schur v. LA Weight Loss Centers, Inc.*, 577 F.3d 752 (7th Cir. 2009) .......................................... 12

*Sisson v. Ruby*, 497 U.S. 358, 363–65, 364 n.2 (1990)................................................................. 9

**Statutes**

28 U.S.C. §1333(1) .......... 9, 11

28 U.S.C. §1441 .......... 9

28 U.S.C. §1441(a) .......... 11

28 U.S.C. §1441(b) .......... 11

28 U.S.C. §1447(c) .......... 8

28 U.S.C. §1447(d) .......... 8

28 U.S.C. §1447(e) .......... passim

28 U.S.C. §1651(a) .......... 13

**Other Legal Authorities**

U.S. CONSTITUTION. Art. III section 2, cl 3 .......... 9

**RELIEF SOUGHT**

Petitioners respectfully seek a writ of mandamus compelling the U.S. District Court for the Northern District of Illinois to vacate its Opinion and Order, filed March 9, 2022, that grants an Amended Motion to Remand this case to state court despite (1) proper removal from the Circuit Court of Cook County, Illinois based upon admiralty and diversity of citizenship jurisdiction and (2) the continued presence of federal subject matter jurisdiction because this is an admiralty case even after the Plaintiff amended her Complaint, following removal, to eliminate diversity.

**ISSUE PRESENTED**

Whether a case that properly was removed from state to federal court can be remanded because of a post-removal amended complaint that eliminates diversity jurisdiction but does not destroy subject matter jurisdiction since this is an admiralty case. "When a district judge remands a properly-removed case because of subsequent events, this court has both the authority and the duty to rescind that remand." *In the Matter of Shell Oil Company*, 970 F.2d 355 (7th Cir. 1992) (*per curiam*), citing *In the Matter Amoco Petroleum Additives Co.*, 964 F.2d 706, 708-709 (7th Cir. 1992); 28 U.S.C. §1447(e) (which requires remand only if a post-removal joinder of additional Defendants "would destroy *subject matter jurisdiction*," not just diversity jurisdiction) (emphasis added).

**FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED**

Plaintiff Mariana Ochoa filed her Complaint in Cook County, Illinois on July 1, 2021 seeking wrongful death and survival damages against Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation ("Hanson Aggregates"), Lehigh Hanson Services LLC ("LHS"), Captain Kenneth L. Stubbs ("Captain Stubbs"), and Heidelberg Cement Group ("Heidelberg"). Opinion and Order filed March 9, 2022, Document 38, at 1 (Exhibit A in the attached Appendix); Notice of Removal, Document 1, at 1-2

(Exhibit B in the attached Appendix); Complaint at Law (Exhibit C in the attached Appendix). Captain Stubbs was navigating a Hanson Aggregates towboat and barge on the Chicago River, indisputably a navigable waterway of the United States, when a pleasure boat operated by Celio San Gabriel capsized and one of its occupants, a child, drowned. Exhibit A at 1. On July 24, 2021, Defendants timely and properly removed this case to the U.S. District Court for the Northern District of Illinois under both diversity jurisdiction and admiralty jurisdiction, *citing Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015) (approving removal based on admiralty jurisdiction). Exhibit A at 1-2; Exhibit B at 3-10. The case was assigned to the Honorable Sara L. Ellis. *See* Exhibit A at 1.

On August 23, 2021, Plaintiff moved to remand this matter to state court for three reasons, each of which was meritless. Exhibit A at 2; Plaintiff's Motion to Remand filed August 23, 2021, Document 13 at 1-2, 4-7 (Exhibit D in the Appendix). First, Plaintiff misstated the applicable admiralty law by improperly conflating admiralty jurisdiction with an abstention doctrine known as the "Single Claimant Exception," which was not then before the District Court. Second, Plaintiff claimed Defendants did not adequately identify the citizenship of Defendant LHS, but the District Court later rejected that assertion because, as stated in the Notice of Removal, LHS is a citizen of Delaware and Texas because its *sole* owner (and, therefore, sole member) is Defendant Lehigh Hanson, Inc., which is a citizen of Delaware (its state of incorporation) and Texas (its principal place of business). Exhibit A at 6-7. Third, and finally, Plaintiff incorrectly asserted—based solely on a 2006 news article—that Defendant Hanson Aggregates had its principal place of business in Illinois and therefore was a citizen of Illinois. The District Court later rejected this allegation too because Hanson Aggregate's principal place of business, and nerve center, is—as stated in the Notice of Removal—in Texas, not Illinois. Exhibit A at 6-7; Response in Opposition to Plaintiff's Motions to Remand filed September 21, 2021, Document 20 at 1-14 (Exhibit E in the Appendix).

Case: 22-1551 Document: 1 Filed: 03/30/2022 Pages: 27

On August 30, 2021, more than 30 days after removal, the District Court granted Plaintiff leave to file a Second Amended Complaint, which she filed on August 31. Exhibit A at 2; Second Amended Complaint at Law, Document 16 (excerpt) (Exhibit F in the Appendix). (A First Amended Complaint was filed in Cook County and not served until after removal, so it did not become part of this case. In any event, it did not alter the parties or substantive allegations.) The Second Amended Complaint added Defendants Celio San Gabriel, the operator of the pleasure boat, and Lehigh Hanson Inc. Exhibit A at 2; Exhibit F at 1-3. It deleted Heidelberg Cement Group, actually known as Heidelberg Cement AG. Exhibit A at 2; Exhibit F at 1-3. On September 3, 2021—more than 30 days after the case had been removed—Plaintiff filed an "Amended Motion to Remand the Matter to State Court." Exhibit A at 2; Plaintiff's Amended Motion to Remand the Matter to State Court, Document 17 (Exhibit G in the Appendix). Plaintiff's amended motion largely repeated her original motion, but also argued that the post-removal addition of Defendant San Gabriel (whom she did not serve) in her Second Amended Complaint destroyed diversity of citizenship and—Plaintiff claimed—subject matter jurisdiction. *Id.*; Exhibit A at 6; Defendants' Supplemental Brief in Opposition to Remand, Document 37 at 2 (Exhibit H in the Appendix).

Petitioners timely opposed the motion to remand and amended motion to remand. Among other things, Petitioners informed the District Court that the case had been properly removed to federal court and explained that even if diversity jurisdiction were defeated, because of the Amended Complaint, federal subject matter jurisdiction remained since this is an admiralty case. Exhibit E at 5.

On August 11, 2021, and pursuant to its rights under Rule F and the Limitation of Liability Act, Defendant Hanson Aggregates filed a related Complaint in the Northern District of Illinois seeking exoneration from, or limitation of, liability arising from the voyage that is the subject matter of Plaintiff's lawsuit. Exhibit A at 2. Defendant Hanson Aggregate's limitation case was

Case: 22-1511 Document: 1 Filed: 04/13/2022 Pages: 20

assigned to District Judge Manish S. Shah. Consistent with Rule F and the Limitation Act, Judge Shah entered an injunction on September 8, 2021 to stay and restrain the prosecution of any legal action against Defendant Hanson Aggregates, except in its limitation case, No. 1:21-cv-4295. Exhibit A at 2. On January 14, 2022, the limitation case was reassigned to Judge Ellis. Exhibit A at 2, Footnote 1. In the same Opinion and Order granting the remand that Petitioners hereby challenge, Judge Ellis first lifted the stay in the limitation case so that she could decide the remand issue in the instant Ochoa lawsuit. Exhibit A at 2-6. Petitioners do not challenge herein the portion of the Opinion and Order that lifts the stay. Only the remand of the Ochoa lawsuit is at issue in this Petition. The limitation case is not.

In granting Plaintiff's Amended Motion to Remand, the District Court did not question that removal properly had been accomplished at the time of removal. *See* Exhibit A. Rather, the District Court explained that it "must remand the wrongful death case to state court because Plaintiff Ochoa originally filed suit in state court pursuant to the Savings to Suitors Clause exception to federal courts' exclusive admiralty jurisdiction and the addition of San Gabriel as a Defendant means that diversity jurisdiction no longer supplies the required additional jurisdictional basis to support the case's removal to federal court." Exhibit A at 3. The District Court also invoked 28 U.S.C. §1447(e) to support its ruling on the basis that "Section 1447(e) displaces the general rule that diversity jurisdiction is determined at the time a case is filed with respect to the post-removal joinder of non-diverse defendants." Exhibit A at 8. The District Court denied Plaintiff's original Motion to Remand as moot. Exhibit A at 9.

As Petitioners will explain in greater detail in the following section, the District Court's Opinion and Order (1) ignored the essential fact that *at the time of removal* both diversity of citizenship and admiralty jurisdiction existed such that removal unquestionably was proper; and (2) 28 U.S.C. §1447(e) does not refer to post-removal joinder of additional defendants destroying

diversity of citizenship jurisdiction and therefore requiring remand; rather, it refers to remand being required when post-removal joinder destroys "subject matter jurisdiction," which is not the case here because admiralty jurisdiction continues to provide "subject matter jurisdiction" even in the absence of diversity of citizenship.

**REASONS WHY THE WRIT SHOULD ISSUE**

**I. Introduction**

The requested writ compelling the District Court to vacate its remand order should issue because the District Court exceeded its authority by remanding to state court a case that properly had been removed to federal court at the time of removal and which could not be remanded based upon 28 U.S.C. §1447(e) because the post-removal amendment to Plaintiff's Complaint destroyed only diversity jurisdiction, not "subject matter jurisdiction" since admiralty jurisdiction remains.

**II. Review of the Remand Order is Appropriate by Writ of Mandamus**

Despite the general limitation on appellate review of orders of remand, this Court has jurisdiction here by writ petition because no part of 28 U.S.C. §1447, which governs procedure after removal, permits remand under these circumstances. As this Court has recognized, a motion to remand for lack of subject matter jurisdiction has a temporal component to it. Because federal court jurisdiction is determined as of "the instant of removal," a post-removal amendment of the complaint generally does not affect whether a properly removed case shall remain in federal court. *In the Matter of Shell Oil Company*, 970 F. 2d 355, 356 (7th Cir. 1992) (*per curiam*); *In re Burlington N. Santa Fe Ry Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."); *Gossmeyer v. McDonald*, 128 F.3d 481, 487-488 (7th Cir. 1997) ("Once an action is properly removed from state court to federal court, an amendment of the complaint rendering it outside the federal court's jurisdiction does not defeat the original removal.").

There is, of course, an exception "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction…''. 28 U.S.C. §1447(e). In that instance, post-removal remand is permissible—indeed, it is required if joinder is allowed—even though removal was proper at the time of removal; but that is not the circumstance here. Post-removal amendment of Plaintiff's Complaint destroyed diversity of citizenship jurisdiction, not subject matter jurisdiction since this is an admiralty case. Accordingly, appellate review is available by writ petition because this is not a case in which the District Court erred in believing subject matter jurisdiction never existed or properly concluded that 28 U.S.C. §1447(e) afforded a basis for remand because of a post-removal joinder that destroyed subject matter jurisdiction. Rather, when "subsequent events" have caused a District Court to order remand without legal authority, this Court has recognized not only its own authority, but its duty to review the order of remand. *In the Matter of Shell Oil Company*, 970 F.2d 355, 356 (7th Cir. 1992) (*per curiam*), citing *In the Matter of Amoco Petroleum Additives Company*, 964 F.2d 706, 708-709 (7th Cir. 1992).

In *In the Matter of Amoco Petroleum Additives Company*, plaintiffs, including a labor union, sued in state court over alleged employer violations of privacy rights. The defendants removed the case to federal court because the presence of the union as a plaintiff implicated a federal question involving labor relations issues covered by federal statute. After removal, the plaintiffs amended their complaint to remove the labor union as a plaintiff and argued therefore that no federal question was present, such that federal subject matter jurisdiction was missing and the case should be remanded. The District Court granted remand even though it appeared that the District Court recognized the existence of federal subject matter jurisdiction at the time of the removal, before the amendment had deleted the union as a party. The defendants petitioned this Court for a writ of mandamus to compel the District Court to vacate its order of remand. This Court granted the writ. Regarding the issue of whether the appellate court could review an order

of remand, this Court stated: "But we understand *Carnegie-Mellon* to permit review when the district judge believes that removal was proper and that later developments authorize remand. If the judge believed that subject-matter jurisdiction was missing at the outset, however, §1447(d) puts the remand beyond our ken." 964 F. 2d at 708. Undoubtedly Judge Ellis thought removal was proper in this case at the time of removal. It was only after the post-removal amendment to the Complaint that she stated—incorrectly—that the addition of San Gabriel as a Defendant "no longer" supplies the requisite jurisdictional basis. Exhibit A at 3.

Similarly, in *In the Matter of Shell Oil Company*, 966 F. 2d 1130 (1992), Dennler sued Shell Oil Company in state court for breaching his employment contract that included an annual $70,000 salary. Shell removed the case to federal court on diversity of citizenship jurisdiction. *Id.* at 1131. At that time, the jurisdictional minimum for diversity cases was more than $50,000. Shell argued that the jurisdictional minimum was satisfied because the amount in dispute potentially involved some multiple of Dennler's annual $70,000 salary. *Id.* Dennler moved to remand the case and included a stipulation that he was not seeking more than $50,000 in damages. Citing his post-removal stipulation, Dennler argued the case did not satisfy the jurisdictional minimum to support federal subject matter jurisdiction based upon diversity of citizenship. *Id*. at 1131-1132. The District Court granted the motion for remand without explanation. *Id*. at 1132.

Shell petitioned this Court for a writ of mandamus, urging that the remand had been granted without proper authority because federal subject matter jurisdiction had existed at the time of removal based upon diversity of citizenship. *Id.* at 1131-1132. This Court initially issued a partial writ of mandamus compelling the District Court to explain the reason for the remand so that this Court could determine whether it should set aside the remand order. *Id*. at 1133. Citing its prior decision in the *Amoco* case, this Court explained that 28 U.S.C. §1447(d) did not bar its review of the remand order if the District Court believed that the case was properly removed, but then granted

a remand because of the post-removal stipulation about the damages being sought. *Id*. at 1132. This Court explained that a District Court's decision about whether to issue a remand under 28 U.S.C. §1447(d) and its companion subpart 28 U.S.C. §1447(c) carries with it a temporal component; that is, the issue of whether federal subject matter jurisdiction exists such that the case should remain in federal court, or does not exist such that the case should be remanded, depends upon the circumstances as they existed at the time of removal, not as they might exist at some subsequent point. *Id.* at 1133.

Thereafter, in a related decision in the same case, *In the Matter of Shell Oil Company*, cited earlier, this Court considered the District Court's new opinion explaining the reasons for its decision to remand the *Shell* case. 970 F. 2d 355. The District Court's explanation proved that the District Court had issued its remand because of the plaintiff's post-removal stipulation that he was not seeking less than the jurisdictional minimum. *Id*. at 356. Accordingly, this Court granted the petition for a writ of mandamus and issued the writ compelling the District Court to vacate its remand order. As this Court explained, "Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint. When a district judge remands a properly-removed case because of subsequent events, this court has both the authority and the duty to rescind that remand." *Id*. at 356. That is exactly the situation in the instant case. The only circumstance that the District Court identified to support its remand was the post-removal addition of San Gabriel as a Defendant. Exhibit A at 3. The District Court never questioned that removal was proper at the time removal was accomplished before Defendant San Gabriel was joined.

### III. Remand Was Not Authorized by 28 U.S.C. §1447(e) Because Defendant San Gabriel's Post-Removal Joinder Destroyed Only Diversity, Not Admiralty Jurisdiction

Contrary to the District Court's Opinion and Order, remand was not authorized or compelled by 28 U.S.C. §1447(e) because of Defendant San Gabriel's joinder. As this Court is aware, that section requires a remand to state court if, after removal, joinder is permitted of an additional defendant whose presence "would destroy *subject matter jurisdiction*." 28 U.S.C. §1447(e) (emphasis added). But the post-removal addition of alleged Illinois resident and Defendant San Gabriel did not destroy subject matter jurisdiction. Rather, Defendant San Gabriel's addition only destroyed diversity of citizenship jurisdiction. His addition had no impact on admiralty jurisdiction which, as case law has long held, is available regardless of the citizenship of the parties. *See, e.g., Peyroux v. Howard*, 32 U.S. 324, 341 (1833) ("The want of jurisdiction in the district court is not put on the ground set up in the plea in the court below, that all parties were citizens of the same state. This has been very properly abandoned here, as entirely inapplicable to admiralty proceedings in the district court.")

Defendants have the right to remove to federal court a case filed in state court that could have been originally filed in federal court. 28 U.S.C. §1441. Federal courts "have original jurisdiction…of…[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. §1333(1); *see* U.S. CONST. Art. III §2, cl. 3. A civil case is one of "admiralty jurisdiction" if (1) the alleged "tort occurred on navigable water" (the location test), and (2) the activity in question has "a potentially disruptive impact on maritime commerce" and bears a "substantial relationship to traditional maritime activity" (the connection test). *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–65, 364 n.2 (1990)); *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 813–817 (7th Cir. 2015).

The incident at issue centers around the drowning of a passenger when a motorboat capsized allegedly because of a towboat and its barge then engaged in maritime commerce on a

navigable waterway, the Chicago River. This incident not only *potentially* disrupted maritime commerce, but actually disrupted maritime commerce. The towboat and barge were held up while various government agencies, including the Illinois Department of Natural Resources, the Chicago Fire and Police Departments, and the United States Coast Guard, undertook rescue operations. The first prong of the connection test therefore is easily satisfied as the incident had more than the required "potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 363–65, 364 n.2).

The second prong of the connection test for admiralty jurisdiction asks whether the activity bears a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. The key question is "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law." *Id.* at 539. "Navigation of boats in navigable waters clearly falls within the substantial relationship." *Id.* at 540. The Supreme Court has also noted that the "primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982).

Here, the incident involved the operation of a towboat and barge engaged in maritime commerce and a pleasure craft, all of which were travelling on navigable waters. This type of maritime activity "clearly falls within the substantial relationship." *Grubart*, 513 U.S. at 540; *see also In re Garvey Marine, Inc.*, No. 03 C 5967, 2004 WL 2005824, at *2 (N.D. Ill. Sept. 3, 2004) (finding relation between traditional maritime activity and tugboat pushing two barges over navigable waterway). The second prong of the connection test is therefore satisfied as the alleged tort bears a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534.

Both prongs of the connection test for establishing admiralty jurisdiction are therefore satisfied. *Id.* at 534; *Lu Junhong*, 792 F.3d at 815–16. Accordingly, because the location and

connection tests are both satisfied, the District Court has admiralty jurisdiction over the present case, and the case was removable under the plain language of 28 U.S.C. §1441(a); *Lu Junhong*, 792 F.3d at 818. Even Plaintiff Ochoa has acknowledged, in the companion limitation case, "that the incident that forms the basis of this litigation is within the scope of federal admiralty and maritime jurisdiction." Exhibit I at 2.

### IV. Savings to Suitors Clause Does Not Affect Jurisdiction After Proper Removal

Contrary to the District Court's Opinion and Order, the Savings to Suitors Clause does not control or affect whether this case should have been remanded.

Found in 28 U.S.C. §1331(1), the Savings to Suitors Clause leaves state courts competent to adjudicate maritime causes of action that are brought *in personam*. *Madruga v. Superior Court of California*, 346 U.S. 556, 560-561 (1954). The District Court held that the Savings to Suitors Clause requires an independent basis for jurisdiction in order for an admiralty case to be removed from state to federal court. That is a contested question, especially after an amendment to 28 U.S.C. §1441(b) in 2011. *See Lu Junhong*, 792 F.3d at 817. But even if we assume for the sake of argument that the Savings to Suitors Clause requires an independent basis for jurisdiction to remove an admiralty case—a point we do not concede—it makes no difference for purposes of this case. At the time this case was removed, diversity of citizenship unquestionably provided an independent basis for subject matter jurisdiction if one was needed. Defendant San Gabriel (by Plaintiff's own choosing) was not a party Defendant at the time of removal. Plaintiff did not add San Gabriel as a Defendant until more than 30 days after she found herself in federal court due to a proper removal. Diversity existed in his absence at the time of removal, as the District Court's Opinion and Order confirms. Accordingly, whether one concludes that removal of an admiralty case from state to federal court requires an independent basis for jurisdiction at the time of removal, diversity jurisdiction existed at the time of removal and provided that independent basis, so there can be no

question about whether removal was properly accomplished. In other words, to the extent, if any, that the Savings to Suitors Clause affected the propriety of removal, its demand was satisfied. No statute or common law jurisprudence holds that the Savings to Suitors Clause somehow exercises an ongoing restraint on admiralty jurisdiction such that an independent basis for jurisdiction must exist indefinitely, even after a proper removal, for an admiralty case to remain in federal court.

### V. The Cases Relied Upon by the District Court Do Not Authorize Remand Here

The three cases principally relied upon by the District Court to support its remand do not authorize remand under the instant circumstances.

In *Schur v. LA Weight Loss Centers, Inc.*, 577 F.3d 752 (7th Cir. 2009), the sole basis for subject matter jurisdiction was diversity of citizenship. This Court held that post-removal joinder of non-diverse defendants required a remand to state court. The District Court had denied a remand. Of course, remand was appropriate in that instance under 28 U.S.C. §1447(e) since no other basis for subject matter jurisdiction remained after the post-removal joinder that destroyed diversity. But that is not the situation here given the ongoing presence of admiralty jurisdiction.

*Curry v. Boeing Company*, 2021 WL 1088325 (N.D. Ill. 3/22/2021) denied rather than granted a remand. Removal in *Curry*, as in this case, was predicated upon admiralty and diversity jurisdiction, but it did not involve the instant factual situation in which post-removal joinder destroyed diversity but not admiralty jurisdiction. Nowhere does *Curry* suggest, let alone hold, that diversity jurisdiction must remain indefinitely after a proper removal to maintain subject matter jurisdiction and defeat remand in an admiralty case.

*Brown v. Porter*, 149 F. Supp. 3d 963 (N.D. Ill. 2016), the third case principally relied upon by the District Court to support its remand order, involved a remand of a boating accident case in which the only basis for removal was admiralty jurisdiction. The District Court in *Brown*

concluded that the Saving to Suitors Clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is admiralty jurisdiction. 149 F. Supp. 3d at 973. *Brown*'s value as precedent may be questionable because it disagrees with this Court's reasoning in *Lu Junhong*, but the more basic point for purposes of the instant petition is that *Brown* is factually different in an essential way. The basis for remand in *Brown*, that at the time of removal only admiralty jurisdiction existed, does not match the instant case in which removal was supported by both admiralty and diversity jurisdiction and therefore unquestionably was proper "at the time of removal" regardless of how one resolves the Savings to Suitors Clause issue. *In re Burlington N. Santa Fe Ry Co.*, 606 F. 3d at 380.

### VI.     The District Court Was Duty-Bound to Exercise Jurisdiction; The Writ Should Compel the District Court to Properly Exercise its Authority

Lacking the authority to remand this case to state court, the District Court is duty-bound to exercise the federal jurisdiction granted to it by the Constitution and Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.") Having failed to do so, the District Court is subject to the discretion of this Court in issuing a writ of mandamus.

The writ of mandamus against a lower court derives from 28 U.S.C. §1651(a): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Supreme Court has explained that "[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine all inferior courts to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943). That is precisely the situation here since the District Court has subject matter jurisdiction pursuant to a proper removal

but has declined to exercise it based upon a misapprehension of the meaning of 28 U.S.C. §1447(e) and admiralty jurisdiction.

Issuance of the writ is, of course, committed to the sound discretion of this Court. But the factors which precedent identifies for exercise of the writ are satisfied here. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). First, Petitioners have no other adequate remedy to preserve their right to a federal forum. As this Court has recognized, review of an order of remand by appeal (rather than by writ petition) is not available. *Adkins v. Illinois Central Railroad Company*, 326 F.3d 828, 829-832 (7th Cir. 2003). Second, Petitioners' right to the writ is "clear and indisputable" given their showing above that denial of their right to a federal forum is due to an abuse of power by the District Court in remanding a case that was properly removed to federal court and for which remand is not authorized. *Cheney*, 542 U.S. 381. Finally, issuance of the writ is appropriate under the circumstances. *Id.* Indeed, under similar circumstances, as discussed earlier, this Court has issued writs of mandamus when District Courts improperly have remanded cases based upon post-removal events despite proper removal and the existence of subject matter jurisdiction at the time of removal. *See Shell Oil Company*, 970 F.2d 355 and *In re Amoco Petroleum Additives Co.*, 964 F. 2d 706, 708-709 discussed above.

**CONCLUSION**

Petitioners, as Defendants below, properly removed this case to the Northern District of Illinois from Cook County based upon admiralty jurisdiction and diversity of citizenship jurisdiction. More than 30 days later, Plaintiff Ochoa amended her Complaint to destroy diversity of citizenship; but her post-removal amendment did not destroy subject matter jurisdiction in the federal court because this is an admiralty case. By remanding this case based upon the Savings to Suitors Clause and 28 U.S.C. §1447(e), neither of which authorizes a remand under these circumstances, the District Court acted without legal authority and in violation of its duty to

exercise federal jurisdiction. Accordingly, the requested writ of mandamus should issue compelling the District Court to vacate its March 9, 2022 Opinion and Order, insofar as it grants remand, so that this case may proceed in the Northern District of Illinois where removal was proper and subject matter jurisdiction exists.

Respectfully Submitted,

Neal W. Settergren
GOLDSTEIN and PRICE, L.C.
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1700
neal@gp-law.com

AND

/s/ Alan K. Goldstein
LAW OFFICE OF ALAN K. GOLDSTEIN
P.O. Box 2595
Napa, CA 94558
(415) 870-5127
alan@alankgoldsteinlaw.com

*Attorneys for Petitioners*

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of March, 2022. I caused the foregoing Petition for a Writ of Mandamus and its accompanying appendix to be served by email and Federal Express on the Counsel below:

Michael L. Gallagher
WISE MORRISEY, LLC
161 N. Clark, Suite 3250
Chicago, Illinois 60601

I further certify that on the same date I caused the foregoing Petition for a Writ of Mandamus and its accompanying appendix to be served by Federal Express to the District Court at the following address:

The Honorable Sara L. Ellis
Judge, U.S. District Court, N.D. Ill.
Everett Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

*/s/ Alan K. Goldstein*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that this Petition complies with the type volume limitation of Fed. R. App. P. 21(d)(1) because the Petition contains 4,860 words, excluding the parts of the Petition excluded by Fed. Rs. App. P. 21(d) and 32(f).

I further certify that this Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Petition has been prepared using Times New Roman 12-point font, a proportionately spaced typeface.

Dated this 30th day of March, 2022.

*/s/ Alan K. Goldstein*

**APPELLATE RULE 21(a)(2)(C) APPENDIX**

| | **Exhibit** |
|---|---|
| Opinion and Order, Document 38 | A |
| Notice of Removal, Document 1 (without its exhibits) | B |
| Complaint | C |
| Plaintiff's Motion to Remand, Document 13 (without its exhibits) | D |
| Opposition to Plaintiff's Motions to Remand, Document 20 (without its exhibits) | E |
| Second Amended Complaint at Law (excerpt pp.1-3), Document 16 | F |
| Plaintiff's Amended Motion to Remand, Document 17 | G |
| Defendants' Supplemental Brief in Opposition to Remand, Document 37 | H |
| Claimant's Motion to Modify Stay, Document 17 in Limitation Case, 21-cv-04295 | I |

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIANA M. OCHOA, as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, deceased, | ) | |
| Plaintiff, | ) | No. 21 C 3936 |
| v. | ) | Judge Sara L. Ellis |
| MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC; LEHIGH HANSON INC.; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL, | ) | |
| Defendants. | ) | |
| IN THE MATTER OF THE COMPLAINT OF HANSON AGGREGATES MIDWEST, INC. F/K/A MATERIAL SERVICE CORPORATION D/B/A HANSON MATERIAL SERVICE CORPORATION FOR EXONERATION FROM, OR LIMITATION OF, LIABILITY | ) | No. 21 C 4295<br>Judge Sara L. Ellis |

**OPINION AND ORDER**

On July 22, 2020, a motorboat operated by Celio San Gabriel that carried nine individuals capsized on the Chicago River. Victor Lobato Ochoa, one of the motorboat's passengers, drowned. On July 1, 2021, his mother and the administrator of his estate, Mariana Ochoa, filed a lawsuit against Defendants Material Service Corporation d/b/a Hanson Material Service Corporation ("Hanson"), Lehigh Hanson Services LLC ("Lehigh LLC"), Heidelberg Cement Group ("Heidelberg"), and Kenneth L. Stubbs in state court. Mariana claimed that a towboat and barge that Stubbs operated as an employee of Hanson, Lehigh LLC, and Heidelberg caused the motorboat to capsize. Hanson, Lehigh LLC, Heidelberg, and Stubbs removed Mariana's



wrongful death case, No. 21 C 3936, to this Court pursuant to admiralty and diversity

jurisdiction, 28 U.S.C. §§ 1332(a), 1333(1), on July 24, 2021. Mariana filed a second amended

complaint on August 31, 2021, naming Hanson, Lehigh LLC, Lehigh Hanson, Inc. ("Lehigh

Inc."), and Stubbs (collectively, the "Hanson Defendants"), as well as San Gabriel as defendants.

Mariana also filed a motion to remand the case to state court on August 23, 2021, which she

supplemented with an amended motion on September 3, 2021, after she filed her second

amended complaint.

Meanwhile, Hanson filed a limitation of liability case, No. 20 C 4295, seeking

exoneration from or limitation of its liability for any loss, injury, or damage resulting from the

July 22, 2020 incident pursuant to Supplemental Rule F of the Federal Rules of Civil Procedure

and the Limitation of Liability Act (the "Limitation Act"), 46 U.S.C. § 30501 *et seq.*[1] On

September 8, 2021, the court entered an order requiring all persons having claims arising out of

the July 22, 2020 incident to file claims with the Clerk of Court by November 1, 2021. The court

also stayed all proceedings arising out of or connected with the July 22, 2020 incident, a stay that

reached the wrongful death case. Mariana filed an answer on October 29, 2021, but no other

individual filed a claim as ordered by the court. The court then entered default against all

persons except Mariana and allowed Mariana to file a belated claim, which she did on December

20, 2021. Mariana also filed a motion to lift the stay so that she can pursue her wrongful death

case in state court.

The Court now addresses the two interrelated motions pending in these cases: Mariana's

motion to lift the stay in the limitation of liability case [No. 21 C 4295, Doc. 17] and Mariana's

motions to remand the wrongful death case to state court [No. 21 C 3936, Docs. 13, 17]. The

---

[1] Although not initially assigned to this Court, the limitation of liability case, No. 21 C 4295, was
reassigned to this Court as related to the underlying wrongful death case, No. 21 C 3936, on January 14,
2022.

Court finds it appropriate to lift the stay in the limitation of liability case to allow Mariana to proceed with her wrongful death case because she is the only individual asserting a claim involving the July 22, 2020 incident. And having lifted the stay, the Court must remand the wrongful death case to state court because Mariana originally filed suit in state court pursuant to the saving to suitors exception to federal courts' exclusive admiralty jurisdiction and the addition of San Gabriel as a defendant means that diversity jurisdiction no longer supplies the required additional jurisdictional basis to support the case's removal to federal court.

**I. Motion to Lift the Stay in the Limitation of Liability Case, No. 21 C 4295**

The Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001); *see* 46 U.S.C. § 30505(b). The Limitation Act requires that "all claims and proceedings against the owner related to the matter in question shall cease" while a court considers the owner's liability under the Act. 46 U.S.C. § 30511(c). But this stay requirement "must be interpreted in conjunction with the 'savings to suitors' clause in 28 U.S.C. § 1333(1), which reserves to suitors in admiralty or maritime cases their common-law remedies," including "the right to select a forum and the right to demand a jury trial." *Am. River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009). Reading the provisions together gives a court discretion to lift the stay and allow a claimant to proceed on their underlying claim against the owner in state court, while the petition for limitation of liability remains pending in federal court. *See Lewis*, 531 U.S. at 449. Courts exercise this discretion "when there is only one claimant, or when the total demanded by multiple claimants does not exceed the value set by the Limitation Act." *Roen Salvage Co. v. Sarter*, 17 F.4th 761, 763 (7th Cir. 2021).

Here, Mariana argues that the Court should exercise its discretion under the single claimant exception to lift the stay and allow the wrongful death case against Hanson to proceed in state court. *See id.* (where only a single claimant seeks a recovery, the federal court "can set a maximum level of liability based on the criteria in § 30505(a), which will fully protect [the owner's] federal statutory rights" and then "permit the substantive claim to proceed in state court"). Hanson responds that the absence of any claims aside from Mariana's does not sufficiently establish the applicability of the single claimant exception, meaning that any decision to lift the stay is premature.[2] But the court already entered default against any additional potential claimants, *see* No. 21 C 4295, Doc. 21, and no indication exists that any of the additional potential claimants would seek to set aside the default and assert a late claim.[3] Thus, the Court does not find Mariana's motion to lift the stay premature and instead concludes that the single claimant exception applies.

Next, Hanson argues that the Court should reject Mariana's request to lift the stay because she does not have a pending state court lawsuit, meaning no conflict exists between the Limitation Act and the saving to suitors clause, and this Court can provide her with a jury trial if warranted. But Mariana contests the removal of the wrongful death case from state to federal court, with resolution of her motion to remand in that case stayed in light of the limitation of liability case. To resolve the propriety of the removal of the wrongful death case, the Court must lift the stay imposed by § 30511(c). Therefore, regardless of whether this Court could fashion a

---

[2] Hanson also argued that Mariana lacks statutory standing to modify the stay because she had not filed a proper claim in the limitation of liabilities case. But since making that argument, the court allowed Mariana to file such a claim, mooting Hanson's standing argument.

[3] Hanson speculates that San Gabriel may seek to assert his own claims against Hanson given Hanson's pursuit of a third-party claim against him in the limitation of liability case. But Hanson has since filed a motion for entry of default against San Gabriel due to his failure to respond to the third-party complaint, undermining Hanson's argument that San Gabriel may appear and do so.

proceeding that would simultaneously protect Mariana's right to a jury trial for her wrongful

death claims and resolve the questions raised by the limitation of liability case, the Court finds it

appropriate to lift the stay to determine whether Marian's wrongful death case should proceed in

state or federal court. *See Lewis*, 531 U.S. at 455 (saving to suitors clause preserves a claimant's

right to select a forum).

      As Mariana acknowledges, however, lifting the stay on the wrongful death case does not

come without limitations, as the Court must ensure that Hanson's "right to seek limitation will be

protected." *Id.* at 454. To that end, Mariana offers to stipulate to the following: (1) this Court

has exclusive jurisdiction to decide all limitation of liability issues, including the value of the

limitations fund; (2) Hanson has the right to litigate all issues related to limitation of liability, as

opposed to exoneration, in the limitation proceeding; (3) Mariana stipulates to the value of the

limitations fund determined by the Court as long as she has an opportunity to obtain an

independent appraisal or related valuation; (4) she will not enforce or collect any judgment in

excess of the limitations fund unless and until the Court adjudicates the limitation of liability

case; and (5) she waives any claims of *res judicata* on issues of limited liability, as opposed to

exoneration, based on any judgment she obtains in other proceedings related to the July 22, 2020

incident. *See* No. 21 C 4295, Doc. 17-1; *In re Ill. Marine Towing*, 498 F.3d 645, 653 (7th Cir.

2007) (approving similar stipulations as adequately protecting the owner's interests under the

Limitation Act while allowing the claimants to pursue their claims in state court); *cf. Roen*, 17

F.4th at 763–64 (noting that stipulations to protect an owner's liability are not necessary as long

as the court makes clear "any provisos that are essential to safeguard the federal right under

§ 30505(a)"). Hanson has not raised any issues with Mariana's stipulations or argued that they

do not adequately protect its interests. In light of Mariana's concessions, which the Court

Case: 22-1511 Document: 11 Filed: 04/13/2022 Pages: 27

adopts, the Court lifts the stay to allow Mariana to pursue the wrongful death case against Hanson and others while the limitation of liability case remains pending.

**II. Motion to Remand the Wrongful Death Case, No. 21 C 4295, to State Court**

The Court thus turns to Mariana's motion to remand the wrongful death case to state court. 28 U.S.C. § 1333(1) provides a federal court with exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." As discussed above, the saving to suitors clause serves "as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts." *Lewis*, 531 U.S. at 444. In other words, in *in personam* cases like Mariana's wrongful death case, state and federal courts have concurrent jurisdiction over admiralty claims. *Madruga v. Superior Ct.*, 346 U.S. 556, 560–61 (1954) ("Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. . . . But the jurisdictional act does leave state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." (citations omitted)). And under the saving to suitors clause, a defendant may only remove a suit to federal court based on admiralty jurisdiction if an additional basis for federal jurisdiction exists. *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819 (N.D. Ill. Mar. 22, 2021); *Brown v. Porter*, 149 F. Supp. 3d 963, 969 (N.D. Ill. 2016).

The Hanson Defendants removed the wrongful death case to federal court on the basis of both admiralty and diversity jurisdiction. But Mariana maintains that they have not properly alleged Hanson's and Lehigh LLC's citizenships and that the addition of San Gabriel as a defendant defeats diversity jurisdiction and requires the Court to remand the wrongful death case

to state court. Initially, the Court finds that the Hanson Defendants have sufficiently established that Hanson and Lehigh LLC are not Illinois citizens, making these allegations in the notice of removal and supplementing them by affidavit in response to Mariana's motion to remand. *See* Doc. 1 ¶¶ 26–27 (Hanson is a Kentucky corporation with its principal place of business in Texas, while Lehigh LLC's sole member is Lehigh Inc., a Delaware corporation with its principal place of business in Texas); Doc. 20-1 (same). Thus, this argument of Mariana's has no merit.

As for the addition of San Gabriel, an Illinois citizen, the Hanson Defendants argue that the Court should not take his citizenship into account because his addition as a defendant after the time of removal does not affect the Court's subject matter jurisdiction. The Hanson Defendants first contend that the Court cannot consider the argument because Mariana raised it over thirty days after the removal of the case and it does not go to the Court's subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). But because the saving to suitors clause's bar on removal of a case filed in state court based solely on admiralty jurisdiction goes to the Court's subject matter jurisdiction, the Court must address whether San Gabriel's addition as a defendant requires remand of the wrongful death case to state court. *See Brown*, 149 F. Supp. 3d at 969 (although admiralty jurisdiction does not on its own provide a basis for federal jurisdiction in an *in personam* case where a claimant files in state court, "a defendant may remove an admiralty case if there is an independent basis for federal subject matter jurisdiction—*i.e.*, a basis other than admiralty, such as complete diversity of citizenship with the requisite amount in controversy under 28 U.S.C. § 1332(a).").

As for the substance of the argument, the Hanson Defendants maintain that the Court should only consider whether diversity jurisdiction existed at the time of removal and not take into account any post-removal changes. *See In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."). But § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d 997, 999–1000 (N.D. Ill. 2003) (Section 1447(e) displaces the general rule that diversity jurisdiction is determined at the time a case is filed with respect to the post-removal joinder of non-diverse defendants). This is exactly the situation here: after removal of the case to federal court, Mariana filed a second amended complaint that named San Gabriel, a non-diverse party, as an additional defendant. Although the Hanson Defendants argue in a conclusory fashion that Mariana fraudulently joined San Gabriel in an attempt to manipulate jurisdiction, the Court cannot conclude that Mariana has no chance of succeeding on her claim against him, particularly in light of the Hanson Defendants' own contentions that San Gabriel bears responsibility for the capsizing of the motorboat and Victor's death. *See Poulos v. Naas*, 959 F.2d 69, 73 (7th Cir. 1992) (to find fraudulent joinder, a court must conclude that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the [non-diverse] defendant"). Therefore, San Gabriel's addition as a defendant destroys diversity jurisdiction and requires the Court to remand the wrongful death case to state court. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) ("[T]he district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction."); *Johnlewis v. Apache*

*Indus. Servs., Inc.*, No. 21-504, 2021 WL 6112558, at *3–4 (E.D. La. Dec. 27, 2021) ("The Court lacks jurisdiction because Plaintiff originally filed his claim in state court pursuant to the Savings to Suitors Clause. Although the case was removed based on diversity jurisdiction, diversity has been destroyed by the addition of a non-diverse defendant. And, because Plaintiff originally filed suit pursuant to the Savings to Suitors Clause 'exception' to original jurisdiction, this Court cannot exercise jurisdiction based on § 1333.").

**CONCLUSION**

For the foregoing reasons, the Court grants Mariana's motion to lift the stay in the limitation of liability case [No. 21 C 4295, Doc. 17] and lifts the stay as to Mariana's wrongful death claims against Hanson, subject to the conditions outlined in the stipulation Mariana filed in connection with her motion to lift the stay [No. 21 C 4295, Doc. 17-1]. In the wrongful death case, the Court grants Mariana's amended motion to remand [No. 21 C 3936, Doc. 17] and denies Mariana's initial motion to remand [No. 21 C 3936, Doc. 13] as moot. The Court remands Mariana's wrongful death case, No. 21 C 3936, to the Circuit Court of Cook County, Illinois.

Dated: March 9, 2022

SARA L. ELLIS
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP and CAPTAIN KENNETH L. STUBBS,<br><br>Defendants. | Case No.: 1:21-cv-03936<br><br>State Court No. 2021-L-006726 (Circuit Court of Cook County, Illinois, County Department, Law Division) |

## NOTICE OF REMOVAL

Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation[1], Lehigh Hanson Services LLC, Captain Kenneth L. Stubbs, and HeidelbergCement AG (incorrectly named as Heidelberg Cement Group) hereby give notice of the removal of the case styled *Ochoa v. Material Serv. Corp., et al.* (the "State Court Case"), currently pending in the Circuit Court of Cook County, Illinois, County Department, Law Division, as Case No. 2021-L-006726, to the United States District Court for the Northern District of Illinois. Removal is proper pursuant to 28 U.S.C. §§ 1333(1), 1332(a), 1441(a), and 1446. As grounds for removal, Defendants state as follows:

[1] Defendant Material Service Corporation d/b/a Hanson Material Service Corporation, a Delaware Corporation, was merged with and into Hanson Aggregates Midwest Inc. a Kentucky Corporation, on or about February 1, 2021.

EXHIBIT B

## I. Background and Procedural History

1. Plaintiff Mariana M. Ochoa ("Plaintiff"), as Independent Administrator of the Estate of Victor Lobato Ochoa, deceased, filed her Complaint on July 1, 2021, in the Circuit Court of Cook County, Illinois, County Department, Law Division, as Case No. 2021-L-006726. A true and correct copy of the Complaint is attached hereto as Exhibit 1. *See* Ex. 1, Compl., ¶ 1.

2. Plaintiff asserts claims against Defendants arising from an incident on the Chicago River near Mile 324 on or about July 23, 2020, involving the drowning of Victor Ochoa after the pleasure boat he was a passenger on capsized and sank in the waters behind the towboat M/V KIOWA and barge MSC0103.

3. According to the Complaint, the "Kiowa and barge created a series of wakes that were several feet high." Compl. ¶ 27. The Complaint states that "the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in the motorboat capsizing." *Id.* ¶ 28. The Complaint then states that Victor became "trapped underneath the overturned and capsized boat[,]" and that rescue attempts were unsuccessful. *Id.* ¶¶ 29–30. Plaintiff asserts claims for negligence and negligent wrongful death. *Id.* ¶¶ 36–43.[2]

[2] The numbered allegations for each Count in Plaintiff's Complaint restart at paragraph 36 or 37 and then continue until paragraph 42 or 43, depending on the Count. For purposes of this Notice of Removal, Defendant Hanson cites to Plaintiff's paragraph designations generally to avoid further confusion.

4. Copies of all other process, pleadings, and orders served upon Defendants in the State Court Action are attached as Exhibit 2 in accordance with 28 U.S.C. § 1446(a).

5. Pursuant to 28 U.S.C. § 1441(a), venue is proper for removal to this Court because it is the United States District Court for the district and division embracing the place where the state action was pending.

6. Upon filing this Notice of Removal, and in accordance with 28 U.S.C. § 1446(d), Defendant Hanson will serve upon all counsel this Notice of Removal and file a copy of this Notice with the Clerk of the Circuit Court of Cook County, Illinois.

7. Pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is filed within thirty days of service of Plaintiff's Complaint on Defendant Hanson (and all other Defendants who have been served) and is timely. Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation and Lehigh Hanson Services LLC were served with process on July 14, 2021. *See* Ex. 2. Defendant Captain Kenneth Stubbs was served on July 17, 2021. Defendant HeidelbergCement AG (incorrectly named as Heidelberg Cement Group) has not been properly served at this time.

## II. Grounds for Removal

8. A civil action brought in state court is removable if the district court has original jurisdiction over it. 28 U.S.C. § 1441(a). As set forth below, this Court has original jurisdiction based on admiralty, 28 U.S.C. § 1333(1), and diversity jurisdiction, 28 U.S.C. § 1332(a).

*A. Admiralty Jurisdiction*

9. Federal courts "have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). A civil case is one of "admiralty jurisdiction" if (1) the alleged "tort occurred on navigable water" (the location test), and (2) the activity in question has "a potentially disruptive impact on maritime commerce" and bears a "substantial relationship to traditional maritime activity" (the connection test). *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–65, 364 n.2 (1990)); *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 813–17 (7th Cir. 2015); *Curry v. Boeing Co.*, No. 20 C 3088, 2021 WL 1088325, at *3–7 (N.D. Ill. Mar. 22, 2021).

i. <u>The Location Test</u>

10. The location test is met if the "tort occurred on navigable water." *Grubart*, 513 U.S. at 534. The Supreme Court has expressly recognized that the Chicago River and its branches are navigable waters. *Escanaba & Lake Michigan Transp. Co. v. City of Chicago*, 107 U.S. 678, 683 (1883).

11. Plaintiff alleges that Defendants' negligence occurred near Mile 324 on the Chicago River. Ex. 1, Compl. ¶¶ 25–30.

12. Because the Chicago River is recognized as a navigable body of water, the alleged "tort occurred on navigable water." *Grubart*, 513 U.S. at 534. The location test for establishing admiralty jurisdiction is therefore satisfied. *Id.*

ii. The Connection Test

13. Under the two-pronged connection test, "[a] court, first, must 'assess the general features of the type of incident involved' to determine whether the incident has a 'potentially disruptive impact on maritime commerce.'" *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 363–65, 364 n.2). "Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson*, 497 U.S. at 363–65, 364 n.2). The Seventh Circuit has stated that "[t]he main practical use of the 'connection' test has been to expel from the admiralty jurisdiction freak cases." *Tagliere v. Harrah's Illinois Corp.*, 445 F.3d 1012, 1014 (7th Cir. 2006).

*a. "Potentially Disruptive Impact on Maritime Commerce"*

14. The first prong of the connection test requires a court "assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Sisson*, 497 U.S. at 363; *Grubart*, 513 U.S. at 534. Courts have consistently affirmed that the analysis does not turn on whether the incident did in fact disrupt maritime commerce, but whether the incident merely had the potential or possibility to do so. *Grubart*, 513 U.S. at 538; *Sisson*, 497 U.S. at 363; *Tagliere*, 445 F.3d at 1015 (affirming that an actual "effect on maritime commerce is not necessary to admiralty jurisdiction[]"); *Curry*, 2021 WL 1088325, at *6 ("It does not matter for the purposes of the 'potentially disruptive impact on maritime commerce' inquiry whether the toxic air event on

Flight 71 had an actual impact on intercontinental commerce."); *Brown v. Porter*, 149 F. Supp. 3d 963, 967 (N.D. Ill. 2016) ("[A]ll that matters is that the conduct had the *potential* to disrupt maritime commerce.").

15. The "general features" of the incident at issue center around the drowning of a pleasure craft passenger allegedly caused by a towboat and its barge then engaged in maritime commerce. Such an incident not only *potentially* disrupted maritime commerce, but as seen in the instant case, it *actually* disrupted Defendant Material Service Corporation d/b/a Hanson Material Service Corporation's commercial activity. Its towboat and barge were held up while various government agencies, including the Illinois Department of Natural Resources, the Chicago Fire and Police Departments, and the United States Coast Guard, undertook rescue operations. The operation of another of its towing vessels was disrupted near Mile 324.5 while traveling Southbound due to the incident. The rescue operations for a "man overboard" also more than likely held up or entirely suspended the flow of commercial traffic near that point on the Chicago River.

16. The first prong of the connection test is therefore easily satisfied as the incident had more than a "potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 363–65, 364 n.2).

*b. "Substantial Relationship to Traditional Maritime Activity"*

17. The second prong of the connection test asks whether the activity bears a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. The key question is "whether a tortfeasor's activity, commercial or

noncommercial, on navigable waters is so closely related to activity traditionally

subject to admiralty law." *Id.* at 539. "Navigation of boats in navigable waters

clearly falls within the substantial relationship." *Id.* at 540. The Supreme Court has

also noted that the "primary focus of admiralty jurisdiction is unquestionably the

protection of maritime commerce." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668,

674 (1982).

18.    Here, the incident involved the operation of a towboat and barge

engaged in maritime commerce, and a pleasure craft, all of which were travelling on

navigable waters. This type of maritime activity "clearly falls within the substantial

relationship." *Grubart*, 513 U.S. at 540; *see also In re Garvey Marine, Inc.*, No. 03 C

5967, 2004 WL 2005824, at *2 (N.D. Ill. Sept. 3, 2004) (finding relation between

traditional maritime activity and tugboat pushing two barges over navigable

waterway).

19.    The second prong of the connection test is therefore satisfied as the

alleged tort bears a "substantial relationship to traditional maritime activity."

*Grubart*, 513 U.S. at 534.

20.    Both prongs of the connection test for establishing admiralty

jurisdiction are therefore satisfied. *Id.* at 534; *Lu Junhong*, 792 F.3d at 815–16.

21.    Accordingly, because the location and connection tests are both

satisfied, this Court has admiralty jurisdiction over the present case, and the case is

independently removable under the plain language of 28 U.S.C. § 1441(a); *Lu

Junhong*, 792 F.3d at 818.

*B. Diversity Jurisdiction*

22. The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000.00 and there is diversity between the plaintiffs, on the one hand, and the defendants, on the other. 28 U.S.C. § 1332(a). Both requirements are satisfied here.

i. <u>Amount-in-Controversy Requirement</u>

23. Plaintiff "demands judgment . . . for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois." Compl., Counts I–VIII. Mr. Michael L. Gallagher stated under oath in his Attorney Affidavit attached to Plaintiff's Complaint that "[t]he total of money damages sought by plaintiff does exceed $50,000.00, exclusive of interest and cost." Exhibit A to Ex. 1, ¶ 2. In light of Plaintiff's serious allegation that Defendants negligently caused the drowning of her child, the undefined amount in controversy certainly exceeds $75,000.00 exclusive of interest and costs. Such "a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is therefore satisfied.

ii. <u>State Citizenship Requirement</u>

24. For an individual, "[s]tate citizenship for the purpose of the state diversity provision is equated with domicile." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). For a corporation, it is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state

where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Lastly, "for diversity jurisdiction purposes, the citizenship of a limited liability company is the citizenship of each of its members." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009).

25.     Plaintiff Mariana M. Ochoa, as Independent Administrator of the Estate of Victor Lobato Ochoa is an individual and is a domiciliary and thus a citizen of Illinois for diversity jurisdiction purposes. Ex. 1, Compl. ¶ 2. Decedent Victor Lobato Ochoa was a domiciliary and citizen of Illinois as well.

26.     Defendant Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation was organized and exists under the laws of Kentucky and has its principal place of business in Texas. It is thus a citizen of Kentucky and Texas for diversity jurisdiction purposes.

27.     Defendant Lehigh Hanson Services LLC is a limited liability company and is wholly owned by Lehigh Hanson, Inc., a Delaware corporation with its principal place of business in Texas. Defendant Lehigh Hanson Services LLC is thus a citizen of Delaware and Texas for diversity jurisdiction purposes.

28.     Defendant HeidelbergCement AG (incorrectly named as Heidelberg Cement Group) was organized and exists under the laws of Germany and has its principal place of business in Germany. It is thus a citizen of Germany and only Germany for diversity jurisdiction purposes.

29.     Defendant Kenneth L. Stubbs, an individual, is a domiciliary and thus a citizen of Missouri for diversity jurisdiction purposes.

30. Accordingly, because Plaintiff does not share state citizenship with any defendant, the citizenship requirement of 28 U.S.C. § 1332(a) for establishing diversity jurisdiction is therefore satisfied.

31. Because the amount-in-controversy and citizenship requirements are satisfied, this Court has diversity jurisdiction over this case. 28 U.S.C. § 1332(a).

32. Either of the two above-stated bases—Admiralty or Diversity—is sufficient to support federal jurisdiction and removal in this case.

## III. Conclusion

WHEREFORE, Defendants hereby remove to this Court the case styled *Ochoa v. Material Serv. Corp., et al.*, currently pending in the Circuit Court of Cook County, Illinois, County Department, Law Division, as Case No. 2021-L-006726.

Respectfully submitted,

GOULD & RATNER LLP

By: */s/Paul W. Carroll*
Paul W. Carroll
222 North LaSalle Street
Chicago, IL 60601
(312) 899-1657 direct dial
Attorney for Defendants

and

GOLDSTEIN and PRICE, L.C.
Neal W. Settergren (seeking admission *pro hac vice*)
Jacob D. Curtis (seeking admission *pro hac vice*)
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1711 direct dial
(314) 421-2832 fax
Attorneys for Defendants

FILED
7/1/2021 9:12 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 7/1/2021 9:12 AM 2021L006726

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,

Plaintiff,

v.

MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP and CAPTAIN KENNETH L. STUBBS,

Defendants.

Case No. 2021L006726

**Attorney Affidavit Attached**

**Plaintiff Demands Trial by Jury**

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, by her attorneys WISE MORRISSEY, LLC and complaining against the defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP and CAPTAIN KENNETH L. STUBBS, states as follows:

**PARTIES**

1. On July 23, 2020, and at all time relevant herein, plaintiff Mariana M. Ochoa ("MARIANA") is the mother and Independent Administrator of the Estate of seven year-old decedent VICTOR LOBATO OCHOA ("VICTOR").

2. On July 23, 2020, and at all time relevant herein, MARIANA and VICTOR were residents of the City of Chicago and County of Cook.

EXHIBIT
C

FILED DATE: 7/1/2021 9:12 AM 2021L006726

3. On July 23, 2020, and at all times relevant herein, defendant MATERIAL SERVICE CORPORATION ("MATERIAL") d/b/a HANSON MATERIAL SERVICE CORPORATION ("HANSON") was a Corporation registered to conduct business in Illinois.

4. On July 23, 2020, and at all times relevant herein, defendant MATERIAL d/b/a HANSON maintained a principle place of business located at 181 West Madison Street in the City of Chicago and County of Cook.

5. On July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC. ("LEHIGH"), was a limited liability company registered to conduct business in Illinois.

6. On July 23, 2020, and at all times relevant herein, defendant LEHIGH maintained places of business located in the City of Chicago and the Village of McCook in the County of Cook.

7. On July, 23, 2020, and at all times relevant herein, defendant LEHIGH owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

8. On July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP ("HEIDELBERG"), was one of the largest building materials companies in the world.

9. On July 23, 2020, defendant HEIDELBERG owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

10. On July 23, 2020, defendant HEIDELBERG owned, operated, maintained or controlled its subsidiary defendant LEHIGH.

11. On July 23, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH L. STUBBS ("STUBBS") was the captain of the inland river towboat Kiowa ("Kiowa"). The

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Kiowa had a triple screw 1500 horse power engine with dimensions of 76 feet long and 26 feet wide, while weighing approximately 292,000 pounds. At that time, the Kiowa was pushing a barge MSCO103 that was 195 feet long and 35 feet wide and fully loaded with aggregate. The barge MSCO103 weighed hundreds of thousands of pounds.

12. On July 23, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant MATERIAL d/b/a HANSON.

13. On July 23, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant LEHIGH.

14. On July 23, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant HEIDELBERG.

**FACTS COMMON TO ALL COUNTS**

15. In March 2017, the National Transportation Safety Board (NTSB) issued a "Safety Recommendation Report" (Report) regarding safety of recreational and commercial vessels in shared waterways, like the Chicago River. (See below photo of the Chicago River from the Report)

FILED DATE: 7/1/2021 9:12 AM 2021L006726

16. The NTSB Report stated that the Chicago River was unique among all shared waterways in the United States because of the "limited area in which vessels can maneuver", which increased the risk of recreational and commercial vehicle accidents.

17. The NTSB Report stated the increased risk of recreational and commercial vehicle accidents on the Chicago River was compounded by the numerous waterborne events (e.g. fireworks and regattas) and multitude of recreational vessels (e.g. powerboats, kayaks, canoes and standup paddleboards).

18. As a result, the NTSB Report stated the Chicago River posed the "greatest risk for unsafe interaction between commercial and recreational waterway users" of any "Shared Waterway" in the United States.

19. On July 23, 2020, and at all times relevant herein, defendants MATERIAL, LEHIGH, HEIDELBERG and STUBBS were all aware of the increased risks of "unsafe interaction between commercial and recreational waterway users" on the Chicago River, including at the location of the tragic incident.

20. On July 23, 2020, and at all times relevant herein, defendant STUBBS was captaining the Kiowa and barge northbound on the South Branch of the Chicago River.

21. On July 23, 2020, and at all times relevant herein, Celio San Gabriel (San Gabriel) was operating an open motorboat with three additional adults and five small children. Among the occupants were MARIANA and VICTOR. The motorboat was a 16-17 foot long Capri Bayliner (motorboat).

22. On July 23, 2020, and at all time relevant herein, all eight occupants were wearing Personal Floatation Devices (PFD) except for one of the adults, Jesus Lobato.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

23. On July 23, 2020, the Chicago Yacht Works was located at 2550 South Ashland Avenue, Chicago Illinois. The Chicago Yacht Works facility was located on the Westside of the South branch of the Chicago River and immediately south of the Ashland Avenue Bridge.

24. On July 23, 2020, the Chicago Yacht Works had a closed captioned video that captured the Kiowa traveling northbound on the South Branch of the Chicago River. The video footage showed the Kiowa and the barge it was pushing creating a series of large wakes. The wakes created by the Kiowa and barge would then reverberate off the walls of the Chicago River increasing the size of the original wakes.

25. At approximately 5:30 p.m., the Kiowa and barge were traveling southbound on South branch of the Chicago River in the area of mile marker 324 and the Ping Tom Memorial Park in Chinatown, Chicago.

26. At approximately 5:30 p.m., the motorboat was traveling northbound on South branch of the Chicago River in the area of mile marker 324 and the Ping Tom Memorial Park in Chinatown, Chicago.

27. At that time, San Gabriel and other occupants of the motorboat observed the Kiowa and barge traveling at a speed that was generating a series of large wakes.

28. At that time, the Kiowa and barge created a series of wakes that were several feet high. The wakes created by the Kiowa and barge would then reverberate off the walls of the Chicago River increasing the size of the original wakes.

29. At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in the motorboat capsizing. As a result, all of the occupants of the boat were thrown overboard and into the water.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

30. Tragically, VICTOR, was trapped underneath the overturned and capsized boat. Law enforcement and rescue personnel were immediately notified and responded to the scene. However, the first responders were unable to rescue VICTOR from under the motorboat and he drowned.

31. On July 23, 2020, Illinois Department of Natural Resources Officer Jeremy Swindle (Officer Swindle) was one of the many law enforcement, rescue and medical personnel that responded to the scene of the incident.

32. Officer Swindle subsequently conducted an investigation into the incident. Officer Swindle's investigation included his first-hand observations at the scene, witness accounts and closed circuit television footage of the Kiowa as it traveled northbound on the South branch of the Chicago River only minutes before the incident.

33. Officer Swindle's report stated that "[c]lear [video] footage of the Kiowa prior to the incident shows a wake made by the Kiowa. The wake bouncing off the walls of the river create[d] an even bigger movement in the water. The Chicago River is a no wake river".

34. Officer Swindle's report stated that the "cause of the accident" was the "force of wake" created by the Kiowa and barge.

35. The Chicago Administrative Code 10-40-261(a) (Restrictions on wake of vessels) states that "[n]o person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency".

36. The area of Chicago River where the incident occurred is designated as a "No Wake" zone pursuant to the Chicago Administrative Code 10-40-261.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

**COUNT I – NEGLIGENCE WRONGFUL DEATH – MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP.**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant MATERIAL, owed a duty to operate the Kiowa and barge in a reasonable manner.

38. On July 23, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
   The person directing the movement of the vessel sets the vessel's speed with consideration for:
   (4) The comparative proportions of the vessel and the channel;
   (5) The density of marine traffic;
   (6) The damage that might be caused by the vessel's wake; and
   (8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
   The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
   (7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
   Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
   Rule 5 – Look-out
   Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency:

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. On and prior to July 23, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., had privity and knowledge of the their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL

FILED DATE: 7/1/2021 9:12 AM 2021L006726

SERVICES CORP., also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

40. On and prior to July 23, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

41. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

42. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT II – NEGLIGENCE – LEHIGH HANSON SERVICES LLC.**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant LEHIGH owned, operated or maintained control over the Kiowa.

38. On July 23, 2020, and at times relevant herein, defendant CAPTAIN KENNETH L. STUBBS was an employee, agent or apparent agent of defendant LEHIGH.

FILED DATE: 7/1/2021 9:12 AM   2021L006726

39.     On July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON

SERVICES LLC, by and through the actions, acts and/or omissions of its agent, servant and/or

employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following

respects:

    a.    Violated United States CFR Title 33 §164.11(p)
        The person directing the movement of the vessel sets the vessel's speed
        with consideration for:
        (4) The comparative proportions of the vessel and the channel;
        (5) The density of marine traffic;
        (6) The damage that might be caused by the vessel's wake; and
        (8) Any local vessel speed limit.

    b.    Violated United States CFR Title 33 §164.78 (a)
        The owner, master or operator of each vessel towing shall ensure that each
        person directing and controlling the movement of the vessel:
        (7) Proceeds at a safe speed taking into account the weather, visibility,
            density of traffic, draft of tow, possibility of wake damage, speed and
            direction of the current, and local speed-limits.

    c.    Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
        Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or
        interfering with the safe operation of a vessel, so as to endanger the life,
        limb, or property of a person.

    d.    Violated United States Coast Guard Navigation Rules
        Rule 5 – Look-out
        Every vessel shall at all times maintain a proper look-out by sight and
        hearing as well as by all available means appropriate in the prevailing
        circumstances and conditions so as to make a full appraisal of the situation
        and of the risk of collision.

        Rule 6 - Safe Speed Inland
        Every vessel shall at all times proceed at a safe speed so that she can take
        proper and effective action to avoid collision and be stopped within a
        distance appropriate to the prevailing circumstances and conditions

        Rule 9 - Narrow Channels Inland
        (a)(i) A vessel proceeding along the course of a narrow channel or fairway
        shall keep as near to the outer limit of the channel or fairway which lies on
        her starboard side as is safe and practicable.

    e.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7

FILED DATE: 7/1/2021 9:12 AM 2021L006726

No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

40. On and prior to July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC., had privity and knowledge of their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

41. On and prior to July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC., had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

42. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON SERVICES LLC for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT III – NEGLIGENCE – HEIDELBERG CEMENT GROUP**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP owned, operated or maintained control over the Kiowa.

38. On July 23, 2020, and at times relevant herein, defendant CAPTAIN KENNETH L. STUBBS was an employee, agent or apparent agent of defendant HEIDELBERG CEMENT GROUP.

39. On July 23, 2020, and at all times relevant herein, HEIDELBERG CEMENT GROUP, by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)

The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and

FILED DATE: 7/1/2021 9:12 AM 2021L006726

(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)

FILED DATE: 7/1/2021 9:12 AM 2021L006726

> No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261

> (a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

40. On and prior to July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP, had privity and knowledge of their tow boats and barges repeatedly traveling at an excessive speed along the Chicago River. Defendant HEIDELBERG CEMENT GROUP, also had privity and knowledge that their tow boats and barges were repeatedly causing wakes in the No Wake zone of the Chicago River.

41. On and prior to July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP, had privity and knowledge that there tow boats and barges were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

42. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant

FILED DATE: 7/1/2021 9:12 AM 2021L006726

HEIDELBERG CEMENT GROUP for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT IV – NEGLIGENCE – KENNETH L. STUBBS**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS owned, operated or maintained control over the Kiowa.

38. On July 23, 2020, and at all times relevant herein, defendant, CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. On and prior to July 23, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS, had privity and knowledge of the tow boats and barges he captained repeatedly traveled at an excessive speed along the Chicago River. Defendant KENNETH L.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

STUBBS, also had privity and knowledge that the tow boats and barges he captained were repeatedly causing wakes in the No Wake zone of the Chicago River.

40. On and prior to July 23, 2020, and at all times relevant herein, defendant KENNETH L. STUBBS, had privity and knowledge that the tow boats and barges he captained were repeatedly violating local, State and Federal guidelines by traveling at an excessive speed resulting in wakes that placed smaller recreational watercraft at danger of capsizing.

41. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

42. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant KENNETH L. STUBBS for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT V – SURVIVAL COUNT - MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP.**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant MATERIAL, owed a duty to operate the Kiowa and barge in a reasonable manner.

38. On July 23, 2020, and at all times relevant herein, defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP., by and through the actions,

FILED DATE: 7/1/2021 9:12 AM 2021L006726

acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

40. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

41. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including

FILED DATE: 7/1/2021 9:12 AM 2021L006726

conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

42. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant MATERIAL SERVICE INC. d/b/a HANSON MATERIAL SERVICES CORP. for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT VI – SURVIVAL COUNT - LEHIGH HANSON SERVICES LLC**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC, owed a duty to operate the Kiowa and barge in a reasonable manner.

38. On July 23, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC, by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and

FILED DATE: 7/1/2021 9:12 AM    2021L006726

(8) Any local vessel speed limit.

b.    Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each
person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility,
density of traffic, draft of tow, possibility of wake damage, speed and
direction of the current, and local speed-limits.

c.    Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or
interfering with the safe operation of a vessel, so as to endanger the life,
limb, or property of a person.

d.    Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and
hearing as well as by all available means appropriate in the prevailing
circumstances and conditions so as to make a full appraisal of the situation
and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take
proper and effective action to avoid collision and be stopped within a
distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway
shall keep as near to the outer limit of the channel or fairway which lies on
her starboard side as is safe and practicable.

e.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching
ramp owned, operated or maintained by the Department or a political
subdivision of the State at greater than a "No Wake" speed as defined in
Section 5-12 of this Act. Posting of the areas by the Department or a
political subdivision of the State is not required.

f.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway
great enough to disturb a boat at rest, but under no circumstances shall a
boat underway exceed 5 miles per hour while in a posted "No Wake"
area.

g.    Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)

FILED DATE: 7/1/2021 9:12 AM 2021L006726

> No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261

> (a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

40. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

41. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

42. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant LEHIGH HANSON SERVICES LLC for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

**COUNT VII – SURVIVAL COUNT - HEIDELBERG CEMENT GROUP**

1-36. Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby incorporates them as though fully set forth herein.

37. On July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP, owed a duty to operate the Kiowa and barge in a reasonable manner.

38. On July 23, 2020, and at all times relevant herein, defendant HEIDELBERG CEMENT GROUP, by and through the actions, acts and/or omissions of its agent, servant and/or employee CAPTAIN KENNETH L. STUBBS was negligent in one or more of the following respects:

a. Violated United States CFR Title 33 §164.11(p)
   The person directing the movement of the vessel sets the vessel's speed with consideration for:
   (4) The comparative proportions of the vessel and the channel;
   (5) The density of marine traffic;
   (6) The damage that might be caused by the vessel's wake; and
   (8) Any local vessel speed limit.

b. Violated United States CFR Title 33 §164.78 (a)
   The owner, master or operator of each vessel towing shall ensure that each person directing and controlling the movement of the vessel:
   (7) Proceeds at a safe speed taking into account the weather, visibility, density of traffic, draft of tow, possibility of wake damage, speed and direction of the current, and local speed-limits.

c. Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person.

d. Violated United States Coast Guard Navigation Rules

Rule 5 – Look-out

Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

Rule 6 - Safe Speed Inland

Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions

Rule 9 - Narrow Channels Inland

(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7

No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12

A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)

No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261

(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

FILED DATE: 7/1/2021 9:12 AM 2021L006726

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

40. As a proximate result of one or more of the foregoing negligent acts or omissions, VICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

41. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

42. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant HEIDELBERG CEMENT GROUP for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

FILED DATE: 7/1/2021 9:12 AM  2021L006726

## COUNT VIII – SURVIVAL COUNT - KENNETH L. STUBBS

1-36.   Plaintiff re-pleads and re-alleges paragraphs 1-36 of this Complaint and hereby

incorporates them as though fully set forth herein.

37.   On July 23, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH

L. STUBBS, owed a duty to operate the Kiowa and barge in a reasonable manner.

38.   On July 23, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH

L. STUBBS was negligent in one or more of the following respects:

    a.   Violated United States CFR Title 33 §164.11(p)
The person directing the movement of the vessel sets the vessel's speed
with consideration for:
(4) The comparative proportions of the vessel and the channel;
(5) The density of marine traffic;
(6) The damage that might be caused by the vessel's wake; and
(8) Any local vessel speed limit.

    b.   Violated United States CFR Title 33 §164.78 (a)
The owner, master or operator of each vessel towing shall ensure that each
person directing and controlling the movement of the vessel:
(7) Proceeds at a safe speed taking into account the weather, visibility,
density of traffic, draft of tow, possibility of wake damage, speed and
direction of the current, and local speed-limits.

    c.   Violated United States Code 46 – Shipping – Subtitle II – Vessels and Seaman
Chapter 23 § 2302(a) A person operating a vessel in a negligent manner or
interfering with the safe operation of a vessel, so as to endanger the life,
limb, or property of a person.

    d.   Violated United States Coast Guard Navigation Rules
Rule 5 – Look-out
Every vessel shall at all times maintain a proper look-out by sight and
hearing as well as by all available means appropriate in the prevailing
circumstances and conditions so as to make a full appraisal of the situation
and of the risk of collision.

Rule 6 - Safe Speed Inland
Every vessel shall at all times proceed at a safe speed so that she can take
proper and effective action to avoid collision and be stopped within a
distance appropriate to the prevailing circumstances and conditions

FILED DATE: 7/1/2021 9:12 AM 2021L006726

Rule 9 - Narrow Channels Inland
(a)(i) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable.

e. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-7
No person shall operate a watercraft within 150 feet of a public launching ramp owned, operated or maintained by the Department or a political subdivision of the State at greater than a "No Wake" speed as defined in Section 5-12 of this Act. Posting of the areas by the Department or a political subdivision of the State is not required.

f. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-12
A wake is defined as a movement of the water created by a boat underway great enough to disturb a boat at rest, but under no circumstances shall a boat underway exceed 5 miles per hour while in a posted "No Wake" area.

g. Violated Illinois Boat Registration and Safety Act 625 ILCS 45/5-2(a)
No person shall operate any watercraft... so as to approach or pass another watercraft in such a manner or at such a rate of speed as to create a hazardous wake or wash.

h. Violated Chicago Administrative Code 10-40-261
(a) No person shall operate a vessel in such a way that the boat creates a wake in any of the following areas in the Lake Michigan portions of the Chicago Harbor or upon any waterway within the City, except in the case of an actual emergency.

i. Failed to properly train, supervise and monitor crew members, including but not limited to defendant Kenneth L. Stubbs, to prevent their tug boats and barges from traveling at excessive speeds and creating wakes in the "No Wake" zones of the Chicago River.

39. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff VICTOR LOBATO OCHOA, sustained injuries of a personal and pecuniary nature resulting in his death.

40. As a proximate result of one or more of the foregoing negligent acts or omissions, PVICTOR LOBATO OCHOA, sustained personal injuries resulting in his death, including

FILED DATE: 7/1/2021 9:12 AM 2021L006726

conscious pain and suffering, which would have entitled him to bring a cause of action and this cause of action has survived him.

41. At the time of his death, Plaintiff's decedent, VICTOR LOBATO OCHOA, left surviving: Jesus Lobato Hernandez, his father (DOB 8/25/1990); Mariana Manuela Ochoa, his mother (DOB 10/21/1993); Mariano Ignacio Ochoa Jr., his brother (DOB 5/23/2011); Jesus Francisco Lobato, his brother (DOB 7/25/2014); and Elena Monzahat Lobato-Ochoa, sister (DOB 6/13/2018).

42. MARIANA M. OCHOA is the duly appointed Special Administrator of the Estate of VICTOR LOBATO OCHOA, and brings this cause of action pursuant to 755 Illinois Compiled Statutes 5/27-6 et seq., commonly known as the Survival Act.

43. Pursuant to 2-622(a)(2) of the Illinois Code of Civil Procedure, the Affidavit of Michael L. Gallagher is attached hereto as Exhibit A.

WHEREFORE, plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, demands judgment against defendant CAPTAIN KENNETH L. STUBBS for a sum in excess of the jurisdiction limits of the Circuit Court of Cook County, Illinois.

Attorney for Plaintiff

Michael L. Gallagher
Wise Morrissey, LLC
161 North Clark Street
Suite 3250
Chicago, IL 60601
P: (312) 580-2040
Firm No.: 63527
mlg@wisemorrissey.com

FILED
7/1/2021 9:12 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 7/1/2021 9:12 AM 2021L006726

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,

Plaintiff,

v.

MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP and KENNETH L. STUBBS,

Defendants.

Case No. 2021L006726

**Attorney Affidavit Attached**

**Plaintiff Demands Trial by Jury**

**AFFIDAVIT**

I, Michael L. Gallagher, state under oath:

1. I am an attorney associated with Wise Morrissey, LLC and am responsible for filing of the Complaint at Law in this matter.

2. The total of money damages sought by plaintiff does exceed $50,000.00, exclusive of interest and costs.

Michael L. Gallagher

SUBSCRIBED and SWORN to before me this 30 day of June, 2021.

NOTARY PUBLIC

"OFFICIAL SEAL"
Angela M. Suhr
Notary Public, State of Illinois
My Commission Expires [illegible]

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP and CAPTAIN KENNETH L. STUBBS,<br><br>Defendants. | Case No. 1:21-cv-03936<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S MOTION TO REMAND THE MATTER TO STATE COURT**

NOW COMES Plaintiff, MARIANA M. OCHOA ("Plaintiff") as Independent Administrator of the Estate of VICTOR LOBATO OCHOA ("Victor"), Deceased, by her attorneys WISE MORRISSEY, LLC. against defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION ("Material"); LEHIGH HANSON SERVICES LLC. ("Lehigh Hanson LLC.); HEIDELBERG CEMENT GROUP and CAPTAIN KENNETH L. STUBBS ("Stubbs"), for her Motion to remand the matter to State Court.

**Introduction**

Plaintiff's Motion seeks to remand the above matter to State Court pursuant to 28 U.S. Code § 1447(c) for the following reasons: 1) the Court lacks subject matter jurisdiction since the Single Claimant exception applies to the present matter; 2) Defendants' Notice of Removal is deficient pursuant for failing to list the citizenship of each of Defendant Lehigh Hanson Services



LLC. partners, limited partners and members; 3) the parties lack complete diversity where Defendant Material's principle place of business is in Illinois.

**Procedural History**

On July 22, 2020, at approximately 6:40 p.m., San Gabriel was operating a 16-17 foot long open motorboat on the Chicago River with eight additional passengers, including three adults and five small children. (Exhibit 1, First Amended Complaint ¶21). All eight occupants of the motorboat were wearing Personal Flotation Devises (PFD) including the Plaintiff and Victor. (Exh. 1, ¶22). At that time, Defendant Captain Kenneth L. Stubbs ("Stubbs") was operating the towboat Kiowa ("Kiowa") which was 76 feet long and 26 feet wide. (*Id.* at. ¶ 11). The Kiowa was pushing a barge that was 195 feet long and 35 feet wide, while being fully loaded with aggregate. (*Id.* at ¶11). The First Amended Complaint alleges that Defendant Stubbs was an employee of Defendants Material, Lehigh Hanson LLC. and/or Heidelberg. (*Id.* at ¶12-14).

According to witness accounts and an investigation by the Illinois Department of Natural Resources ("IDNR"), the Kiowa was traveling at a speed that created large wakes in the Chicago River, which was a strict no-wake zone. (*Id.* at ¶¶33-35). At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in it capsizing and the occupants being thrown overboard. (*Id.* at ¶29). Victor was trapped underneath the motorboat and tragically drowned. (*Id.* at ¶30). A subsequent IDNR investigation concluded that the "cause of the accident" was the "force of wake" created by the Kiowa and barge. (*Id.* at ¶34).

On July 1, 2021, Plaintiff filed her original Complaint in the Circuit Court of Cook County, Illinois, County Department, under Case No. 2021-L-006726. (Exhibit 2, Original Complaint). Plaintiff's original Complaint was served on Defendants Material and Lehigh Hanson Services LLC on July 14, 2021, and Defendant Stubbs on July 17, 2021. (Dkt. 1, pg.3, 43-45). Plaintiff filed

her First Amended Complaint in the Circuit Court of Cook County on July 22, 2021. (Exh. 1). Defendants filed their Notice of Removal of Plaintiff's original Complaint on July 24, 2021. (Dkt. 1.)

## Argument

**I) The Court lacks subject matter jurisdiction where the Single Claimant exception applies.**

Defendants claim that this Court has original jurisdiction based admiralty and pursuant to 28 U.S.C. § 1333(1) which states "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled". (Dkt. 1, pg.3). As stated, the "savings to suitors" clause in 28 U.S.C. § 1333(1), reserves to suitors in admiralty or maritime cases their common-law remedies. These remedies include the right to select a forum and the right to demand a jury trial. *See American River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009); *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *see also In re McCarthy Brothers Co.*, 83 F.3d 821, 826–27 (7th Cir.1996) (describing the conflict between the "savings to suitors" clause and the ship owner's right to limited liability under 46 U.S.C § 30511(c) as "significant" because claimants have no right to a jury trial in admiralty actions in federal court, and holding that a federal court must allow a claimant to proceed in state court if the owner fails to prove her right to limited liability).

The Supreme Court has determined that in light of this conflict between the public interest in protecting the shipping industry reflected in the Limitation Act and the strong interest in preserving common law remedies for injured parties underlying the "savings to suitors" clause of § 1333(1), district courts have discretion to allow a case to proceed in state court if certain conditions are met. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001).The Supreme Court and the Seventh Circuit recognize two situations in which a district court should allow a

state court action involving a maritime claim to proceed: (1) the "single claimant" exception; and (2) the "adequate fund" exception. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 154 (1957); *Langnes v. Green,* 282 U.S. 531, 541 (1931); *see also In re Illinois Marine Towing, Inc.*, 498 F.3d 645, 650 (7th Cir.2007).

As its name suggests, the "single claimant" exception exists when there is only a single claimant asserting his claim(s) against the shipowner—in that case, the Supreme Court has held that there is no need for the "peculiar and exclusive jurisdiction of an admiralty court," and the district court should allow the action to proceed in state court, while retaining exclusive jurisdiction over the question of liability limitation. *Langnes*, 282 U.S. at 541–42. The Supreme Court reasoned that for a district court to retain the suit when a state court could afford relief "would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a common law remedy; [whereas] to remit the cause to the state court would be to preserve the rights of both parties." *Illinois Marine,* 498 F.3d at 650; *citing Langnes,* 282 U.S. at 541.[1] In the present case, Plaintiff has brought a single claim against the Defendants on behalf of her son, Victor. Therefore, the "single claimant" exception applies to the present matter and the "saving to suitors" clause of 28 U.S.C. § 1333(1) prevents the Court from having subject matter jurisdiction over the present matter.

**II) Defendants have failed to satisfy their burden to establish diversity.**

Defendants claim that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Dkt. 1, pg.3). "When challenged on allegations of jurisdictional facts, the parties must support

---

[1] Defendants have not sought to stay the underlying state matter pursuant to Limitation of Liability Act (Limitation Act). 46 U.S.C. § 30505. Assuming Defendants seek such a stay, the Plaintiff is willing to enter into the requisite stipulation needed to waive any claim of *res judicata* against Defendants based on a state court decision or judgment with respect to issues arising under the Limitation Act. In addition, Plaintiff is willing to stipulate that she would not seek to enforce any state court decision or judgment on any claim subject to limitation under the Act which exceeds the value of the limitation fund as determined by the District Court.

their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). Ultimately, the removing party must establish the facts determining federal jurisdiction by a preponderance of the evidence. *Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 590 (7th Cir. 2008). The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993). As the Supreme Court has long instructed, federal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction. *See Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900).

When it comes to corporations, however, the diversity statute itself makes clear that a corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business." *See* 28 U.S.C. § 1332(c)(1). The Supreme Court has determined that a corporation's principal place of business is the same as its "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 80._Determining the citizenship of other forms of business associations is often more difficult. *Page v. Democratic National Committee*, 2 F.4th 630, 635 (7th Cir. June 21, 2021). Partnerships, for example, are citizens of every state in which an individual partner is a citizen. See *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). The same rule applies to other unincorporated entities, like limited liability companies, whose citizenship is also determined by the citizenship of its "members." *See Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381–82 (2016); *see* e.g., *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990) (citizenship of a partnership is that of every partner or

member, limited as well as general). The only way to determine citizenship for diversity purposes is to look at the individual partners—an analytical path repeatedly endorsed by the Supreme Court. *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)

First, Defendants' Notice fails to list the citizenship of Defendant Lehigh Hanson Services LLC.'s individual partners or members. (Dkt. 1, ¶27). Instead, the Notice provides a single paragraph regarding the citizenship of Lehigh Hanson Services LLC. claiming that it is "wholly owned" by non-defendant Lehigh Hanson Inc. (*Id.*). As such, Defendants claim that Lehigh Hanson Services LLC. is a Delaware Corporation with its principal place of business in Texas. (*Id.*). As the Supreme Court and Seventh Circuit have repeatedly held, the party claiming diversity jurisdiction must detail the citizenships of all its partners, limited partners and members. *See. Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (The citizenship of a partnership is the citizenship of the partners, even if they are limited partners, so that if even one of the partners (general or limited) is a citizen of the same state as the plaintiff, the suit cannot be maintained as a diversity suit). In fact, a party's failure to provide such requisite information has led to dismissal for want of prosecution. *See Guaranty National Title Co. v. J.E.G. Associates,* 101 F.3d 57 (7th Cir.1996) (Failure to go through all the layers can result in dismissal for want of jurisdiction).

Second, Defendants' Notice fails to satisfy their burden to establish that Defendant Material d/b/a Hanson Material Service Corporation does not have its principal place of business in Illinois. Defendants' Notice contains the claim that Material "merged with and into" Hanson Aggregate Midwest Inc. "on or about February 21, 2021", approximately seven months after the drowning occurred. (Dkt. 1, pg.1 n.1). The Notice goes on to make the conclusory claim that since Hanson Aggregates Midwest Inc. was organized under the laws of Kentucky and has its principal place of business in Texas, than Defendant Material shares the same citizenship. (Dkt. 1, ¶26).

However, the single paragraph in Defendants' Notice fails to satisfy their burden to establish that Material does not maintain its principal place of business in Illinois. In reality, Material was formed in Chicago, Illinois by the Crown family in 1919 and has maintained its principal place of business in this state ever since. Moreover, Material currently has more than 800 employees working in Illinois and Indiana, and although Material purportedly merged with Hanson Aggregate Midwest Inc. in February 2021, Material still maintains its principle place of business in Illinois. *See* http://www.ceram.com/news/mar/material-service.htm last visited August 23, 2021).

**Conclusion**

Wherefore, Plaintiff Mariana M. Ochoa as Independent Administrator of the Estate of Victor Lobato Ochoa, Deceased respectfully requests that this Court grant her Motion to Remand the matter to State Court.

Respectfully submitted,
MARIANA M. OCHOA

By: /s/ *Michael L. Gallagher*
One of Her Attorneys

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBOATO OCHOA, Deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:21-cv-03936 |
| HANSON AGGREGATES MIDWEST, INC. f/k/a MATERIAL SERVICE CORP. d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC; LEHIGH HANSON, INC.; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL, | ) | District Judge Sarah L. Ellis<br>Magistrate Judge Sunil R. Harjani |
| Defendants. | ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTIONS TO REMAND[1]**

Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation ("Hanson")[2], Lehigh Hanson Services LLC ("LHS"), Lehigh Hanson, Inc. ("LHI"), and Captain Kenneth L. Stubbs ("Stubbs") submit the following as their Response in Opposition to Plaintiff's Motion to Remand [Doc. 13] and Plaintiff's Amended Motion to Remand [Doc. 17]:

---

[1] Defendants Hanson, LHS, LHI, and Stubbs submit that this matter should be stayed pursuant to the Rule F injunction issued by Judge Shah in Case No. 1:21-cv-04295 (N.D. Ill.). A copy of Judge Shah's injunction was filed in this matter by Notice on September 9, 2021. See Docs. 18 and 18-1 and Section III.A, *infra*. However, out of an abundance of caution and to avoid any potential argument for default or waiver, Defendants Hanson, LHS, LHI, and Stubbs timely submit this Response in Opposition to Plaintiff's Motion to Remand.

[2] Named Defendant Material Service Corporation d/b/a Hanson Material Service Corporation was merged with and into Hanson Aggregates Midwest, Inc. on or about February 1, 2021. See, *infra*, at Section III.B.3.b and Exhibits A and B attached hereto.

EXHIBIT
E

## I. INTRODUCTION

Plaintiff's Motion to Remand and Amended Motion to Remand ("Plaintiff's Motions") should not be granted for at least four reasons. First, on September 8, 2021, U.S. District Judge Shah entered an injunction—under Rule F of the Supplemental Rules for Admiralty or Maritime Claims and the Limitation of Liability Act, 46 U.S.C. Section 30505—that stays and restrains the prosecution of any legal action against Defendant Hanson, except in the separate legal proceeding pending before Judge Shah in Case No. 1:21-cv-4295. See Doc. 18. Absent modification by Judge Shah of this injunction, this matter should be stayed and this Court should not take action on Plaintiff's Motions. Second, regardless of Judge Shah's Rule F injunction, removal of Plaintiff's Complaint was proper under both the Court's diversity and admiralty jurisdiction, although either basis is sufficient. Third, none of the three reasons Plaintiff submitted in support of remand are valid because they misstate admiralty law and assert incorrect and inconsequential issues regarding diversity jurisdiction. Finally, in a last-ditch effort to defeat this Court's diversity jurisdiction, Plaintiff amended her Complaint to name a long-known party, but she did so only *after* the usual 30-day time period for remand expired. This belated attempt to defeat the Court's diversity jurisdiction fails under 28 U.S.C. Section 1447 because the Court's subject matter jurisdiction remains secure in admiralty.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her original Complaint in Cook County, Illinois on July 1, 2021, seeking wrongful death and survival damages against Defendants Hanson, LHS, Stubbs, and Heidelberg Cement Group.[3] There is no dispute that this case involves the capsizing and sinking of a vessel

---

[3] Heidelberg Cement Group was not named as a Defendant in Plaintiff's Second Amended Complaint, which was filed on August 30, 2021, more than 30 days after Defendants removed

on the Chicago River, a navigable waterway of the United States. On July 24, 2021, Defendants Hanson, LHS, Stubbs, and Heidelberg Cement Group timely and properly removed the case to this Court under both diversity jurisdiction and admiralty jurisdiction, *citing Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015) (approving removal based on admiralty jurisdiction).

On August 23, 2021, Plaintiff moved to remand this matter to state court for three reasons, but Plaintiff is incorrect on each of her points. First, Plaintiff misstates the applicable admiralty law by improperly conflating admiralty jurisdiction with an abstention doctrine known as the "Single Claimant Exception," which is not presently at issue before this Court. Second, with respect to diversity jurisdiction, Plaintiff claims Defendants did not adequately identify the citizenship of Defendant LHS. This too is inaccurate because, as stated in the Notice of Removal, LHS is a citizen of Delaware and Texas because its *sole* owner (and, therefore, sole member) is Defendant LHI, which is a citizen of Delaware (its state of incorporation) and Texas (its principal place of business). Finally, Plaintiff incorrectly asserts—based solely on a 2006 news article—that Defendant Hanson is a citizen of Illinois because the article incorrectly states that Hanson's principal place of business is in Illinois. Again, Plaintiff is incorrect because Hanson's principal place of business, and nerve center, is—as stated in the Notice of Removal—in Texas, not Illinois.

On August 30, 2021, the Court granted Plaintiff leave to file a Second Amended Complaint. Doc. 15. At that same time, the Court also established a briefing schedule on Plaintiff's initial Motion to Remand. *Id.*

---

the case. Defendants LHI and Celio San Gabriel were added as Defendants in Plaintiff's Second Amended Complaint.

On September 3, 2021—more than 30 days after the case had been removed—Plaintiff filed an "Amended Motion to Remand the Matter to State Court." Doc. 17. Plaintiff's Amended Motion is largely duplicative of her original Motion, except that it includes discussion of Plaintiff's addition of Defendant Celio San Gabriel ("San Gabriel") in her Second Amended Complaint. Because this Court's subject matter jurisdiction is secure regardless of whether Defendant San Gabriel's status as a party or his citizenship, there is no need for the Court to address Plaintiff's untimely argument about Defendant San Gabriel.

## III. LEGAL ARGUMENT

### A. This case should be stayed pursuant to Judge Shah's Rule F injunction

On August 11, 2021, and pursuant to its rights under Rule F and the Limitation of Liability Act, Hanson filed a Complaint in this Court seeking exoneration from, or limitation of, liability (hereafter, the "Limitation Case"). Limitation cases are within the exclusive jurisdiction of federal courts. Hanson's Limitation Case was assigned to District Judge Shah.[4] Consistent with Rule F and the Limitation Act, Judge Shah entered an injunction on September 8, 2021, to stay and restrain the prosecution of any legal action against Defendant Hanson, except in its Limitation Case, No. 1:21-cv-4295. See Doc. 18. As such, this matter should be stayed, including Plaintiff's Motions, pending further Order from Judge Shah.

### B. Apart from Judge Shah's injunction, Plaintiff's Motions should be denied because removal was proper

If the Court reaches the merits of Plaintiff's Motions despite Judge Shah's injunction, it should deny the Motions.

#### *1. Legal Standard for Motions to Remand*

[4] In its civil cover sheet for its Limitation Case, Hanson identified its Limitation Case as being related to this case.

Defendants may properly remove to federal court a case filed in state court that could have been filed originally in federal court. 28 U.S.C. § 1441. Whether a case was properly removed to federal court is determined based upon "the situation which existed when the case was removed." *Harmon v. OKI Systems*, 115 F.3d 477, 480 (7th Cir. 1997); *Matter of Shell*, 970 F. 2d 355 (7th Cir. 1992) (*per curiam*) ("jurisdiction is determined as of the instant of removal"); *Elftmann v. Village Of Tinley* Park, 191 F. Supp. 3d 874, 878 (N.D. Ill. 2016) (In considering a motion for remand, the court must examine the plaintiffs' complaint at the time of the defendant's removal); *Brokaw v. Boeing Company*, 137 F. Supp. 3d 1082, 1091 (N.D. Ill. 2015) ("In considering a motion for remand, the court must examine the plaintiff's complaint at the time of the defendant's removal and assume the truth of all factual allegations contained within the original complaint").

Both the Court's admiralty jurisdiction and diversity jurisdiction were satisfied when Defendants removed this case, although either basis is alone sufficient to support removal.

*2. Plaintiff's argument about the "Single Claimant Exception" is a red herring that has no relevance to the Court's subject matter jurisdiction*

Plaintiff initial argument—and her only argument that even attempts to address the Court's admiralty jurisdiction—argues that this case should be remanded pursuant to the "Single Claimant Exception" to the Limitation of Liability Act.[5] For a host of reasons set forth below, this argument is deeply flawed and should be rejected.

---

[5] For a detailed discussion of the history and purpose of the Limitation Act and its "Single Claimant Exception," *see Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001). In short, the federal Limitation of Liability Act permits shipowners, like Hanson, to seek limited liability in connection with maritime casualties. Such limitation proceedings are exclusively within the jurisdiction of federal courts. In some circumstances, the Single Claimant Exception allows for some issues (those not concerning limitation) to be resolved outside of the limitation proceeding when only a single claimant has filed a claim against the shipowner along with certain stipulations to protect the shipowner's rights under the Limitation Act.

First, reference to the Single Claimant Exception raises a red herring that ignores the applicable Seventh Circuit precedent cited in Defendants' Notice of Removal, *Lu Junhong v. Boeing Co.*, 792 F.3d at 813–17 (affirming removal based on admiralty jurisdiction). Plaintiff makes no attempt to address *Lu Junhong* in her Motions and makes no argument whatsoever that admiralty jurisdiction is lacking in this case. As set forth in Defendants' Notice of Removal, and the cases cited therein, admiralty jurisdiction plainly exists over this dispute concerning the navigation and capsizing of a vessel on a navigable waterway. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–65, 364 n.2 (1990)); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Lu Junhong*, 792 F.3d at 813–17.

Second, unable to challenge the Court's admiralty jurisdiction, Plaintiff instead conflates the Court's admiralty jurisdiction with an unrelated issue involving the Single Claimant Exception and federal court's exclusive jurisdiction over limitation cases. To support its position, Plaintiff confusingly cites a number of cases involving the Limitation of Liability Act. *See American River*, 579 F.3d 820; *Lewis*, 531 U.S. 438 (2001); *McCarthy Brothers*, 83 F.3d 821 (7th Cir. 1996), *Illinois Marine Towing*, 498 F.3d 645; *Lake Tankers*, 354 U.S. 147 (1957); *Langnes v. Green*, 282 U.S. 531 (1931).

The fatal flaw in Plaintiff's argument is that none of the cases she cites involve issues of removal, remand, or even a conflict about admiralty jurisdiction. Instead, they all concern when a federal court should abstain[6] from exercising its jurisdiction, at least as to non-limitation issues,

[6] The doctrine of abstention presupposes that jurisdiction is proper in more than one court. Here, Plaintiff's Motions ironically hinges on a supposed lack of subject matter jurisdiction, while at the same time urging the Court to apply an abstention doctrine that is rooted in multiple courts having proper jurisdiction.

and dissolve a Rule F(3) injunction so one or more claimants may pursue litigation outside of the shipowner's limitation of liability case. The existence and effect of admiralty jurisdiction is an entirely different concept than abstention. *See, e.g.*, *McCarthy Brothers*, 83 F.3d at 828; *Illinois Marine Towing*, 498 F.3d 650. Thus, all the cases cited by Plaintiff are irrelevant to the remand analysis that Plaintiff's Motions present. While the Single Claimant Exception *may* become an issue in Hanson's Limitation Case pending before Judge Shah, it has no bearing on Plaintiff's Motions pending before this Court.

That Plaintiff is confusing legal apples with legal oranges when she urges this Court to remand this case based upon the Single Claimant Exception is further underscored by Plaintiff's citations to the Supreme Court's decision in *Langnes v. Green*, 282 U.S. 531 (1931), a case about limitation of liability, not about whether a state court action properly was removed to federal court. The other cases cited by Plaintiff are also based on *Langnes.* Plaintiff states that the Supreme Court held that "the district court should allow the action to proceed in state court, *while retaining exclusive jurisdiction over the question of liability limitation*." Doc. 17 at 4 (emphasis added). But as the Supreme Court has explained, "[w]hen a district court remands a case to state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996). In other words, if *Langnes* and its progeny of other limitation cases had any bearing on the issue before this Court—whether this case was properly removed to federal court or instead should be remanded—the law would not call for the federal court retaining jurisdiction over part of the case. Rather, the law would grant a motion to remand based upon improper removal and divorce the federal court from further involvement entirely, a set of facts and an outcome that *Langnes* and Plaintiff's other citations do not involve.

Because federal subject matter jurisdiction plainly exists in this case, Plaintiff's Motions are essentially asking the Court to decline to exercise jurisdiction that it is duty-bound to exercise. "We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush*, 517 U.S. at 716. Abstention from the exercise of that jurisdiction is permissible only when the relief sought by the plaintiff is equitable or otherwise discretionary. *Id.* at 731. Of course, that is not the situation here because Plaintiff in this case seeks damages, not equitable or discretionary relief. Accordingly, Plaintiff's urging this Court to refuse to exercise its proper jurisdiction, based upon cases that have nothing to do with removal, is misguided and should be rejected.

Third, Plaintiff's argument about the Single Claimant Exception has no application in this case because it is not a limitation case filed by a shipowner under Rule F; Hanson's limitation case is pending before Judge Shah. Instead, this case was filed by Plaintiff and removed to federal court under both diversity and admiralty jurisdiction.

Fourth, this case does not present an issue, like the cases cited in Plaintiff's Motions, about whether a Rule F(3) injunction should be dissolved since no such injunction was sought or entered in this case.

Fifth, it is premature for any court to determine whether this dispute involves only a single claim because the deadline to file claims against Hanson has been set for November 1, 2021 in Judge Shah's case.

Finally, Plaintiff's vague reference to the Savings to Suitors Clause of 28 U.S.C. Section 1333 (the statutory grant of admiralty jurisdiction) in the context of the Single Claimant Exception does not aid her argument for remand. The Savings to Suitors Clause seeks to preserve common law *remedies,* such as a jury trial. In this removed case, Plaintiff has

demanded a jury trial and this Court is competent to provide that remedy. "State remedies under the Savings to Suitors clause may be pursued in state court or, where there is a basis for federal jurisdiction, in federal court." *Ballard Shipping Co. v. Beach Shellfish*, 32 F. 3d 623, 626 (1st Cir. 1994), cited favorably by *Robinson v. Alter Barge Line, Inc*., 513 F.3d 668, 673 (7th Cir. 2008). Here, this case was properly removed under <u>both</u> diversity and admiralty jurisdiction so there is no possible violation of the Savings to Suitors Clause. *See also Curry v. Boeing Co.*, 2021 WL 1088325 (N.D. Ill. 2021) (admiralty case was properly removed within diversity jurisdiction regardless of the Savings to Suitors Clause).

As occurred in *Lu Junhong*, 792 F.3d at 813–17, Plaintiff has <u>not</u> argued in either of Plaintiff's Motions that the Savings to Suitors Clause forbids all removal of admiralty matters. As such, there is no need for the Court to address this issue since Plaintiff has waived and forfeited any potential argument on that issue. It is too late for Plaintiff to make such an argument now. *See also In re Chicago Board Options Exchange*, 435 F. Supp. 3d 845 (N.D. Ill. 2020) ("arguments raised for the time in a reply brief are waived") (*quoting Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009); *Board of Trustees of Plumbers Local Union No. 93 v. Waterworks, Inc*., 524 F. Supp. 2d 1081, n. 1 (N.D. Ill. 2007) (*citing Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007)).

*3. The only two timely arguments raised by Plaintiff about diversity jurisdiction are also without merit*

Plaintiff's initial Motion to Remand also raised two arguments for remand regarding the Court's diversity jurisdiction, but both lack merit.

a. Defendant LHS is a citizen of Delaware and Texas, as stated in the Notice of Removal, because its sole owner and member is LHI, which is a citizen of only Delaware (state of incorporation) and Texas (principal place of business)

Plaintiff claims that Defendants' Notice of Removal did not adequately identify the citizenship of Defendant LHS. This is inaccurate because, as stated in the Notice of Removal, LHS is a citizen of Delaware and Texas because its *sole* owner/member is Defendant LHI, which is a citizen of Delaware (its state of incorporation) and Texas (its principal place of business). To remove any possibility of ambiguity about the citizenship of LHS, attached as Exhibit A is an Affidavit of Carol Lowry, who is General Counsel, Vice President, and Secretary of LHI and LHS. Ms. Lowry's affidavit states:

> "2. Lehigh Hanson, Inc. is the sole member and owner of Lehigh Hanson Services LLC.
>
> 3. Lehigh Hanson, Inc. is a Delaware corporation and has its principal place of business in Irving, Texas."

Exhibit A. Plaintiff has not asserted any contrary facts about the citizenship of LHS and has cited no case holding remand is proper under such circumstances.

If the Court believes that the Notice of Removal should be clarified or amended to state expressly that LHI is the only owner *and* only member of LHS, then removing Defendants respectfully request the opportunity to amend its removal papers pursuant to 28 U.S.C. Section 1653. *See Harmon*, 115 F.3d 477 (affirming district court's denial of remand and permitting amendment of removal papers under Section 1653 to address omissions related to defendants' principal place of business, the plaintiff's citizenship, and the amount in controversy were omissions).

    b. Defendant Hanson is a citizen of only Kentucky (its state of incorporation) and Texas (its principal place of business), as stated in the Notice of Removal

Plaintiff's third and final timely argument for remand fares no better. Plaintiff asserts that Defendants' Notice of Removal is defective because Hanson's principal place of business is actually in Illinois, rather than Texas, as stated in the Notice of Removal.

As the sole support for its argument, the Plaintiff cites a news article that is dated "March 2006." Exhibit B. A fifteen-year-old news article is a far cry from reliable evidence about Hanson's principal place of business in 2021.

To again remove any possibility of ambiguity about the citizenship of Hanson, Carol Lowry's Affidavit, states:

> "4. Attached is a true and correct copy of the Articles of Merger Merging Material Service Corporation With and Into Hanson Aggregates Midwest, Inc. As you can see from this document, Hanson Aggregates Midwest, Inc., a Kentucky corporation, was the surviving entity.
>
> 5. Hanson Aggregates Midwest, Inc. has its principal place of business in Irving, Texas."

Exhibit A. Plaintiff has failed to provide the Court with any reliable evidence to refute Hanson's citizenship as set forth in the Notice of Removal.

*4. Plaintiff's untimely argument about the addition of Defendant San Gabriel has no impact on remand because the Court's subject matter jurisdiction is satisfied in admiralty regardless of whether diversity jurisdiction exists*

Plaintiff's final argument in support of remand is set forth in its "Amended Motion to Remand" [Doc. 17], which was filed more than 30 days after removal. The basis for this "Amended Motion" appears to be the addition of Defendant San Gabriel on August 30, 2021, who Plaintiff claims—without citation to any evidence—is a citizen of Illinois and thereby defeats diversity jurisdiction.

As set forth above, however, San Gabriel was added as a defendant to this case by Plaintiff more than 30 days after it was removed. "The well-established general rule is that

Case: 22-1551 Document: 11 Filed: 04/13/2022 Pages: 204

jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *Elftmann*, 191 F. Supp. 3d 874 (quoting *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010)).

Under 28 U.S.C. Section 1447, "a motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a)." *Id.* (emphasis added). Here, there can be no dispute that Plaintiff did not move timely to remand on the basis of Defendant San Gabriel destroying complete diversity within the 30-day deadline because San Gabriel was not a party until after the 30-day time period had expired. Accordingly, any motion to remand after 30 days—such as Plaintiff's Amended Motion to Remand filed September 3, 2021—can only be granted under Section 1447 based on lack of subject matter jurisdiction.

As such, resolution of Plaintiff's Amended Motion only requires the Court to consider whether it has subject matter jurisdiction. As made clear in Defendants' Notice of Removal, admiralty jurisdiction plainly exists in this case, a fact that Plaintiff does not contest. *See Jerome B. Grubart, Inc.*, 513 U.S. 527 (quoting *Sisson*, 497 U.S. 358); *Foremost Ins. Co.* 457 U.S. 668; *Lu Junhong*, 792 F.3d 805. As a result of the Court's admiralty jurisdiction—which Plaintiff has not (and cannot) dispute, it is unnecessary for the Court to address whether San Gabriel's addition to the case defeats diversity jurisdiction. In other words, Plaintiff's addition of San Gabriel was too late to affect remand because the Court's admiralty jurisdiction satisfies the requirements for subject matter jurisdiction under Section 1447.

Even if the Court were to consider San Gabriel's addition to affect its decision on remand, he was plainly added in an effort to defeat the Court's diversity jurisdiction. Plaintiff has been well aware of San Gabriel's status as the operator of the pleasure craft from the

outset—she was in the pleasure craft with him when the incident occurred. *In re Bridgestone/Firestone, Inc., ATX, ATX II etc. v. Ford Motor Co.*, 129 F. Supp. 2d 1202, 1205 (S.D. Ind. 2001) ("When a plaintiff was aware at the time of the filing of her original complaint of the identity of the defendant she now seeks to add, there arises some suspicion of plaintiff's motives to amend"). Presumably, Plaintiff decided against suing San Gabriel initially because he was a friend or family member and/or lacks assets to pay a judgment.[7] Plaintiff's belated attempt to manipulate this Court's diversity jurisdiction through the late addition of San Gabriel should be rejected. *Harmon*, 115 F. 3d at 479-80 (the Seventh Circuit takes a dim view of plaintiffs who "attempt to manipulate jurisdiction" in order to "pull the rug out from under the district court"); *Tate v. Werner Co.,* 2002 WL 1398533 at *2 (S.D. Ind. 2002) ("Furthermore, once a defendant has removed the case, any later filings by a party attempting to divest federal jurisdiction are irrelevant.").

**IV. CONCLUSION**

Plaintiff's Motion to Remand and Amended Motion to Remand should each be denied. Judge Shah's Rule F injunction should require this matter be stayed, not remanded. On the merits, Plaintiff's Motions should be denied because removal was proper under either diversity jurisdiction and/or admiralty jurisdiction. None of Plaintiff's three timely arguments in support of remand are meritorious, but instead conflate admiralty issues and raise inconsequential issues about diversity based on incorrect facts. Finally, the addition of Defendant San Gabriel after the 30-day time period to seek remand was jurisdictional gamesmanship at its worst and does not matter in any event because the Court's subject matter jurisdiction is secure in admiralty.

---

[7] There is no indication in the record that Plaintiff has served or even attempted to serve Defendant San Gabriel with her Second Amended Complaint.

For all of the foregoing reasons, Defendants Hanson, LHS, LHI, and Stubbs respectfully request that Plaintiff's Motions to Remand be denied.

Respectfully submitted,

GOLDSTEIN and PRICE, L.C.

*/s/ Neal W. Settergren*
By:______________________________

Neal W. Settergren (admitted *pro hac vice)*
Jacob D. Curtis (admitted *pro hac vice*)
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1711 direct dial
(314) 421-2832 fax
neal@gp-law.com
jacob@gp-law.com
*Counsel for Defendants Hanson, LHS, LHI, and Stubbs*

and

GOULD & RATNER LLP
Paul W. Carroll
222 North LaSalle Street
Chicago, IL 60601
(312) 899-1657 direct dial
pcarroll@gouldratner.com
*Local Counsel Attorney for Defendants Hanson, LHS, LHI, and Stubbs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 21st day of September 2021, a true and accurate copy of the foregoing and the documents referenced with were served upon all counsel of record by filing the same with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system.

*/s/ Neal W. Settergren*
______________________________

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,

Plaintiff,

v.

MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL,

Defendants.

Case No. 1:21-cv-03936

Judge Sara L. Ellis

Magistrate Judge Sunil R. Harjani

**SECOND AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff, MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, by her attorneys WISE MORRISSEY, LLC and complaining against the defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; LEHIGH HANSON, INC., CAPTAIN KENNETH L. STUBBS and CELIO SAN GABRIEL, states as follows:

**PARTIES**

1. On July 22, 2020, and at all time relevant herein, plaintiff Mariana M. Ochoa ("MARIANA") is the mother and Independent Administrator of the Estate of seven year-old decedent VICTOR LOBATO OCHOA ("VICTOR").

2. On July 22, 2020, and at all time relevant herein, MARIANA and VICTOR were residents of the City of Chicago, County of Cook.

EXHIBIT
F

3. On July 22, 2020, and at all time relevant herein, defendant CELIO SAN GABRIEL ("SAN GABRIEL") was a resident of the City of Chicago, County of Cook.

4. On July 22, 2020, and at all times relevant herein, defendant MATERIAL SERVICE CORPORATION ("MATERIAL") d/b/a HANSON MATERIAL SERVICE CORPORATION ("HANSON") was a Corporation registered to conduct business in Illinois.

5. On July 22, 2020, and at all times relevant herein, defendant MATERIAL d/b/a HANSON maintained a principle place of business located in Westchester, Illinois.

6. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON SERVICES LLC. ("LEHIGH"), was a limited liability company registered to conduct business in Illinois.

7. On July 22, 2020, and at all times relevant herein, defendant LEHIGH maintained places of business located in the City of Chicago and the Village of McCook in the County of Cook.

8. On July, 22, 2020, and at all times relevant herein, defendant LEHIGH owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

9. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSON, INC., was one of the largest building materials companies in the country.

10. On July 22, 2020, defendant LEHIGH HANSON, INC. owned, operated, maintained or controlled its subsidiary defendant MATERIAL d/b/a HANSON.

11. On July 22, 2020, defendant LEHIGH HANSON, INC. owned, operated, maintained or controlled its subsidiary defendant LEHIGH.

12. On July 22, 2020, and at all times relevant herein, defendant CAPTAIN KENNETH L. STUBBS ("STUBBS") was the captain of the inland river towboat Kiowa ("Kiowa"). The

Kiowa had a triple screw 1500 horse power engine with dimensions of 76 feet long and 26 feet wide, while weighing approximately 292,000 pounds. At that time, the Kiowa was pushing a barge MSCO103 that was 195 feet long and 35 feet wide and fully loaded with aggregate. The barge MSCO103 weighed hundreds of thousands of pounds.

13. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant MATERIAL d/b/a HANSON.

14. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant LEHIGH.

15. On July 22, 2020, and at all times relevant herein, defendant STUBBS was an employee, agent or apparent agent of defendant LEHIGH HANSON, INC.

16. On July 22, 2020, and at all times relevant herein, defendant MATERIAL d/b/a HANSON owned, operated, maintained or controlled the Kiowa and barge.

17. On July 22, 2020, and at all times relevant herein, defendant LEHIGH owned, operated, maintained or controlled the Kiowa and barge.

18. On July 22, 2020, and at all times relevant herein, defendant LEHIGH HANSO Inc. owned, operated, maintained or controlled the Kiowa and barge.

## FACTS COMMON TO ALL COUNTS

19. In March 2017, the National Transportation Safety Board (NTSB) issued a "Safety Recommendation Report" (Report) regarding safety of recreational and commercial vessels in shared waterways, like the Chicago River. (See below photo of the Chicago River from the Report)

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION; LEHIGH HANSON SERVICES LLC.; HEIDELBERG CEMENT GROUP; CAPTAIN KENNETH L. STUBBS; and CELIO SAN GABRIEL,<br><br>Defendants. | Case No. 1:21-cv-03936<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S AMENDED MOTION TO REMAND THE MATTER TO STATE COURT**

NOW COMES Plaintiff, MARIANA M. OCHOA ("Plaintiff") as Independent Administrator of the Estate of VICTOR LOBATO OCHOA ("Victor"), Deceased, by her attorneys WISE MORRISSEY, LLC. against Defendants, MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION ("Material"); LEHIGH HANSON SERVICES LLC. ("Lehigh LLC."); LEHIGH HANSON, INC. ("Lehigh Inc."), CAPTAIN KENNETH L. STUBBS ("Stubbs") and CELIO SAN GABRIEL ("San Gabriel"), for her Amended Motion to remand the matter to State Court[1].

**Introduction**

[1] Plaintiff's Amended Motion to Remand is filed in response to the Plaintiff's Second Amended Motion being filed on August 31, 2021. (Dkt. 16). In particular, Plaintiff's Second Amended Complaint added Defendant Celio San Gabriel to the Complaint. Defendant San Gabriel is a resident of Cook County, Illinois.

EXHIBIT
G

Plaintiff's Motion seeks to remand the above matter to State Court pursuant to 28 U.S. Code § 1447(c) for the following reasons: 1) the Court lacks subject matter jurisdiction since the Single Claimant exception applies to the present matter; 2) Defendants' Notice of Removal is deficient for failing to list the citizenship of each of Defendant Lehigh Hanson Services LLC.'s partners, limited partners and members; 3) the parties lack complete diversity where Defendant San Gabriel is a citizen of Illinois and Material's principle place of business is in Illinois.

**<u>Procedural History</u>**

On July 22, 2020, at approximately 6:40 p.m., San Gabriel was operating a 16-17 foot long open motorboat on the Chicago River with eight additional passengers, including three adults and five small children. (Exhibit 1, First Amended Complaint ¶21). All eight occupants of the motorboat were wearing Personal Flotation Devises (PFD) including the Plaintiff and Victor. (Exh. 1, ¶22). At that time, Defendant Captain Kenneth L. Stubbs ("Stubbs") was operating the towboat Kiowa ("Kiowa") which was 76 feet long and 26 feet wide. (*Id.* at. ¶ 11). The Kiowa was pushing a barge that was 195 feet long and 35 feet wide, while being fully loaded with aggregate. (*Id.* at ¶11). The First Amended Complaint alleges that Defendant Stubbs was an employee of Defendants Material, Lehigh LLC. and/or Lehigh Inc. (*Id.* at ¶12-14).

According to witness accounts and an investigation by the Illinois Department of Natural Resources ("IDNR"), the Kiowa was traveling at a speed that created large wakes in the Chicago River, which was a strict no-wake zone. (*Id.* at ¶¶33-35). At that time, the wakes created by the Kiowa and barge washed over the open bow of the motorboat and resulted in it capsizing and the occupants being thrown overboard. (*Id.* at ¶29). Victor was trapped underneath the motorboat and tragically drowned. (*Id.* at ¶30). A subsequent IDNR investigation concluded that the "cause of the accident" was the "force of wake" created by the Kiowa and barge. (*Id.* at ¶34).

On July 1, 2021, Plaintiff filed her original Complaint in the Circuit Court of Cook County, Illinois, County Department, under Case No. 2021-L-006726. (Exhibit 2, Original Complaint). Plaintiff's original Complaint was served on Defendants Material and Lehigh Hanson Services LLC on July 14, 2021, and Defendant Stubbs on July 17, 2021. (Dkt. 1, pg.3, 43-45). Plaintiff filed her First Amended Complaint in the Circuit Court of Cook County on July 22, 2021. (Exh. 1). Defendants filed their Notice of Removal of Plaintiff's original Complaint on July 24, 2021. (Dkt. 1). Finally, on August 31, 2021, plaintiff filed her Second Amended Complaint. (Dkt. 16).

## Argument

### I) The Court lacks subject matter jurisdiction where the Single Claimant exception applies.

Defendants claim that this Court has original jurisdiction based on admiralty and pursuant to 28 U.S.C. § 1333(1) which states "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled". (Dkt. 1, pg.3). As stated, the "savings to suitors" clause in 28 U.S.C. § 1333(1), reserves to suitors in admiralty or maritime cases their common-law remedies. These remedies include the right to select a forum and the right to demand a jury trial. *See American River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009); *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *see also In re McCarthy Brothers Co.*, 83 F.3d 821, 826–27 (7th Cir.1996) (describing the conflict between the "savings to suitors" clause and the ship owner's right to limited liability under 46 U.S.C § 30511(c) as "significant" because claimants have no right to a jury trial in admiralty actions in federal court, and holding that a federal court must allow a claimant to proceed in state court if the owner fails to prove her right to limited liability).

The Supreme Court has determined that in light of this conflict between the public interest in protecting the shipping industry reflected in the Limitation Act, and the strong interest in

preserving common law remedies for injured parties underlying the "savings to suitors" clause of § 1333(1), district courts have discretion to allow a case to proceed in state court if certain conditions are met. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). The Supreme Court and the Seventh Circuit recognize two situations in which a district court should allow a state court action involving a maritime claim to proceed: (1) the "single claimant" exception; and (2) the "adequate fund" exception. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 154 (1957); *Langnes v. Green,* 282 U.S. 531, 541 (1931); *see also In re Illinois Marine Towing, Inc.,* 498 F.3d 645, 650 (7th Cir.2007).

As its name suggests, the "single claimant" exception exists when there is only a single claimant asserting his claim(s) against the shipowner—in that case, the Supreme Court has held that there is no need for the "peculiar and exclusive jurisdiction of an admiralty court," and the district court should allow the action to proceed in state court, while retaining exclusive jurisdiction over the question of liability limitation. *Langnes,* 282 U.S. at 541–42. The Supreme Court reasoned that for a district court to retain the suit when a state court could afford relief "would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a common law remedy; [whereas] to remit the cause to the state court would be to preserve the rights of both parties." *Illinois Marine,* 498 F.3d at 650; *citing Langnes,* 282 U.S. at 541.[2] In the present case, Plaintiff has brought a single claim against the Defendants on behalf of her son, Victor. Therefore, the "single claimant" exception applies to the present matter and the "saving to suitors"

[2] Defendants have not sought to stay the underlying state matter pursuant to Limitation of Liability Act (Limitation Act). 46 U.S.C. § 30505. Assuming Defendants seek such a stay, the Plaintiff is willing to enter into the requisite stipulation needed to waive any claim of *res judicata* against Defendants based on a state court decision or judgment with respect to issues arising under the Limitation Act. In addition, Plaintiff is willing to stipulate that she would not seek to enforce any state court decision or judgment on any claim subject to limitation under the Act which exceeds the value of the limitation fund as determined by the District Court.

clause of 28 U.S.C. § 1333(1) prevents the Court from having subject matter jurisdiction over the present matter.

**II) Defendants have failed to satisfy their burden to establish diversity.**

Defendants claim that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). because the corporate Defendants and tugboat captain are allegedly not "citizens" of the same state as the Plaintiff. (Dkt. 1, pg.3). For an individual, "[s]tate citizenship for the purpose of the state diversity provision is equated with domicile." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). For a corporation, it is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

"When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010). Ultimately, the removing party must establish the facts determining federal jurisdiction by a preponderance of the evidence. *Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 590 (7th Cir. 2008). The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993). As the Supreme Court has long instructed, federal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction. *See Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900).

In the present case, defendant San Gabriel was the owner and operator of the open motorboat that Plaintiff and Victor were traveling in at the time of the accident. (Dkt. 16, Second Amended Complaint ¶25). Importantly, San Gabriel was a "citizen" and resident of Cook County, Illinois at the time of the accident. Therefore, the parties lack "diversity" and this Court lacks

jurisdiction over this matter whether both Plaintiff and Defendant San Gabriel are "citizens" of Illinois.

When it comes to corporations, the diversity statute itself makes clear that a corporation is a citizen of both its state of incorporation and the state in which it maintains its "principal place of business." *See* 28 U.S.C. § 1332(c)(1). The Supreme Court has determined that a corporation's principal place of business is the same as its "nerve center," or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp*., 559 U.S. at 80. Determining the citizenship of other forms of business associations is often more difficult. *Page v. Democratic National Committee*, 2 F.4th 630, 635 (7th Cir. June 21, 2021). Partnerships, for example, are citizens of every state in which an individual partner is a citizen. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990). The same rule applies to other unincorporated entities, like limited liability companies, whose citizenship is also determined by the citizenship of its "members." *See Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381–82 (2016); *see* e.g., *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990) (citizenship of a partnership is that of every partner or member, limited as well as general). The only way to determine citizenship for diversity purposes is to look at the individual partners—an analytical path repeatedly endorsed by the Supreme Court. *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)

First, Defendants' Notice fails to list the citizenship of Defendant Lehigh Hanson Services LLC.'s individual partners or members. (Dkt. 1, ¶27). Instead, the Notice provides a single paragraph regarding the citizenship of Lehigh Hanson Services LLC. claiming that it is "wholly owned" by non-defendant Lehigh Hanson Inc. (*Id.*). As such, Defendants claim that Lehigh Hanson Services LLC. is a Delaware Corporation with its principal place of business in Texas.

(*Id.*). As the Supreme Court and Seventh Circuit have repeatedly held, the party claiming diversity jurisdiction must detail the citizenships of all its partners, limited partners and members. *See. Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (The citizenship of a partnership is the citizenship of the partners, even if they are limited partners, so that if even one of the partners (general or limited) is a citizen of the same state as the plaintiff, the suit cannot be maintained as a diversity suit). In fact, a party's failure to provide such requisite information has led to dismissal for want of prosecution. *See Guaranty National Title Co. v. J.E.G. Associates*, 101 F.3d 57 (7th Cir.1996) (Failure to go through all the layers can result in dismissal for want of jurisdiction).

Second, Defendants' Notice fails to satisfy their burden to establish that Defendant Material d/b/a Hanson Material Service Corporation does not have its principal place of business in Illinois. Defendants' Notice contains the claim that Material "merged with and into" Hanson Aggregate Midwest Inc. "on or about February 21, 2021", approximately seven months after the drowning occurred. (Dkt. 1, pg.1 n.1). The Notice goes on to make the conclusory claim that since Hanson Aggregates Midwest Inc. was organized under the laws of Kentucky and has its principal place of business in Texas, than Defendant Material shares the same citizenship. (Dkt. 1, ¶26). However, the single paragraph in Defendants' Notice fails to satisfy their burden to establish that Material does not maintain its principal place of business in Illinois. In reality, Material was formed in Chicago, Illinois by the Crown family in 1919 and has maintained its principal place of business in this state ever since. Moreover, Material currently has more than 800 employees working in Illinois and Indiana, and although Material purportedly merged with Hanson Aggregate Midwest Inc. in February 2021, Material still maintains its principle place of business in Illinois. *See* http://www.ceram.com/news/mar/material-service.htm last visited August 23, 2021).

**Conclusion**

Wherefore, Plaintiff Mariana M. Ochoa as Independent Administrator of the Estate of Victor Lobato Ochoa, Deceased respectfully requests that this Court grant her Motion to Remand the matter to State Court.

Respectfully submitted,
MARIANA M. OCHOA

By: /s/ *Michael L. Gallagher*
One of Her Attorneys

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBOATO OCHOA, Deceased,

Plaintiff,

v.

HANSON AGGREGATES MIDWEST, INC. f/k/a MATERIAL SERVICE CORP. d/b/a HANSON MATERIAL SERVICE CORPORATION, et al.

Defendants.

Case No.: 1:21-cv-03936

District Judge Sarah L. Ellis
Magistrate Judge Sunil R. Harjani

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS TO REMAND**

Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation ("Hanson"), Lehigh Hanson Services LLC ("LHS"), Lehigh Hanson, Inc. ("LHI"), and Captain Kenneth L. Stubbs ("Stubbs") submit the following as their Supplemental Brief in Opposition to Plaintiff's Motion to Remand [Doc. 13] and Plaintiff's Amended Motion to Remand [Doc. 17]:[1]

## I. Introduction

Despite the voluminous nature of the original briefing submitted to this Court regarding these issues, resolution of the core dispute regarding removal is now relatively straightforward:

> "In determining whether a case is within a federal court's removal jurisdiction, a court examines the situation **as it existed at the time of the petition for removal**.

[1] This Supplemental Brief was authorized by the Court during the status conference held on February 8, 2022, wherein the Court advised the parties that it would resolve together the Motion to Remand pending in this matter, along with the Motion to Lift the Rule F Stay pending in the related matter, Case No. 1:21-cv-4295.

EXHIBIT
H

**Where removal is proper at the outset, subsequent developments, particularly voluntary actions of the plaintiff, including the joinder of nondiverse parties, will not defeat jurisdiction**."

*Poole v. Alpha Therapeutic Corp.*, 1987 WL 15176 at *1 (N.D. Ill. 1987) (citations omitted) (emphasis added); *Harmon v. OKI Systems*, 115 F.3d 477 (7th Cir. 1997); *Elftmann v. Village of Tinley Park*, 191 F.Supp.3d 874 (N.D. Ill. 2016).

**II. Remand should be denied because this Court's Diversity Jurisdiction and Admiralty Jurisdiction were fully met at the time of Removal**

When this Case was removed on July 24, 2021, complete diversity existed, as follows:

| PARTY | CITIZENSHIP |
|---|---|
| Plaintiff Mariana Ochoa | Illinois |
| Defendant Kenneth Stubbs | Missouri |
| Defendant Lehigh Hanson Services LLC | Delaware and Texas |
| Defendant Material Service Corp.[2] | Kentucky and Texas |
| Defendant Heidelberg Cement Group[3] | Germany |

On August 23, 2021, Ochoa filed her initial motion to remand, but failed to put forth any serious evidence to dispute the diversity of citizenship set forth above and conceded the amount in controversy. *See* Affidavit of Carol Lowry, Doc. 20-1. As such, there should be no question that diversity jurisdiction existed at the time of removal and until at least August 30, 2021, when—*more than 30 days after removal*—Plaintiff obtained leave to file a Second Amended Complaint, adding Defendant Celio San Gabriel, who Ochoa claims is a citizen of Illinois. There is nothing in the record to indicate Plaintiff has ever served—or tried to serve—San Gabriel with her Second Amended Complaint, which she filed nearly six months ago and, therefore, he should be dismissed without prejudice under Rule 4(m). *See also Harmon*, 115 F.3d at 479-80 (Seventh

[2] As set forth in Defendant's Notice of Removal, Material Service Corporation was merged with and into Hanson Aggregates Midwest, Inc. on or about February 1, 2021. Doc. 1.

[3] Heidelberg Cement Group was omitted as a Defendant in Plaintiff's Second Amended Complaint filed on August 30, 2021. Instead, Defendant Lehigh Hanson, Inc.—a citizen of Delaware and Texas (Doc. 20-1)—was added, along with San Gabriel.

Circuit takes a dim view of Plaintiffs who "attempt to manipulate jurisdiction" in order to "pull the rug out from under the district court").

On September 3, 2021, Ochoa filed an "Amended Motion to remand" that argued, for the first time and more than 30 days after removal, that the addition of San Gabriel defeated this Court's jurisdiction. Ochoa's contention that her late addition of non-diverse defendant San Gabriel defeats removal jurisdiction is incorrect. Pursuant to 28 U.S.C. 1447, Ochoa did not *timely* move for remand on the basis that San Gabriel destroyed diversity jurisdiction because she failed to do so within 30 days of removal. As such, the only basis for removal permitted by §1447 in these circumstances is when the Courts lacks "subject matter jurisdiction." In other words, §1447 only permits remand for reasons raised after 30 days when there is a "lack of subject matter jurisdiction". Here, the parties agree that admiralty subject-matter jurisdiction exists in this case. Ochoa's own papers concede: "It is not contested that the incident that forms the basis of this litigation is within the scope of federal admiralty and maritime jurisdiction." Case 1:21-cv-4295 at Doc. 17, page 2, ¶ 9. As such, there is no lawful basis to conclude that this Court lacks subject-matter jurisdiction, which is required by §1447 for the untimely remand Ochoa seeks here.

In sum, removal jurisdiction was unquestionably proper at the time of removal and for more than 30 days thereafter—until at least until September 3, 2021, when Plaintiff tried to destroy diversity by adding San Gabriel. However, since §1447 only permits remand on grounds raised more than 30 days after removal for "lack of subject matter jurisdiction," there is no lawful basis to remand in this case since the parties agree admiralty jurisdiction is satisfied.

GOLDSTEIN and PRICE, L.C.

By: */s/ Neal W. Settergren*

Neal W. Settergren (admitted *pro hac vice)*
Jacob D. Curtis (admitted *pro hac vice*)
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1711 direct dial
(314) 421-2832 fax
neal@gp-law.com
jacob@gp-law.com
*Counsel for Defendants Hanson, LHS, LHI, and Stubbs*

and

GOULD & RATNER LLP
Paul W. Carroll
222 North LaSalle Street
Chicago, IL 60601
(312) 899-1657 direct dial
pcarroll@gouldratner.com
*Local Counsel Attorney for Defendants Hanson, LHS, LHI, and Stubbs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 15th day of February, 2022, a true and accurate copy of the foregoing and the documents referenced with were served upon all counsel of record by filing the same with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system.

*/s/ Neal W. Settergren*

**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF HANSON AGGRREGATES MIDWEST INC. F/K/A MATERIAL SERVICE CORPORATION D/B/A HANSON MATERIAL SERVICE CORPORATION FOR EXONERATION FROM, OR LIMITATION OF, LIABILITY. | ) ) ) ) ) ) ) | Case No.: 1:21-cv-4295<br><br>District Judge Manish S. Shah<br><br>Magistrate Judge M. David Weisman |

**CLAIMANT'S MOTION TO MODIFY STAY**

NOW COMES the Claimant, MARIANA M. OCHOA, as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, by her attorneys, WISE MORRISSEY, LLC, presents her MOTION TO MODIFY STAY, and states as follows:

1. On or about July 22, 2020, a towboat ("the M/V KIOWA"), allegedly owned by Plaintiff Hanson Aggregates Midwest Inc. (Hanson), and its barge-in-tow, Barge MSC0103, were operating on the Chicago River when it created a series of large wakes that caused a pleasure craft to capsize and sink, within the City of Chicago, County of Cook, Illinois.

2. As a result of the pleasure craft capsizing and sinking, seven year-old Victor Lobato Ochao (Victor) was trapped underneath the pleasure craft and drowned.

3. On or about July 1, 2021, Claimant Mariana M. Ochoa (Claimant), as mother and Independent Administrator of the Estate of Victor, brought suit in Illinois State Court (Case No. 21 L 006726) against Plaintiffs Material Service Corporation (Material) d/b/a Hanson Material Service Corp.; Lehigh Hanson Inland Marine Service, Inc. (Lehigh), Heidelberg Cement Group and Captain Kenneth L. Stubbs (Stubbs).



4.      Plaintiffs were subsequently served with the Complaint on July 14, 2021(Hanson), July 27, 2021 (Material), July 28, 2021 (Lehigh) and July 30, 2021 (Stubbs), respectively. On July 22, 2021, Claimant filed her First Amended Complaint correcting certain scrivener's errors.

5.      On August 11, 2021, Plaintiff Hanson filed a Complaint in this Court (Case No. 21 CV 4295) seeking to limit its liability pursuant to 46 U.S.C. §§181-195, and the various statutes, rules and regulations related thereto. (21 CV 4295, Dkt.1). In its Complaint, Hanson alleges that it was, at all relevant times, the owner of the M/V KIOWA and Barge MSC0103. (Dkt. 1, ¶2).

6.      On September 8, 2021, the Honorable Manish S. Shah entered an Order Directing Issuance and Restraining Suits. (21 CV 4295, Dkt. 10). This Order stayed and restrained the institution and prosecution of any suits, actions or legal proceedings of any nature whatsoever, against Plaintiff Hanson and alleged owner of M/V KIOWA and Barge MSC0103. (*Id.*)

7.      On October 29, 2021, Claimant, as mother and Independent Administrator of the Estate of Victor, filed an Answer in this limitation proceeding. (21 CV 4295, Dkt. 16).

8.      The Claimant desires to litigate all claims in the state courts of Illinois, and hereby move for this Court to modify its stay such that state actions may be instituted and proceed, while retaining exclusive jurisdiction as to all limitation of liability issues, with the stay remaining in effect against any entry of judgment.

9.      28 U.S.C. § 1333(1) vests the Federal District Courts with original and exclusive jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled". It is not contested that the incident that forms the basis of this litigation is within the scope of federal admiralty and maritime jurisdiction. *See Sisson v. Ruby*, 497 U.S. 358 (1990). However, the "savings to suitors" clause in 28 U.S.C. § 1333(1), reserves to suitors in admiralty or maritime cases their common-law remedies. These

remedies include the right to select a forum and the right to demand a jury trial. *See American River Transp. Co. v. Ryan*, 579 F.3d 820, 825 (7th Cir. 2009); *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *see also In re McCarthy Brothers Co.,* 83 F.3d 821, 826–27 (7th Cir.1996) (describing the conflict between the "savings to suitors" clause and the ship owner's right to limited liability under 46 U.S.C § 30511(c) as "significant" because claimants have no right to a jury trial in admiralty actions in federal court, and holding that a federal court must allow a claimant to proceed in state court if the owner fails to prove her right to limited liability).

This conflict is "significant" due to its impact on a litigant's right to jury trial. *McCarthy*, 83 F.3d at 826. There is no right to a jury trial in admiralty actions, and thus a litigant would lose his common-law remedies before a jury when forced into admiralty court under the Limitation Act. *Id.*; *citing Waring v. Clarke*, 46 U.S. 441, 458-60 (1874). Thus, the saving to suitors clause in 28 U.S.C. 1333(1) embodies a presumption in favor of jury trial and common law remedies in the forum of the plaintiff's choice. *In re Muer*, 146 F.3d 410 (6th Cir. 1998); *citing Langes v. Green*, 282 U.S. 531, 539-40 (1931).

The Supreme Court has determined that in light of this conflict between the public interest in protecting the shipping industry reflected in the Limitation Act, and the strong interest in preserving common law remedies for injured parties underlying the "savings to suitors" clause of § 1333(1), district courts have discretion to allow a case to proceed in state court if certain conditions are met. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). The Supreme Court and the Seventh Circuit recognize two situations in which a district court should allow a state court action involving a maritime claim to proceed: (1) the "single claimant" exception; and (2) the "adequate fund" exception. *See Lake Tankers Corp. v. Henn,* 354 U.S. 147, 154

(1957); *Langnes v. Green,* 282 U.S. 531, 541 (1931); *see also In re Illinois Marine Towing, Inc.*, 498 F.3d 645, 650 (7th Cir.2007).

As its name suggests, the "single claimant" exception exists when there is only a single claimant asserting his claim(s) against the ship owner in that case, the Supreme Court has held that there is no need for the "peculiar and exclusive jurisdiction of an admiralty court," and the district court should allow the action to proceed in state court, while retaining exclusive jurisdiction over the question of liability limitation. *Langnes*, 282 U.S. at 541–42. The Supreme Court reasoned that for a district court to retain the suit when a state court could afford relief "would be to preserve the right of the ship owner, but to destroy the right of the suitor in the state court to a common law remedy; [whereas] to remit the cause to the state court would be to preserve the rights of both parties." *In re Illinois Marine*, 498 F.3d at 650; *citing Langnes*, 282 U.S. at 541.

10. The Seventh Circuit has further recognized that a ship owner's rights under the Limitation Act are adequately protected when the plaintiff makes certain stipulations. *See In re McCarthy Brothers Co.*, 83 F.3d at 831. The Court has held "the claimant must waive any claim of res judicata from the state court proceedings relevant to the issue of limited liability and concede the exclusive jurisdiction of the federal courts to determine all issues relating to limitation of liability". *Id.*; *citing In Matter of Complaint of Port Arthur Towing Co.*, 42 F.3d 312, 316 (5th Cir.1995). *In re Illinois Marine Towing*, the Seventh Circuit clarified by holding the plaintiffs' stipulation was adequate where it "conceded that the district court has exclusive jurisdiction over all limitation liability issues, agreed to waive any claims of *res judicata* respecting any limitation liability issues, promised not to seek any amount in excess of the fund in the event that limitation is held appropriate and conceded that the district court has exclusive jurisdiction to determine the value of the limitation fund". 498 F.3d at 652.

12. In the present case, Plaintiff has provided the attached stipulation which tracks the Court's holding *In re Illinois Marine* by conceding this Court has exclusive jurisdiction to decide all limited liability issues (Exh. 1, ¶1), agrees to waive any claims of *res judicata* on issues of limited liability issues (Exh. 1, ¶3), agrees not seek to enforce or collect any judgment or amount in excess of the limitations fund unless and until this Court adjudicates issues related to the limitation proceeding (Exh. 1, ¶2) and concedes this Court has exclusive jurisdiction to determine the value of the limitation fund. (Exh. 1, ¶4).

13. Plaintiff Hanson opposes the Claimant's Motion to Stay and seeks twenty-one (21) days to file a response.

WHEREFORE, the Claimant, MARIANA M. OCHOA, as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, respectfully request this Court to enter an Order modifying the stay that is currently in place, thereby allowing the institution and prosecution of legal proceedings in the state courts of Illinois, while retaining exclusive jurisdiction as to all limitation of liability issues, with the stay remaining in effect as against any entry of judgment and consequent enforcement of any recovery achieved in state court or related proceeding pending the outcome of this limitation proceeding, and for such other and further relief the Court deems necessary and just.

Respectfully submitted,
MARIANA M. OCHOA, Claimant

By: /s/ *Michael L. Gallagher*
One of Her Attorneys

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601

(312) 580-2040
mlg@wisemorrissey.com

**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF HANSON AGGRREGATES MIDWEST INC. F/K/A MATERIAL SERVICE CORPORATION D/B/A HANSON MATERIAL SERVICE CORPORATION FOR EXONERATION FROM, OR LIMITATION OF, LIABILITY. | ) ) ) ) ) ) ) | Case No.: 1:21-cv-4295<br>District Judge Manish S. Shah<br>Magistrate Judge M. David Weisman |

**CLAIMANT'S STIPULATION**

Now comes the Defendant or Claimant, MARIANA M. OCHOA, as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, by her undersigned attorneys, and files her Stipulation as follows:

1. Defendant or Claimant, Mariana M. Ochoa (Claimant) Independent Administrator of the Estate of Victor Lobato Ochoa (Victor), deceased, concedes and agrees that the United States District Court for the Northern District of Illinois has exclusive jurisdiction to decide all issues related to the limitation of liability arising out of the July 22, 2020, capsizing and sinking of the pleasure craft which resulted in Victor's death.

2. Claimant expressly concedes and agrees that in the event that a state court enters judgment in an amount in excess of the limitations fund, he will not execute or otherwise seek to enforce the judgment unless and until this Honorable Court adjudicates issues related to the limitation proceeding.

3. Claimant expressly waives any claim of *res judicata* relevant to the issues of limited liability, as distinct from exoneration, based on any judgment obtained in state court or other proceedings arising out of the July 22, 2020, capsizing and sinking of the pleasure craft which resulted in Victor's death.

**Exhibit 1**

4.      Claimant expressly concedes and agrees that this Honorable Court's exclusive jurisdiction to determine the value of the limitations fund, and so long as the Claimant has an opportunity to obtain an independent appraisal or related valuation, will stipulate to the value as determined by the this Honorable Court.

5.      Claimant OCHOA acknowledges the right of Hanson Aggregates Midwest, Inc. to litigate all issues relating to limitation of liability, as distinct from exoneration, in the limitation proceeding.

Respectfully submitted,
MARIANA M. OCHOA

By:      /s/ *Michael L. Gallagher*

Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark Street
Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com

**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | ) | |
| OF HANSON AGGRREGATES MIDWEST | ) | |
| INC. F/K/A MATERIAL SERVICE | ) | Case No.: 1:21-cv-4295 |
| CORPORATION D/B/A HANSON | ) | |
| MATERIAL SERVICE CORPORATION | ) | District Judge Manish S. Shah |
| FOR EXONERATION FROM, OR | ) | |
| LIMITATION OF, LIABILITY. | ) | Magistrate Judge M. David Weisman |

**NOTICE OF FILING**

TO: Counsel of Record – See attached Service List

**PLEASE TAKE NOTICE** that I have on this date filed the attached **CLAIMANT'S MOTION TO MODIFY STAY.**

**DATED** at Chicago, Illinois, on November 2, 2021

*Wise Morrissey, LLC*
WISE MORRISSEY, LLC
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I, Michael L. Gallagher, hereby certify that on November 2, 2021, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system. Notification and a copy of such filing is sent through the CM/ECF system to counsel of record as listed above.

/s/ Michael L. Gallagher
Michael L. Gallagher #6281432
Wise Morrissey LLC
161 North Clark Street, Suite 3250
Chicago, Illinois 60601
(312) 580-2040
(312) 580-2041
mlg@wisemorrissey.com

# Service List

*Re: MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased, v. MATERIAL SERVICE CORPORATION d/b/a HANSON MATERIAL SERVICE CORPORATION, et al.*
Northern District No.: 1:21-cv-03936

**Attorneys for Defendants Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation1, Lehigh Hanson Services LLC, Captain Kenneth L. Stubbs, and HeidelbergCement AG (incorrectly named as Heidelberg Cement Group)**

Gould & Ratner LLP
Paul W. Carroll
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312.236.3003
pcarroll@gouldratner.com

GOLDSTEIN and PRICE, L.C.
Neal W. Settergren (pro hac vice)
Jacob D. Curtis (pro hac vice)
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1711
neal@gp-law.com
jacob@gp-law.com

HARJANI,TERMED

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6.3.4 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:21-cv-03936

Ochoa v. Material Service Corporation et al
Assigned to: Honorable Sara L. Ellis
Case in other court: Circuit Court of Cook County, Illinois, 2021L006726
Cause: 28:1331 Federal Question

Date Filed: 07/24/2021
Date Terminated: 03/09/2022
Jury Demand: Both
Nature of Suit: 340 P.I.: Marine
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Mariana M Ochoa**
*as Independent Administrator of the Estate of Victor Lobato Ochoa*

represented by **Michael L. Gallagher**
Wise Morrissey, LLC
161 N. Clark Street
Suite 3200
Chicago, IL 60601
(312) 580-2040
Email: mlg@wisemorrissey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Material Service Corporation**
*d/b/a Hanson Material Service Corporation*

represented by **Neal W. Settergren**
Goldstein & Price
One Memorial Drive
Suite 1000
St. Louis, MO 63102-2704
(314) 516-1711
Email: neal@gp-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
Goldstein and Price, L.C.
One Memorial Drive
St. Louis, MO 63012
(314) 516-1700
Email: jacob@gp-law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
Gould & Ratner
222 North LaSalle Street

Suite 300
Chicago, IL 60601
(312) 236-3003
Email: pcarroll@gouldratner.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lehigh Hanson Services LLC** represented by **Neal W. Settergren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Heidelberg Cement Group** represented by **Neal W. Settergren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kenneth L Stubbs**
*Captain* represented by **Neal W. Settergren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Celio San Gabriel**

**Defendant**

**Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation** represented by **Neal W. Settergren**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lehigh Hanson, Inc.** represented by **Neal W. Settergren**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Lehigh Hanson Services LLC** represented by **Neal W. Settergren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Kenneth L Stubbs**
*Captain* represented by **Neal W. Settergren**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Daniel Curtis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul W. Carroll**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation** represented by **Neal W. Settergren**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Lehigh Hanson, Inc.** represented by **Neal W. Settergren**
(See above for address)

*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Celio San Gabriel**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2021 | 1 | NOTICE of Removal from Circuit Court of Cook County, Illinois, case number (2021L006726) filed by Heidelberg Cement Group, Lehigh Hanson Services LLC, Material Service Corporation, Kenneth L Stubbs Filing fee $ 402, receipt number 0752-18494197. (Carroll, Paul) (Entered: 07/24/2021) |
| 07/24/2021 | 2 | CIVIL Cover Sheet (Carroll, Paul) (Entered: 07/24/2021) |
| 07/24/2021 | 3 | ATTORNEY Appearance for Defendants Heidelberg Cement Group, Lehigh Hanson Services LLC, Material Service Corporation, Kenneth L Stubbs by Paul W. Carroll (Carroll, Paul) (Entered: 07/24/2021) |
| 07/26/2021 | 4 | MAILED Notice of Removal letter to counsel of record. (rc, ) (Entered: 07/26/2021) |
| 07/26/2021 | 5 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18496755. (Curtis, Jacob) (Entered: 07/26/2021) |
| 07/26/2021 | | CASE ASSIGNED to the Honorable Sara L. Ellis. Designated as Magistrate Judge the Honorable Sunil R. Harjani. Case assignment: Random assignment. (cp, ) (Entered: 07/26/2021) |
| 07/28/2021 | 6 | ORDER: Motion by Jacob Curtis for leave to appear pro hac vice 5 is granted. The initial telephonic status conference in this matter is set for 9/23/2021 at 1:30 PM. The parties are directed to review the procedures and requirements for this conference on Judge Ellis' web site and to submit the required Initial Status Report by 9/16/2021. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Signed by the Honorable Sara L. Ellis on 7/28/2021. Mailed notice (lma, ) (Entered: 07/28/2021) |
| 08/03/2021 | 7 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18524908. (Settergren, Neal) (Entered: 08/03/2021) |
| 08/04/2021 | 8 | ORDER: Motion for leave to appear pro hac vice 7 is granted. Signed by the Honorable Sara L. Ellis on 8/4/2021: Mailed notice(gw, ) (Entered: 08/04/2021) |
| 08/06/2021 | 9 | ANSWER to Complaint *and Affirmative Defenses* by Lehigh Hanson Services LLC, Material Service Corporation, Kenneth L Stubbs(Settergren, Neal) (Entered: 08/06/2021) |

| | | |
|---|---|---|
| 08/06/2021 | 10 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Lehigh Hanson Services LLC, Material Service Corporation (Settergren, Neal) (Entered: 08/06/2021) |
| 08/23/2021 | 11 | MOTION by Plaintiff Mariana M Ochoa for leave to file *to File Second Amended Complaint at Law* (Attachments: # 1 Exhibit Proposed Second Amended Complaint, # 2 Exhibit Original Complaint, # 3 Exhibit First Amended Complaint, # 4 Exhibit Email Correspondence)(Gallagher, Michael) (Entered: 08/23/2021) |
| 08/23/2021 | 12 | NOTICE of Motion by Michael L. Gallagher for presentment of motion for leave to file, 11 before Honorable Sara L. Ellis on 8/31/2021 at 09:45 AM. (Gallagher, Michael) (Entered: 08/23/2021) |
| 08/23/2021 | 13 | MOTION by Plaintiff Mariana M Ochoa to remand *the matter to state court* (Attachments: # 1 Exhibit First Amended Complaint, # 2 Exhibit Original Complaint) (Gallagher, Michael) (Entered: 08/23/2021) |
| 08/23/2021 | 14 | NOTICE of Motion by Michael L. Gallagher for presentment of motion to remand 13 before Honorable Sara L. Ellis on 8/31/2021 at 09:45 AM. (Gallagher, Michael) (Entered: 08/23/2021) |
| 08/30/2021 | 15 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Plaintiff's motion for leave to file a second amended complaint 11 . The Court sets the following briefing schedule on Plaintiff's motion to remand 13 : Defendants' responses are due by 9/27/2021 and Plaintiff's reply is due by 10/12/2021. The Court strikes the initial status hearing for 9/23/2021 and resets it to 12/14/2021 at 9:30 AM for ruling on Plaintiff's motion to remand. The parties should submit the initial joint status report by 12/7/2021. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (ber, ) (Entered: 08/30/2021) |
| 08/31/2021 | 16 | *Second* AMENDED complaint by Mariana M Ochoa against Heidelberg Cement Group, Lehigh Hanson Services LLC, Material Service Corporation, Kenneth L Stubbs, Celio San Gabriel (Attachments: # 1 Notice of Filing)(Gallagher, Michael) (Entered: 08/31/2021) |
| 09/03/2021 | 17 | MOTION by Plaintiff Mariana M Ochoa to amend/correct MOTION by Plaintiff Mariana M Ochoa to remand *the matter to state court* 13 (Attachments: # 1 Notice of Filing)(Gallagher, Michael) (Entered: 09/03/2021) |
| 09/09/2021 | 18 | NOTICE by Material Service Corporation *of Order and Injunction* (Attachments: # 1 Exhibit A - Order Approving Letter of Undertaking, Directing Issuance of Notice, and Restraining Suits)(Curtis, Jacob) (Entered: 09/09/2021) |
| 09/10/2021 | 19 | ANSWER to amended complaint , CROSSCLAIM by Lehigh Hanson Services LLC, Kenneth L Stubbs, Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation, Lehigh Hanson, Inc. against Celio San Gabriel . by Lehigh Hanson Services LLC, Kenneth L Stubbs, Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material |

| | | |
|---|---|---|
| | | Service Corporation, Lehigh Hanson, Inc.(Settergren, Neal) (Entered: 09/10/2021) |
| 09/21/2021 | 20 | RESPONSE by Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation, Lehigh Hanson Services LLC, Lehigh Hanson, Inc., Kenneth L Stubbsin Opposition to MOTION by Plaintiff Mariana M Ochoa to amend/correct MOTION by Plaintiff Mariana M Ochoa to remand *the matter to state court* 13 17 , MOTION by Plaintiff Mariana M Ochoa to remand *the matter to state court* 13 (Attachments: # 1 Exhibit A - Carol Lowry Affidavit, # 2 Exhibit B - 2006 News Article)(Settergren, Neal) (Entered: 09/21/2021) |
| 10/11/2021 | 21 | MOTION by Plaintiff Mariana M Ochoa for extension of time to file response/reply as to motion to amend/correct 17 *Plaintiff's Amended Motion to Remand* (Gallagher, Michael) (Entered: 10/11/2021) |
| 10/11/2021 | 22 | *Plaintiff's* NOTICE of Motion by Michael L. Gallagher for presentment of motion for extension of time to file response/reply 21 before Honorable Sara L. Ellis on 10/14/2021 at 01:45 PM. (Gallagher, Michael) (Entered: 10/11/2021) |
| 10/13/2021 | 23 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Plaintiff's motion for extension of time 21 . Plaintiff's reply in support on her motion to remand is due by 10/26/2021. No appearance required on 10/14/2021. Emailed notice (rj, ) (Entered: 10/13/2021) |
| 10/22/2021 | 24 | MOTION by Plaintiff Mariana M Ochoa for extension of time to file response/reply as to motion to amend/correct 17 *Plaintiff's Amended Motion to Remand* (Gallagher, Michael) (Entered: 10/22/2021) |
| 10/22/2021 | 25 | *Plaintiff's* NOTICE of Motion by Michael L. Gallagher for presentment of motion for extension of time to file response/reply 24 before Honorable Sara L. Ellis on 10/26/2021 at 09:45 AM. (Gallagher, Michael) (Entered: 10/22/2021) |
| 10/25/2021 | 26 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Plaintiff's motion for extension of time 24 . Plaintiff's reply is due by 11/2/2021. Mailed notice (rj, ) (Entered: 10/25/2021) |
| 11/02/2021 | 27 | MOTION by Plaintiff Mariana M Ochoa for extension of time to file response/reply as to motion to amend/correct 17 *Plaintiff's Amended Motion to Remand* (Gallagher, Michael) (Entered: 11/02/2021) |
| 11/02/2021 | 28 | *Plaintiff's* NOTICE of Motion by Michael L. Gallagher for presentment of motion for extension of time to file response/reply 27 before Honorable Sara L. Ellis on 11/9/2021 at 09:45 AM. (Gallagher, Michael) (Entered: 11/02/2021) |
| 11/05/2021 | 29 | REPLY by Plaintiff Mariana M Ochoa to motion to amend/correct 17 (Attachments: # 1 Exhibit Notice of filing)(Gallagher, Michael) (Entered: 11/05/2021) |
| 11/08/2021 | 30 | MOTION by Defendants Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation, Lehigh Hanson Services LLC, Kenneth L Stubbs, Cross Claimant Lehigh Hanson, Inc. for leave to file *Sur-Reply Brief In Opposition to Plaintiff's Motion to Remand* (Settergren, Neal) (Entered: 11/08/2021) |
| 11/08/2021 | 31 | NOTICE of Motion by Neal W. Settergren for presentment of motion for leave to file, 30 before Honorable Sara L. Ellis on 11/11/2021 at 01:45 PM. (Settergren, Neal) (Entered: 11/08/2021) |

| | | |
|---|---|---|
| 11/08/2021 | 32 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Plaintiff's motion for extension of time 27 . Plaintiff's reply is due by 11/5/2021. The Court denies Defendants' motion for leave to file a sur-reply 30 . The Court will not consider any new arguments Plaintiff raises in her reply brief. Mailed notice (rj, ) (Entered: 11/08/2021) |
| 12/13/2021 | 33 | MINUTE entry before the Honorable Sara L. Ellis: The Court stays this case pursuant to the Order Approving Letter of Undertaking, Directing Issuance of Notice, and Restraining Suits issued on September 8, 2021 in In re: Hanson Aggregates Midwest, Inc., No. 21 C 4295, Doc. 11 (N.D. Ill. Sept. 8, 2011). The Court denies Plaintiff's motions to remand 13 , 17 without prejudice to renewal once the stay is lifted. The Court strikes the status hearing set for 12/14/21 and resets it to 2/8/22 at 9:30 a.m. The Court orders the parties to file a joint status report by 2/1/22 indicating the status of In re: Hanson Aggregates Midwest, Inc. and whether the stay has been lifted as to Ochoa's claims. Mailed notice (rj, ) (Entered: 12/13/2021) |
| 01/31/2022 | 34 | STATUS Report *Joint Status Report* by Mariana M Ochoa (Gallagher, Michael) (Entered: 01/31/2022) |
| 02/08/2022 | 35 | MINUTE entry before the Honorable Sara L. Ellis: Telephone conference set for 2/8/22 at 9:30 a.m. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 02/08/2022) |
| 02/08/2022 | 36 | MINUTE entry before the Honorable Sara L. Ellis: Telephone conference held on 2/8/2022. Parties are given leave to supplement motion to lift stay and motion to remand by three (3) pages by 2/15/2022. Defendant is given leave to issue subpoenas for video of accident in limitations case. Telephone Conference set for 3/29/2022 at 9:30 AM for ruling on both motions. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Please be sure to keep your phone on mute when you are not speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed noticeMailed notice (rj, ) (Entered: 02/10/2022) |
| 02/15/2022 | 37 | MEMORANDUM by Hanson Aggregates Midwest, Inc. f/k/a Material Service Corporation d/b/a Hanson Material Service Corporation, Lehigh Hanson Services LLC, Lehigh Hanson, Inc., Kenneth L Stubbs in Opposition to motion to amend/correct 17 , motion to remand 13 (Settergren, Neal) (Entered: 02/15/2022) |
| 03/09/2022 | 38 | OPINION AND ORDER. For the reasons stated in the accompanying Opinion and Order, the Court grants Mariana's motion to lift the stay in the limitation of liability case [No. 21 C 4295, Doc. 17] and lifts the stay as to Mariana's wrongful death claims |

| | | |
|---|---|---|
| | | against Hanson, subject to the conditions outlined in the stipulation Mariana filed in connection with her motion to lift the stay [No. 21 C 4295, Doc. 17-1]. In the wrongful death case, the Court grants Mariana's amended motion to remand [No. 21 C 3936, Doc. 17 and denies Mariana's initial motion to remand [No. 21 C 3936, Doc. 13 as moot. The Court remands Mariana's wrongful death case, No. 21 C 3936, to the Circuit Court of Cook County, Illinois. Signed by the Honorable Sara L. Ellis on 3/9/2022:Mailed notice(rj, ) (Entered: 03/09/2022) |
| 03/09/2022 | 39 | ENTERED JUDGMENT. Mailed notice. (rc, ) (Entered: 03/10/2022) |

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/30/2022 11:21:26 | | | |
| **PACER Login:** | ap0000:3355484:0:3355484:0 | **Client Code:** | 07_541565 |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-03936 |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

**PACER fee: Exempt**

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF CASE OPENING

March 30, 2022

| No. 22-1511 | IN RE:<br>HANSON AGGREGATES MIDWEST, INC., et al.,<br>Petitioners |
|---|---|
| **Petition for Writ of Mandamus** | |
| District Court No. 1:21-cv-03936<br>Clerk/Agency Rep Thomas G. Bruton<br>District Judge Sara L. Ellis<br><br>Case filed: 03/30/2022<br>Case type: op/npman<br>Fee status: Due<br>Date NOA rc'd-AC: 03/30/2022 | |

The above-captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit.

**Deadlines:**

| Appeal No. | Filer | Document | Due Date |
|---|---|---|---|
| 22-1511 | Hanson Aggregates Midwest, Inc. | Fee Due | 04/13/2022 |
| 22-1511 | Lehigh Hanson, Inc. | Fee Due | 04/13/2022 |
| 22-1511 | Lehigh Hanson Services LLC | Fee Due | 04/13/2022 |
| 22-1511 | Kenneth Stubbs | Fee Due | 04/13/2022 |

**THIS NOTICE SHALL NOT ACT AS A SUBSTITUTE FOR MOTIONS FOR NON-INVOLVEMENT / SUBSTITUTION OF COUNSEL. COUNSEL ARE STILL REQUIRED TO FILE THE APPROPRIATE MOTIONS.**

Important Scheduling Notice!

Hearing notices are mailed shortly before the date of oral argument. Please note that counsel's unavailability for oral argument must be submitted by letter, filed electronically with the Clerk's Office, no later than the filing of the appellant's brief in a criminal case and the filing of an appellee's brief in a civil case. See Cir. R. 34(b)(3). The court's calendar is located at http://www.ca7.uscourts.gov/cal/argcalendar.pdf. Once scheduled, oral argument is rescheduled only in extraordinary circumstances. See Cir. R. 34(b)(4), (e).

form name: **c7_Docket_Notice**    (form ID: **108**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF DOCKETING - Short Form

March 30, 2022

**To:** Thomas G. Bruton
Clerk of Court

The below captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit:

| |
|---|
| Appellate Case No: 22-1511<br><br>Caption:<br>IN RE:<br>HANSON AGGREGATES MIDWEST, INC., et al.,<br>Petitioners |
| District Court No: 1:21-cv-03936<br>Clerk/Agency Rep Thomas G. Bruton<br>District Judge Sara L. Ellis |

If you have any questions regarding this appeal, please call this office.

form name: **c7_Docket_Notice_short_form** (form ID: **188**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## ORIGINAL PROCEEDING CIRCUIT RULE 3(b) NOTICE

March 30, 2022

| No. 22-1511 | IN RE:<br>HANSON AGGREGATES MIDWEST, INC., et al.,<br>Petitioners |
|---|---|
| **Petition for Writ of Mandamus** | |
| District Court No: 1:21-cv-03936<br>Clerk/Agency Rep Thomas G. Bruton<br>District Judge Sara L. Ellis | |

Circuit Rule 3(b) empowers the clerk to dismiss a petition if the docket fee is not paid within fourteen (14) days of the docketing of the petition. This petition was docketed and the fee has not been paid as of March 30, 2022. Depending on your situation, you should:

1. Pay the required $500.00 docketing fee to the Clerk of the Court of Appeals.

2. File a motion to proceed on appeal in forma pauperis with the Court of Appeals. An original and three (3) copies of that motion is required. This motion must be supported by an affidavit in the form of a sworn statement listing the assets and income of the petitioner(s). See **Form 4** of the *Appendix of Forms to the Federal Rules of Appellate Procedure*.

If one of the above stated actions is not taken, the petition will be dismissed.

**NOTE:**
On March 2, 2015, the Seventh Circuit began accepting electronic fee payments for originating case filing fees (petitions for review and original petitions) via the CM/ECF Filing menu & final processing by PACER. Details are available at www.ca7.uscourts.gov.

form name: **c7_OP_Fee_Notice_Sent** (form ID: **189**)

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARIANA M. OCHOA as Independent Administrator of the Estate of VICTOR LOBATO OCHOA, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>MATERIAL SERVICE CORPORATION et. al.,<br><br>Defendants. | Case No. 1:21-cv-03936<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S REPLY IN SUPPORT OF HER**
**MOTION TO REMAND TO STATE COURT**

Plaintiff, Mariana M. Ochoa ("Plaintiff") as Independent Administrator of the Estate of Victor Lobato Ochoa ("Victor"), Deceased, Replies in support of Plaintiff's Motion to Remand with the following:

**I. Defendant Hanson's Complaint seeking exoneration from, or limitation of, liability should be consolidated with this matter.**

A brief accounting of this matter's procedural history is warranted when determining whether it should be consolidated with the Defendant Hanson Material Service Corporation's ("Hanson") Complaint seeking exoneration, or limitation of liability, currently pending before the Honorable Judge Manish Shah ("Judge Shah"). *See* N.D. Ill. Case No. 21-cv-04295. On July 1, 2021, Plaintiff filed her original Complaint in the Circuit Court of Cook County, Illinois, County Department, under Case No. 2021-L-006726. (21-cv-03936, Dkt. 11, Plaintiff Motion for leave to amend Ex. 2, Complaint). Plaintiff filed her First Amended Complaint in the Circuit Court of Cook County on July 22, 2021, correcting a Scribner's error. (Dkt. 11, Ex. 3).

Exhibit E

Defendants subsequently filed their Notice of Removal ("Notice") of Plaintiff's original Complaint on July 24, 2021, and the matter was assigned to this Court. (Dkt. 1).

On August 23, 2021, Plaintiff sought leave of Court pursuant to Fed. R. Civ. Pro. 15(a) to file her Second Amended Complaint naming Defendant Celio San Gabriel ("San Gabriel"), who was the owner and operator of the open motorboat carrying Plaintiff and Victor at the time of the drowning. (Dkt. 11, pg.1). Plaintiff's motion for leave provided a six-page memorandum establishing that her addition of San Gabriel as defendant was allowed under Rule 15(a), and provided the proposed Second Amended Complaint which explicitly alleged that San Gabriel was a resident of Chicago, Illinois. (Dkt. 11, pg.1-6; Dkt. 11, Ex 1 Second ACAL ¶3). On that same day, Plaintiff filed her Motion to remove the matter to state court based on this Court lacking subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) under the saving to suitors clause and based on a lack of complete diversity amongst the Defendants. (Dkt. 13, Motion to remand pg.3-6).

Defendants failed to object or respond to Plaintiff's motion, and this Court granted Plaintiff leave to file her Second Amended Complaint adding Defendant San Gabriel on August 30, 2021. (Dkt. 15). Unbeknownst to Plaintiff or her attorney, on August 8, 2021, Defendant Hanson had filed a Complaint claiming ownership of the river towboat M/V KIOWA and barge MSC0103, and seeking exoneration from, or limitation of, liability pursuant to 28 U.S.C. § 1333. (21-cv-04295, Dkt. 1, pg.1). On September 9, 2021, Plaintiff and her counsel first received notice of Hanson's Complaint and Judge Shah's Order granting a stay and injunction on matters related to Hanson's Complaint. (21-cv-03936 Dkt. 18).

The above matters should be consolidated pursuant to Fed. Rule Civ. Proc. 42(a) because they clearly involve "common questions of law or fact". *Hall v. Hall,* 138 S. Ct. 1118, 1124

(2018). Rule 42(a) titled "[c]onsolidation" - provides that if "actions before the court involve a common question of law or fact, the court may" take one of three measures. First, the court may "join for hearing or trial any or all matters at issue in the actions." *Hall*, 138 S.Ct. at 1124; *citing* Fed. Rule Civ. Proc. 42(a)(1). Second, the court may "consolidate the actions." Rule 42(a)(2). Third, the court may "issue any other orders to avoid unnecessary cost or delay." Rule 42(a)(3). In fact, Defendant Hanson's "Status Report" filed in the limitation matter acknowledged that "Judge Ellis' decision on the motion to remand [in 21-cv-03936] will determine whether the related case will remain in this Court. If so, Plaintiff intends to seek re-assignment of this case to Judge Ellis to promote judicial efficiency".[1] (21-cv-4295, Dkt. 9 pg.2). Therefore, Plaintiff respectfully requests this Court consolidate the related matters of 21-cv-03936 and 21-cv-04295 in this Court pursuant to Rule 42(a)(2).

## II. Defendants' claim that Plaintiff waived her subject matter jurisdiction argument is baseless.

Defendants claim that Plaintiff "has not argued … that the Savings to Suitors Clause forbids all removal of admiralty matters" and has waived the issue. (Dkt. 13 pg.3-4). As argued more fully *supra*, Defendants' waiver argument is a disingenuous attempt to circumvent the savings to suitors clause which clearly bars removal of this matter absent complete diversity. In reality, the first sentence of Section I of Plaintiff's Motion to remand states "the 'savings to suitors' clause in 28 U.S.C. § 1333(1), reserves to suitors in admiralty or maritime cases their common-law remedies. These remedies include the right to select a forum and the right to demand a jury trial". (Dkt. 13 pg.3); *citing See American River Transp. Co. v. Ryan*, 579 F.3d

[1] On October 29, 2021, Plaintiff filed an Answer to Defendant Hanson's Complaint for exoneration, or limitation of liability in the matter of 21-cv-04295. (Dkt. 16). On November 2, 2021, Plaintiff filed a Motion to modify Judge Shah's stay pursuant to the Savings to Suitors Clause detailed in 28 U.S.C § 1331(1). (Dkt. 17). The Motion was supported by Plaintiff's stipulation which "waive[d] any claim of res judicata from the state court proceedings relevant to the issue of limited liability and concede[d] the exclusive jurisdiction of the federal courts to determine all issues relating to limitation of liability". (Dkt. 17, Ex. 1); *In re McCarthy Brothers Co.,* 83 F.3d 821, 831 (7th Cir. 1996)

820, 825 (7th Cir. 2009); *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001); *see also In re McCarthy Brothers Co.*, 83 F.3d 821, 826–27 (7th Cir.1996). Plaintiff's Motion went on to argue that the "'savings to suitors' clause of § 1333(1)" preserves the "common law remedies of the injured parties" which includes litigating the matter in state court. (Dkt. 13 pg.3); *citing Lewis*, 531 U.S. at 454. As a result, Plaintiff's Motion clearly argued that this Court lacked subject matter jurisdiction as a result of the savings to suitors clause of 28 U.S.C. § 1333(1). (Dkt. 13 pg.3-4). *See Ibarra v. Port of Houston Authority of Harris County*, 526 F.Supp.3d 202, 209 (S.D. Texas, March 17, 2021) (District court rejected defendants' argument that plaintiff waived his "saving to suitors" argument because his motion to remand alleged the district court lacked subject matter jurisdiction pursuant to 28 U.S.C. § 1441(a))

In contrast, Defendants' Notice of Removal provides *a single sentence* making the conclusory claim that "the case is independently removable under the plain language of 28 U.S.C. § 1441(a)" and cites *Lu Junhong* without any analysis of the Seventh Circuit's holding in the matter. (Dkt. 1, pg.7, ¶ 9, 20). Moreover, Defendants' only mention of the savings to suitors clause comes in a truncated recitation of 28 U.S.C. § 1333(1) which states that Federal courts "have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." (Dkt. 1 pg.4). Defendants make absolutely no attempt to argue or explain how this Court has subject-matter jurisdiction over a savings to suitors clause maritime matter filed in state court, absent complete diversity of the Defendants. Nor does the Notice provide any argument or explanation how *Lu Junhong* purportedly does away with the savings to suitors clause and provides this Court subject matter jurisdiction without complete diversity.

As a result, Defendants' argument that this Court has subject matter jurisdiction over a state court matter despite the savings to suitors clause and non-diversity defendants, should be deemed waived as underdeveloped. Waiver aside, Defendants underdeveloped arguments on this matter falls woefully insufficient to satisfy their burden of establishing federal jurisdiction. *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993) (Party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court).

Assuming *arguendo*, the Supreme Court has repeatedly held that "subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H. Corp.*, 546 U.S. 500, 514 (2006); *quoting United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also GE Betz, Inc. v. Zee Co., Inc.* 718 F.3d 615, 625-26 (7th Cir. 2013)("Of course, a plaintiff may object to removal based on a jurisdictional defect at any time"). Moreover, federal courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Therefore, Plaintiff's argument that this Court lacks subject matter jurisdiction pursuant to the savings to suitors clause absent diversity, is properly before the Court.

## III. **Defendants' argument that the Seventh Circuit's decision in *Lu Junhong* somehow supplants the savings to suitors clause is fatally flawed.**

Defendants' Response bemoans the fact that "Plaintiff makes no attempt to address *Lu Junhong* in her Motions and makes no argument that admiralty jurisdiction is lacking in this case". (Dkt. 20 pg.6) 792 F.3d 805 (7th Cir. 2015). Plaintiff's lack of analysis is not surprising considering Defendants' Notice only cited the *Lu Junhong* case twice and the Notice failed to provide even a parenthetical, let alone a detailed analysis, explaining how the holding in *Lu*

*Junhong* allows removal of a savings to suitors clause claim filed in state court, where the only basis is admiralty jurisdiction. *See Brown v. Porter*, 149 F.Supp.3d 963, 970 (N.D. Ill. 2016) (Feinerman J.) (In analyzing *Lu Junhong*, the court held "the [2011] amendment to § 1441(b) did not disturb the settled principle that § 1331(1)'s saving-to-suitors clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is the admiralty jurisdiction").

The Supreme Court has explained that the saving to suitors clause preserves a plaintiffs right to a common law remedy "in all cases where the common law is competent to give it." *Leon v. Galceran*, 78 U.S. 185, 191 (1870). The common law is "competent" in cases proceeding *in personam* but not those proceeding *in rem. Madruga v. Superior Court of California*, 346 U.S. 556, 560-61 (1954). Thus, "while 'federal courts have exclusive jurisdiction over *in rem* actions, federal and state courts have concurrent jurisdiction over *in personam* actions, and the effect of the [saving-to-suitors] clause is to give an *in personam* plaintiff the choice of proceeding in an ordinary civil action, rather than bringing a libel in admiralty."' *In re Lockheed Martin Corp*., 503 F.3d 351, 354 (4th Cir. 2007), *cert. denied*, 553 U.S. 1017 (2008); *quoting In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996)).

In *Lu Junhong*, the Seventh Circuit noted that the plaintiffs had not even argued that the savings to suitors clause applied, and thus the Court's discussion of it was dicta by its own admission. 792 F.3d at 379-380 ("Perhaps it would be possible to argue that the saving-to-suitors clause itself forbids removal, without regard to any language in § 1441. But plaintiffs, who have not mentioned the saving-to-suitors clause, do not make such an argument. We do not think that it is the sort of contention about subject-matter jurisdiction that a federal court must resolve even if the parties disregard it."). According to Plaintiff's research, the only District Court within this Circuit to analyze the *Lu Junhong* opinion in the context of the savings to

suitors clause is the Honorable Judge Gary Feinerman (Judge Feinerman). *Brown v. Porter*, 149 F.Supp.3d 963 (N.D. Ill. Feb. 2, 2016).

In *Brown*, the plaintiff brought a personal injury action in Cook County against the operator of a boat that had caused him injuries on Lake Michigan. *Id.* at 965. The defendant removed the matter to federal court, claiming admiralty jurisdiction, and the plaintiff sought remand, arguing that the "saving-to-suitors" clause of Section 1333(1) dictated remand to his state venue. *Id.* The Brown court established that "because [the plaintiff] brought this suit *in personam* against a person …, the state court has concurrent jurisdiction." *Id*. at 968. The court then evaluated whether that meant the "saving-to-suitors" clause would "prevent removal" and undertook a detailed examination of the law on that point.

The Brown court observed that "actions brought in state court under the 'saving to suitors' clause are not generally removable … since the entire purpose of the clause was to give claimants pursuing a common law remedy the ability to choose their forum." *Id.* at 968; *quoting In re Chimenti*, 79 F.3d 534, 538 (6th Cir. 1996). Section 1333 "provides a basis for federal jurisdiction in *in personam* actions if the claimant so chooses, [but] provides no basis for removal if the claimant does not so choose." *Id.* at 969; *quoting Chimenti*, 79 F.3d at 537-38 (emphasis in original). In reaching that conclusion, the Sixth Circuit relied on *Romero v. International Terminal Operating Co.*, where the Supreme Court explained that:

> [T]he historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would then be freely removable under [28 U.S.C.] § 1441… By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters - a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve. 358 U.S. 354, 371-72 (1959)

The Brown court noted that "an exception to this rule provides that a defendant may remove an admiralty case if there is an independent basis for federal subject matter jurisdiction - *i.e.*, a basis other than admiralty, such as complete diversity of citizenship with the requisite amount in controversy under 28 U.S.C. § 1332(a)." *Brown*, 149 F.Supp.3d at 969; *citing Chimenti*, 79 F.3d at 538. Thus, the court held: "[G]iven [the plaintiff's] election to proceed in state court and his invocation of § 1333(1)'s saving-to-suitors clause, and also given the lack of any alternative, non-admiralty ground for federal jurisdiction, [the plaintiff] may forestall removal and insist upon a remand." *Brown*, 149 F. Supp.3d at 973.

The Brown court also rejected the defendants' claim that the 2011 amendment to § 1441(b) or the *Lu Junhong* opinion rendered the above interpretation of the savings to suitors clause obsolete when it came to federal jurisdiction. *Id.* at 969-70. The court concluded after "[h]aving carefully reviewed the arguments both pro and con, this court agrees with the decisions holding that the amendment to § 1441(b) did not disturb the settled principle that § 1331(1)'s saving-to-suitors clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is the admiralty jurisdiction." *Id.* at 970.

In the present case, Plaintiff clearly brought an *in personam* suit in state court against Defendant Captain Kenneth L. Stubbs alleging he negligently operated the river towboat. (Dkt. 21 ¶¶ 12, 42-47). As a result, the state court has concurrent jurisdiction over Plaintiff's *in personam* action, and the effect of the [saving-to-suitors] clause is to give an *in personam* plaintiff the choice of proceeding in an ordinary civil action, rather than bringing a libel in admiralty."' *In re Lockheed Martin Corp*., 503 F.3d 351, 354 (4th Cir. 2007), *cert. denied*, 553 U.S. 1017 (2008) (quoting *In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996)).

## IV. **Defendants lack complete diversity where defendant San Gabriel is an Illinois Citizen.**

Defendants' lack complete diversity where Defendant Celio San Gabriel (San Gabriel) was a citizen of Illinois and resident of the City of Chicago, County of Cook, at the time of the incident. (Dkt. 16, Second Amended Complaint ¶ 3). As stated in Plaintiff's Second Amended Complaint, San Gabriel was the owner and operator of the open motorboat that Plaintiff and Victor were traveling in at the time of the accident. (Dkt. 16 ¶ 25). Defendants' Response does not refute that San Gabriel was a citizen of Illinois, but instead makes several baseless attempts to discount this fact by claiming his addition was either untimely or fraudulent. (Dkt. 20 p.12-13).

Defendants begin by arguing the "well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction". (Dkt. 20 pg.11-12); *quoting In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010). However, the Supreme Court has explicitly held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction". *Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007).  In fact, the Supreme Court in *Rockwell* cited the Seventh Circuit's holding in *Wellness Cmty* which stated "when considering a motion to remand, the amended complaint supersedes the original one, and the original complaint has 'no function in the case.'" *Rockwell Intern. Corp*, 549 U.S. at 473-74; *citing Wellness Cmty—Nat'l v. Wellness House,* 70 F.3d 46, 49 (7th Cir.1995); *see also Jass v. Prudential Healthcare Plan, Inc.,* 88 F.3d 1482, 1492 (7th Cir.1996)(The Court is to determine federal jurisdiction *solely* based on the amended complaint).

Undeterred, Defendants go on to claim "there can be no dispute that Plaintiff did not move timely to remand on the basis of Defendant San Gabriel destroying complete diversity within the 30-day deadline because San Gabriel was not a party until after the 30-day time period

had expired".[2] (Dkt. 20 pg.12). In support, Defendants cite 28 U.S.C. Section 1447(c) which states "a motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30-days after the filing of the notice of removal under section 1446(a)." *Id.* (emphasis provided). However, Defendants' reliance on § 1446(a) is misplaced where it *explicitly* states the 30-day deadline applies to defects "*other than lack of subject matter jurisdiction*". (emphasis added).

As the Court is well aware, Plaintiffs' amended Motion to remand arguing that San Gabriel destroys diversity *is a subject matter jurisdiction* defect that is not subject to § 1446(a)'s 30-day deadline. *See GE Betz, Inc. v. Zee Co., Inc.* 718 F.3d 615, 625-26 (7th Cir. 2013)(The Seventh Circuit examined § 1446(a)'s 30-day deadline and emphasized that it applied to statutory, not jurisdictional defects. The Court reiterated "[o]f course, a plaintiff may object to removal based on a jurisdictional defect at any time"); *see also See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (reminding that "subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). Therefore, Defendants' claim that Plaintiff's addition of San Gabriel as a Defendant is untimely and barred by § 1447(c) is clearly erroneous.

## VI. The Court properly granted Plaintiff leave to amend and join a non-diverse Defendant.

Defendants' claim that Plaintiff fraudulently joined San Gabriel as a defendant is the height of hypocrisy considering their answer to Plaintiff's original complaint clearly blamed him for the accident. In particular, Defendant provided numerous allegations against San Gabriel in their Answer filed August 6, 2021, claiming it was his failure to "follow mandatory navigation

[2] Plaintiff would add that her motion for leave to file a Second Amended Complaint adding San Gabriel as a defendant was filed on August 23, 2021, the same day she filed her motion to remand. (Dkt. 11 pg.1-6; Dkt. 13).

rules, overload their vessels with occupants and weight as Plaintiff's vessel unfortunately did in this case, and other operate their vessel in an unsafe manner". (Dkt. 9, Defendants' Answer ¶ 19). Defendants further asserted an affirmative defense claiming that Victor's injury and death "were caused in whole by third-parties", namely San Gabriel. (Dkt. 9 pg.16 ¶ 2). Finally, Defendants' Answer to Plaintiff's Second Amended Complaint maintained the allegations against San Gabriel asserted in their original answer, and in fact, filed a "Cross-Claim" against San Gabriel claiming he overloaded the pleasure craft, failed to maintain a proper lookout, failed to maintain proper speed and operated the pleasure craft in an "unsafe manner". (Dkt. 19, Defendants' Answer to Second ACAL pg.23 ¶ 8). In reality, Defendants are the ones who have "attempt[ed] to manipulate jurisdiction" by not filing a counter-claim against an indispensable party they were aware of, and claimed was at fault for Victor's drowning. Defendants clearly intended not to name San Gabriel until after the Court decided on the issue of complete diversity, the parties had engaged in significant discovery and then issue a cross-claim against him at the last possible moment.

The Seventh Circuit's ruling in *Schur v. L.A. Weight Loss Centers, Inc.* provides further clarity on the issue. 577 F.3d 752 (7th Cir. 2009). In *Schur*, the plaintiff brought a wrongful death claim against L.A. Weight Loss Centers Inc. (L.A.) in Illinois state court, which L.A. removed to the Southern District of Illinois based on diversity of citizenship. *Id.* at 756; *see Schur v. L.A. Weight Loss Centers, Inc.*, 2007 WL 685703 *1 (S.D. Ill. March 5, 2007). The Plaintiff, having already amended their complaint once in federal court, sought leave to file a Second Amended Complaint naming two employees of the L.A. as individual defendants. *Id.* at 756; *Schur*, 2007 WL 685703 at *2. Plaintiff subsequently filed a motion to remand the matter based on a lack of diversity nearly seventeen months after the original complaint was filed. *Id.* 2.

The Seventh Circuit began its analysis by stating that "[w]hen joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court". *Id.* at 759; *citing Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir.1996). The Court clarified those "are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction". (emphasis in original) *Id.*; *citing* David D. Siegel, *Commentary on 1988 Revision of Section 1447, in* 28 U.S.C.A. § 1447 (2009) (noting that Congress rejected an approach permitting a court to allow joinder and retain the case).

In addressing the district court's finding of fraudulent joinder, the Court stated the following:

> Fraudulent joinder is difficult to establish—a defendant must demonstrate that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. ... Framed a different way, the district court must ask whether there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant. ... A defendant faces a heavy burden to demonstrate that the joinder is fraudulent, ... and some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).... In conducting this analysis, a district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success *Schur*, 577 F.3d at 764 (citations and internal quotation marks omitted).

In the present case, Plaintiff filed her motion for leave to amend and her motion to remand on the same day and attached her proposed Second Amended Complaint. Plaintiff's motion for leave and Second Amended Complaint not only identified San Gabriel as the added defendant, but clearly stated that he was a citizen of Illinois. In response, Defendants failed to object and the Court properly granted leave. Therefore, this Court's joinder of San Gabriel destroys diversity and requires the Court to relinquish jurisdiction. *Jass*, 88 F.3d at 1486 (The

Court clarified those "are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction") (emphasis in original). 28 U.S.C. § 1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court". *Id.* at 759; *citing Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1486 (7th Cir.1996). The Court clarified those "are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction". (emphasis in original) *Id.*; *citing* David D. Siegel, *Commentary on 1988 Revision of Section 1447, in* 28 U.S.C.A. § 1447 (2009) (noting that Congress rejected an approach permitting a court to allow joinder and retain the case).

Plaintiff was also not dilatory in requesting amendment, where she sought leave to file her Second Amended Complaint naming San Gabriel on the same day she filed her motion to remand. (Dkt. 11, 13). Finally, there is no question that Plaintiff has a "reasonable possibility of success" in her claim against San Gabriel. How could the Defendants argue otherwise where their entire defense rests on his alleged negligence? Therefore, the Court should reject Defendants' argument that Plaintiff fraudulently joined San Gabriel.

**VII. Defendants have failed to satisfy their burden to establish diversity as to Defendants Lehigh Hanson Services LLC.**

As stated in Plaintiff's Motion to remand, Defendants have utterly failed to satisfy their burden as to the citizenship of Defendant Lehigh Hanson Services LLC. ("Lehigh") and Material Service Corporations ("Material"). In regard to Lehigh, limited liability companies citizenship is determined by the citizenship of its "members." *See Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381–82 (2016); *see* e.g., *Carden v. Arkoma Associates,* 494 U.S. 185, 195-96 (1990) (citizenship of a partnership is that of every partner or member, limited as well as general). The only way to determine citizenship for diversity purposes is to look at the individual

partners—an analytical path repeatedly endorsed by the Supreme Court. *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). In response, Defendants merely provide an affidavit stating "Lehigh Hanson, Inc. is the sole member and owner of Lehigh Hanson Services LLC." (Dkt. 20, pg.10). As clearly indicated by the precedent detailed above, Defendants are *required* to detail the citizenship of all partners, limited partners and members. *See. Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Defendants refusal to provide that information and woeful response is exactly the type of conduct that led to dismissal for want of jurisdiction in *Guaranty National Title Co. v. J.E.G. Associates.*101 F.3d 57 (7th Cir.1996) (Failure to go through all the layers can result in dismissal for want of jurisdiction)

## CONCLUSION

Wherefore, for these reasons, Plaintiff, Mariana M. Ochoa as Independent Administrator of the Estate of Victor Lobato Ochoa, deceased, respectfully request this Honorable Court grant Plaintiffs' Motion to Remand to State Court pursuant to 28 USC 1447(e).

Respectfully Submitted,

MARIANA M. OCHOA

By:     /s/ *Michael L. Gallagher*
Michael L. Gallagher
ARDC #6281432
WISE MORRISSEY, LLC
161 N. Clark. Suite 3250
Chicago. IL 60601
(312) 580-2040
mlg@wisemorrissey.com